**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KEIKO EDGAR, DENA BURGE, and UHA HEALTH INSURANCE, individually and on behalf of all others similarly situated, : : : | **Civil Action No. 2:22-CV-02501** |

KEIKO EDGAR, DENA BURGE, and UHA
HEALTH INSURANCE, individually and on
behalf of all others similarly situated,   :
                              *Plaintiffs*,   :

v.   :

    :

TEVA PHARMACEUTICALS INDUSTRIES,   :
LTD., TEVA PHARMACEUTICALS USA, INC.,   :
TEVA PARENTERAL MEDICINES, INC.,   :
TEVA NEUROSCIENCE, INC., TEVA SALES &   :
MARKETING, INC., CEPHALON, INC., and   :
WILLIAM S. MARTH,   :
                            *Defendants*.   :

    :

**TEVA PHARMACEUTICAL INDUSTRIES LTD.'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 1

I.      Plaintiffs allege a scheme to thwart generic competition in the U.S. market. .................... 1

II.     Teva Israel lacks suit-related contacts with Kansas and the U.S. more generally,
        and is not the manufacturer or U.S. distributor for any of the products at issue. ............... 2

III.    Teva Israel and its corporate co-defendants observe corporate formalities and
        have a typical parent-subsidiary relationship for multinational corporate families. ........... 3

LEGAL STANDARDS ................................................................................................. 4

ARGUMENT ................................................................................................................ 5

I.      Plaintiffs fail to make a prima facie showing of personal jurisdiction in Kansas. .............. 6

        A.      The Complaint does not allege any contacts between Teva Israel and Kansas. ..... 6

        B.      Exercising jurisdiction would offend fair play and substantial justice. .................. 8

II.     Plaintiffs have no legal basis to rely on contacts outside Kansas. ...................................... 8

        A.      Plaintiffs may not rely on the Clayton Act's worldwide service of process
                provision because they have not established venue under the Clayton Act. .......... 9

        B.      Plaintiffs may not rely on RICO's nationwide service provision. ........................ 10

        C.      Plaintiffs may not rely on Rule 4(k)(2) to invoke nationwide contacts. ............... 11

III.    The contacts of Teva Israel's subsidiaries may not be imputed to Teva Israel. ............... 12

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*In re Aggrenox Antitrust Litig.*,
   94 F. Supp. 3d 224 (D. Conn. 2015) ..................................................................7, 12

*Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*,
   710 F.2d 1449 (10th Cir. 1983) .........................................................................4, 7

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*,
   480 U.S. 102 (1987) ...............................................................................................8

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
   137 S. Ct. 1773 (2017) ...........................................................................................6

*Calder v. Jones*,
   465 U.S. 783 (1984) ...............................................................................................4

*Caldwell-Baker Co. v. S. Illinois Railcar Co.*,
   225 F. Supp. 2d 1243 (D. Kan. 2002) ...................................................................5

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) .....................................................................................4

*City and County of San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020) .................................................................14

*Cont'l Coal, Inc. v. Cunningham*,
   511 F. Supp. 2d 1065 (D. Kan. 2007) .................................................................12

*Cory v. Aztec Steel Bldg., Inc.*,
   468 F.3d 1226 (10th Cir. 2006) ...........................................................................10

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005) ...................................................................................9

*Don't Look Media LLC v. Fly Victor Ltd.*,
   999 F.3d 1284 (11th Cir. 2021) ...........................................................................10

*Doughty v. CSX Transp., Inc.*,
   905 P.2d 106 (Kan. 1995) ..............................................................................13, 15

*Eighteen Seventy, LP v. Jayson*,
   32 F.4th 956 (10th Cir. 2022) ................................................................................4

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
  545 F. Supp. 3d 922 (D. Kan. 2021) ................................................................................2

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ...................................................................7

*Gas Sensing Tech. Corp. v. Ashton*,
  795 F. App'x 1010 (10th Cir. 2020) ...........................................................................13, 14

*GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*,
  700 F. App'x 865 (10th Cir. 2017) ................................................................................10

*Gibbs-Squires v. Urb. Settlement Servs.*,
  623 F. App'x 917 (10th Cir. 2015) ................................................................................11

*Goodyear Dunlap Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011) ....................................................................................................6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ...............................................................................................5, 6, 12

*KM Enters, Inc. v. Glob. Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013) ..........................................................................................9

*Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*,
  878 F.2d 1259 (10th Cir. 1989) ....................................................................................13

*Mann v. Castiel*,
  681 F.3d 368 (D.C. Cir. 2012) .......................................................................................11

*Multi-Media Int'l., LLC v. Promag Retail Servs.*,
  343 F. Supp. 2d 1024 (D. Kan. 2004) .............................................................................5

*N.L.R.B. v. Greater Kansas City Roofing*,
  2 F.3d 1047 (10th Cir. 1993) ..................................................................................13, 14

*Palmieri v. Estefan*,
  793 F. Supp. 1182 (S.D.N.Y. 1992)................................................................................15

*Quarles v. Fuqua Indus., Inc.*,
  504 F.2d 1358 (10th Cir. 1974) ..............................................................................13, 15

*Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*,
  2021 WL 2355096 (N.D. Ga. June 9, 2021).....................................................................4

*Stutts v. De Dietrich Grp.*,
  465 F. Supp. 2d 156 (E.D.N.Y. 2006) ............................................................................15

*Ticor Title Ins. of Fla. v. Nations Holding Co.*,
   2008 WL 4427655 (D. Kan. Sept. 25, 2008) .................................................................13, 14

*Trujillo v. Williams*,
   465 F.3d 1210 (10th Cir. 2006) ...............................................................................................4

*United States v. Bestfoods*,
   524 U.S. 51 (1998)...................................................................................................................13

*Wardell v. Am. Dairy Goat Ass'n*,
   2022 WL 375577 (D. Colo. Feb. 8, 2022) ...............................................................................9

*Wenz v. Memery Crystal*,
   55 F.3d 1503 (10th Cir. 1995) ..........................................................................................4, 12

*Wirth v. PHC Las Cruces Inc.*,
   2021 WL 2805357 (D.N.M. July 6, 2021)..............................................................................14

*Hastey ex. rel. YRC Worldwide, Inc. v. Welch*,
   449 F. Supp. 3d 1053 (D. Kan. 2020) .....................................................................................3

**STATUTES AND RULES:**

15 U.S.C. § 1 .....................................................................................................................................2

15 U.S.C. § 2 .....................................................................................................................................2

15 U.S.C. § 22 ...................................................................................................................................9

18 U.S.C. § 1962(c) ..........................................................................................................................2

18 U.S.C. § 1962(d) ..........................................................................................................................2

18 U.S.C. § 1965(b) ........................................................................................................................10

Fed. R. Civ. P. 4(d)(5)....................................................................................................................11

Fed. R. Civ. P.  4(k)(2)....................................................................................................................11

Fed. R. Civ. P. 12(b)(2)....................................................................................................................1

## INTRODUCTION

Defendant Teva Pharmaceutical Industries Ltd. ("Teva Israel") is the ultimate parent company to numerous subsidiaries, including its U.S.-based, corporate co-defendants in this action. Yet that fact alone does not justify haling Teva Israel, a foreign company with *zero* suit-related contacts with Kansas, into this forum. The feebleness of Plaintiffs' Kansas-related jurisdictional allegations is underscored by their attempt to invoke Teva Israel's purported contacts with the United States more generally to establish personal jurisdiction over Teva Israel. But Plaintiffs' statutory arguments are flawed and they cannot establish suit-related contacts with the United States in any event. As a last fallback, Plaintiffs ask the Court to impute the contacts of Teva Israel's subsidiaries to Teva Israel, but there are no grounds to do so because Teva Israel is not an alter ego of its affiliates. For these reasons, the Court should dismiss the Complaint against Teva Israel for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## BACKGROUND

### I.      Plaintiffs allege a scheme to thwart generic competition in the U.S. market.

Teva Israel is in the business of developing, manufacturing, and marketing pharmaceutical products. Compl. ¶ 8. Teva Israel has numerous subsidiaries—including its U.S.-based affiliates that are co-defendants in this action—which also develop, manufacture, and market drug products. *Id.* ¶¶ 9-13. The Complaint and its allegations generally do not distinguish between Teva Israel and its affiliates, and instead refer repeatedly to "Teva." *See, e.g.*, *id.* ¶ 1.

In 2009, Plaintiffs allege that "Teva" informed EpiPen (an epinephrine auto-injector) patent holders that it was seeking FDA approval for a generic EpiPen. *Id.* ¶ 64. In response, the patent holders—Pfizer subsidiaries—sued Teva Parenteral Medicines, Inc. ("Teva Parenteral") and Teva Pharmaceuticals USA, Inc. ("Teva USA") for patent infringement. *Id.* ¶¶ 65, 68; *see King Pharms., Inc. v. Teva Parenteral Meds., Inc.*, No. 1:09-cv-00652-GMS (D. Del.). Pfizer and its

affiliate Mylan—the exclusive EpiPen distributor—entered into a common interest agreement in connection with the patent litigation.  Compl. ¶¶ 43-44, 66.

In 2009, the pharmaceutical company Cephalon LLC ("Cephalon"), then Cephalon, Inc., launched the brand-name wakefulness drug Nuvigil (armodafinil), and later that year sued Mylan (among others) for infringing the patents Cephalon held on Nuvigil.  *Id.* ¶¶ 114, 122-23.  A Teva Israel subsidiary acquired Cephalon in 2011, *id.* ¶ 115; Declaration of Brian E. Shanahan ("Shanahan Decl.") ¶ 12, attached hereto, but Cephalon continued to litigate the Nuvigil patent action as a distinct entity under the name Cephalon even after the acquisition, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 545 F. Supp. 3d 922, 959 n.33 (D. Kan. 2021) (subsequent history omitted).

On April 26, 2012, Teva Parenteral and Teva USA reached a settlement agreement with Pfizer to resolve the EpiPen litigation, and Cephalon reached agreement with Mylan to resolve the Nuvigil claims.  Compl. ¶¶ 135-36; Shanahan Decl. ¶ 24.  Plaintiffs filed this lawsuit challenging the settlements a decade later, alleging violations of the Sherman Act, 15 U.S.C. §§ 1-2, RICO, 18 U.S.C. § 1962(c)-(d), and various state laws.  Compl. ¶¶ 188-217, 229-300.

## II.   Teva Israel lacks suit-related contacts with Kansas and the U.S. more generally, and is not the manufacturer or U.S. distributor for any of the products at issue.

Teva Israel is a corporation organized under the laws of Israel, with its headquarters and principal place of business in Israel.  Shanahan Decl. ¶ 2; Compl. ¶ 8.  Teva Israel is not qualified to do business anywhere in the U.S., including Kansas.  Shanahan Decl. ¶ 3.  Nor has Teva Israel ever filed or sought to file articles of incorporation or qualifications to do business in any state within the U.S.  *Id.* ¶ 4.

Teva Israel has no branch office and does not maintain any manufacturing operations in the U.S.  *Id.* ¶¶ 5-6.  Teva Israel has never owned, leased, possessed, or maintained any real or

personal property, office, residence, or place of business in the U.S.  *Id.* ¶ 7.  Teva Israel does not

have a U.S.-based mailing address, nor does it list any U.S.-based telephone number.  *Id.* ¶ 5.  It

does not direct any Nuvigil or generic EpiPen advertising specifically toward residents of any state

in the U.S., nor does it advertise in any publications that are directed primarily toward residents of

any state of the U.S.  *Id.* ¶ 9.  Teva Israel has never submitted or held a New Drug Application

("NDA") for Nuvigil or an Abbreviated New Drug Application ("ANDA") for a generic EpiPen.

*Id.* ¶¶ 22-23.  It has never manufactured, promoted, sold, or distributed Nuvigil or a generic EpiPen

anywhere in the U.S.  *Id.* ¶ 25.  Finally, Teva Israel has never been a plaintiff in patent litigation

relating to Nuvigil or a generic EpiPen.  *Id.* ¶ 24.

### III.   Teva Israel and its corporate co-defendants observe corporate formalities and have a typical parent-subsidiary relationship for multinational corporate families.

Teva Israel has many subsidiaries around the globe, including Defendant Teva USA, a

Delaware corporation with a principal places of business in New Jersey.  *Id.* ¶ 11.  Teva USA is

the parent company of Defendant Teva Parenteral, a Delaware corporation with a principal place

of business in California, Defendant Cephalon, a Delaware limited liability company with a

principal place of business in Pennsylvania, and Defendants Teva Neuroscience, Inc. ("Teva

Neuroscience") and Teva Sales & Marketing, Inc. ("Teva Sales"), both Delaware corporations

with principal places of business in New Jersey.  *Id.* ¶¶ 12-15.[1]  Teva Israel and Teva USA observe

separate corporate forms and maintain separate headquarters.  *Id.* ¶ 16.  Teva Israel holds board

meetings and maintains books and records separate from Teva USA and their affiliates.  *Id.*  Teva

---

[1] The Complaint alleges (¶¶ 11, 13) that Teva Neuroscience and Teva Sales have headquarters in Kansas, but that is no longer accurate.  Their headquarters are in New Jersey—facts publicly available on the Kansas Secretary of State website, *see* Shanahan Decl., Exs. 1-2, and of which the Court may take judicial notice, *see Hastey ex. rel. YRC Worldwide, Inc. v. Welch*, 449 F. Supp. 3d 1053, 1059-60 (D. Kan. 2020) (taking notice of corporate documents filed with government agency).

Israel does not dominate, control, direct, or supervise the day-to-day operations of Teva USA or its subsidiaries or employees. *Id.* ¶ 17.

## LEGAL STANDARDS

The plaintiff "bear[s] the burden of establishing personal jurisdiction," *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022), and "only the well pled facts of [a] plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true," *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). When, as here, the defendant puts forward an affidavit rebutting the plaintiff's allegations, *see id.*, the plaintiff cannot rely on its pleading alone but must put forward evidence supporting personal jurisdiction, *see Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir. 1983).

A plaintiff may not use group pleading to satisfy its burden to plead jurisdiction. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) (concluding that it is "impossible" to assess jurisdictional contacts where plaintiff referred only to "grouped entities" and "collapse[d]" "two distinct Defendants—a parent and wholly owned subsidiary . . . into one"). Rather, the plaintiff must show that jurisdiction exists as to each defendant, *see Trujillo v. Williams*, 465 F.3d 1210, 1219 n.10 (10th Cir. 2006), and "[e]ach defendant's contacts with the forum State must be assessed individually," *Calder v. Jones*, 465 U.S. 783, 790 (1984). *See also Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*, 2021 WL 2355096, at *5 (N.D. Ga. June 9, 2021) (no jurisdiction where plaintiff "repeatedly lumps all four Defendants together under the collective umbrella 'Kaijet' without alleging specific acts taken by each").

Plaintiffs have asserted state and federal law claims against Teva Israel and its co-defendants. Where "a federal lawsuit is based on diversity of citizenship, the court's jurisdiction over a nonresident defendant is determined by the law of the forum state." *Eighteen Seventy*, 32 F.4th at 965. Because the jurisdictional law of Kansas is coextensive with the limits of federal due

process, the sole inquiry here is whether jurisdiction over Teva Israel would comport with the Due Process Clause. *Caldwell-Baker Co. v. S. Illinois Railcar Co.*, 225 F. Supp. 2d 1243, 1260 (D. Kan. 2002). In order to satisfy due process, the plaintiff must show (1) that the nonresident corporate defendant has "certain minimum contacts with the forum" and that (2) "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (cleaned up). Minimum contacts exist only where the defendant has "purposefully directed its activities at residents of the forum state" and the plaintiff's injuries "arise out of the defendant's forum-related activities." *Old Republic*, 877 F.3d 895, 904 (10th Cir. 2017).

With respect to Plaintiffs' federal law claims, whether a defendant is subject to personal jurisdiction requires the Court to determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Multi-Media Int'l., LLC v. Promag Retail Servs.*, 343 F. Supp. 2d 1024, 1027 (D. Kan. 2004) (internal quotation marks omitted).

## ARGUMENT

Plaintiffs have not alleged any facts to establish suit-related minimum contacts between Teva Israel and Kansas. Rather, they impermissibly employ group pleading to allege (¶ 27) that Defendants, as a group, conduct business in Kansas and avail themselves of Kansas markets. Those legal conclusions do not establish Teva Israel's minimum contacts with Kansas. Plaintiffs then widen their scope to allege (¶ 29) that Teva Israel has contacts with the United States as a whole because it generally avails itself of U.S. markets, initiates patent litigation in federal court, and engages with U.S. regulatory authorities. However, Plaintiffs lack a statutory basis to invoke Teva Israel's purported nationwide contacts and fail to allege any suit-related contacts that are attributable to Teva Israel. Plaintiffs alternatively seek to establish jurisdiction on the basis that

Teva Israel is the purported alter ego of its affiliates.  But Plaintiffs come nowhere close to providing an adequate basis to ignore the corporate form.

## I. Plaintiffs fail to make a prima facie showing of personal jurisdiction in Kansas.

The Complaint fails to make a prima facie showing of specific personal jurisdiction in Kansas.[2]  Plaintiffs do not allege *any* contacts that Teva Israel has with Kansas, much less suit-related ones, and requiring Teva Israel, an Israeli corporation, to defend itself in time-consuming and costly litigation in a Kansas court would violate the requirements of fairness and justice.

### A. The Complaint does not allege any contacts between Teva Israel and Kansas.

Due process demands that there be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (internal quotation marks omitted).  Yet Plaintiffs fail to allege a single contact between Teva Israel and Kansas.  Plaintiffs assert (¶ 27) that jurisdiction is proper because "Defendants" collectively "conduct business in [Kansas], have purposefully directed their actions toward [Kansas], and have sufficient minimum contacts with [Kansas]."  Plaintiffs further assert that "Defendants intentionally avail themselves of the markets in [Kansas] through the promotion, marketing, and sale of the products at issue in this lawsuit."  *Id.*  But all the conduct alleged in the Complaint, including marketing, promoting, or selling Nuvigil and a generic EpiPen, is attributed to "Teva"—a collective of all Defendants—and nothing is specifically attributed to Teva Israel.  Such group pleading is impermissible, and courts have rejected efforts to establish personal

---

[2] Plaintiffs do not even attempt to allege general jurisdiction, nor could they, as it would require showing "continuous and systematic general business contacts" with the forum, *Helicopteros*, 466 U.S. at 416, such that the defendant is "essentially at home" there, *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  Teva Israel is not incorporated, qualified to do business, or otherwise "essentially at home" in Kansas, and it does not have facilities or any other real or personal property in Kansas.  Shanahan Decl. ¶¶ 2-7.

jurisdiction by lumping defendants together, including in other antitrust suits just like this one in which plaintiffs tried to join Teva Israel to an action challenging a patent settlement entered into by its U.S. affiliates.  *See In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 257 (D. Conn. 2015) (no specific jurisdiction over Teva Israel in action challenging settlement by Teva USA and other affiliates).[3]

In fact, Teva Israel has no connection to this forum.  Teva Israel has never manufactured, promoted, or sold Nuvigil or a generic EpiPen in Kansas.  Shanahan Decl. ¶ 25.  It likewise has not made any representations regarding Nuvigil or a generic EpiPen to medical professionals or patients in Kansas.  *Id.* ¶ 26.  It does not hold, and has never held, an NDA for Nuvigil or an ANDA for a generic EpiPen.  *Id.* ¶¶ 22-23.  Nor do Plaintiffs allege that Teva Israel has ever filed suit in Kansas to enforce any patent right associated with Nuvigil or submitted any regulatory filing concerning Nuvigil or a generic EpiPen in Kansas.  Teva Israel thus has not taken *any* action in or directed at Kansas that would allow for the exercise of specific jurisdiction in this case.

Plaintiffs' conclusory allegations of conspiracy (*e.g.*, ¶ 27) cannot compensate for the insufficiency of Plaintiffs' group-pleading.  "Mere allegations of conspiracy . . . cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court."  *Am. Land Program*, 710 F.2d at 1454.  The Complaint offers *no* facts as to what role specifically Teva Israel (as opposed to its affiliates) played in the alleged conspiracy, and the Court should "therefore conclude that [Plaintiffs] ha[ve] not met [their] threshold burden of establishing personal jurisdiction over" Teva Israel.  *Id.*; *see In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d at 257.

---

[3] *See also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 1268267, at *7 (S.D.N.Y. Mar. 31, 2016) (no specific jurisdiction over foreign parent company where allegations were limited to actions taken by the U.S.-based subsidiary).

**B.      Exercising jurisdiction would offend fair play and substantial justice.**

In addition to the absence of minimum contacts, forcing Teva Israel to litigate in Kansas would "offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987) (quotation marks omitted).[4]  As the Supreme Court has explained, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114.  Thus, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," and courts should be reluctant "to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.* at 115.

In this case, the exercise of "care and reserve" favors dismissal, as (1) Plaintiffs do not plead that Teva Israel specifically was involved in any unlawful conduct—as opposed to conflating all Defendants under the umbrella term "Teva"—and (2) Plaintiffs identify no reason they need to bring Teva Israel in this forum to secure relief from the other defendants.

**II.     Plaintiffs have no legal basis to rely on contacts outside Kansas.**

Perhaps recognizing that Teva Israel lacks suit-related contacts with Kansas, Plaintiffs alternatively assert (¶ 29) that jurisdiction over Teva Israel is proper because it "has sufficient minimum contacts with the United States."  Yet, Plaintiffs lack a statutory basis for invoking nationwide contacts, and Teva Israel does not have suit-related contacts with the U.S. anyway.

---

[4] To undertake this analysis, courts consider: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Old Republic*, 877 F.3d at 909.

### A.   Plaintiffs may not rely on the Clayton Act's worldwide service of process provision because they have not established venue under the Clayton Act.

Plaintiffs may not rely on the Clayton Act's worldwide service provision, which is only relevant to their federal claims, as a basis for jurisdiction over Teva Israel because venue is not proper under the Clayton Act.  The Act provides that a suit against a corporation:

> may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.  "As this language makes plain, the section consists of two parts," where the "[t]he part before the semicolon addresses venue," and "[t]he part after the semicolon provides for worldwide service of process and, therefore, the exercise of personal jurisdiction."  *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005).  The second part (the service provision) is modified by and dependent upon the first (the venue provision) as it provides that worldwide process may be served "in such cases" where venue is proper.  15 U.S.C. § 22.  Thus, by the "plain language" of the statute, a plaintiff must establish statutory venue in order to invoke the Act's service provision and thereby rely on a defendant's nationwide contacts.  *Daniel*, 428 F.3d at 423.[5]

Here, the Complaint does not purport to establish venue under the Clayton Act (Compl. ¶ 30), and for good reason:  even under the broadest statutory requirement—the "transacts business" requirement—Plaintiffs fail to plead *any* contact between Teva Israel and Kansas.  *See* pp. 6-7, *supra*.; *Wardell v. Am. Dairy Goat Ass'n*, 2022 WL 375577, at *5-6 (D. Colo. Feb. 8, 2022) (venue not established where defendant lacked "tangible manifestations of doing business"

---

[5] The Tenth Circuit has not determined whether the Act's service provision is dependent on its venue provision, but the majority of courts of appeals to address the question have concluded that venue must be established before the worldwide service provision applies.  *See KM Enters, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 729, 730 (7th Cir. 2013) (collecting decisions).

in district, including "office, bank account, telephone listing, or employee or agent") (subsequent history omitted).[6]  Thus, the Act's worldwide service provision is unavailable to Plaintiffs.

**B.      Plaintiffs may not rely on RICO's nationwide service provision.**

Plaintiffs also may not rely on RICO's nationwide service provision.  First, Plaintiffs cannot rely on RICO because it does not provide a statutory basis for worldwide service, *see Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1235 (10th Cir. 2006), and Teva Israel was not served in the U.S.  RICO's service provision states:

> In any [civil RICO action] in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and *process for that purpose may be served in any judicial district of the United States* by the marshal thereof.

18 U.S.C. § 1965(b) (emphasis added).  By the statute's plain language, a plaintiff seeking to establish personal jurisdiction under RICO must serve the defendant in a "judicial district of the United States."  *Id.*; *see Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1293-94 (11th Cir. 2021); *see also GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 700 F. App'x 865, 868 (10th Cir. 2017) (holding that a statute that provides for nationwide service of process but not worldwide service of process did not provide basis for personal jurisdiction where defendants were served in Ireland).  But, Teva Israel, which lacks any physical presence or registered agent in the U.S., Shanahan Decl. ¶¶ 5-8, was not served "in any judicial district of the United States."  Rather, Teva Israel waived service while expressly preserving all defenses to personal jurisdiction, ECF No. 14 at 2 n.1, and had it been served, such service necessarily would have occurred outside the U.S.[7]

---

[6] Neither have Plaintiffs adequately pled grounds for imputing any other entity's contacts with Kansas to Teva Israel to satisfy the "transacts business" requirement.  As discussed *infra*, pp. 12-15, Plaintiffs fail to allege that Teva Israel is the alter ego of its subsidiaries.

[7] It makes no difference that Teva Israel waived service.  *See Don't Look Media*, 999 F.3d at 1293-94 (holding RICO's nationwide service provision unavailable where defendants would have been served in the U.K. had they not waived service).  As noted, Teva Israel explicitly reserved its right

Thus, Plaintiffs may not use RICO to establish jurisdiction over Teva Israel.[8]

**C.     Plaintiffs may not rely on Rule 4(k)(2) to invoke nationwide contacts.**

Plaintiffs also may not rely on Federal Rule of Civil Procedure 4(k)(2) to invoke nationwide contacts.  As a threshold matter, Rule 4(k)(2) is expressly cabined to "claim[s] that arise[] under federal law," Fed. R. Civ. P. 4(k)(2), and is thus not a basis for personal jurisdiction with respect to Plaintiffs' state law claims.  But even with respect to Plaintiffs' federal law claims, Rule 4(k)(2) is not a valid statutory basis because it requires that the exercise of jurisdiction be "consistent with the United States Constitution and laws."  *Id*.  Here, Teva Israel lacks any suit-related contacts with the U.S.:  it has never manufactured, promoted, or sold Nuvigil or a generic EpiPen in the U.S.; never made any representations regarding these drugs to medical professionals or patients in the U.S.; and never filed or held an NDA for Nuvigil or an ANDA for a generic EpiPen.  Shanahan Decl. ¶¶ 22-23, 25-26.  Exercising jurisdiction in these circumstances would violate due process, and thus Rule 4(k)(2) is not available to Plaintiffs.

Plaintiffs try to manufacture a nationwide basis for jurisdiction by (1) pointing to a regulatory filing that purportedly demonstrates that Teva Israel "intentionally avails itself of U.S. markets"; (2) asserting that Teva Israel "directs activities, submissions, and dealings with" U.S. agencies; and (3) claiming that Teva Israel "intentionally and repeatedly avails itself of the federal court system as a Plaintiffs [*sic*] in patent-related litigation, including the very products at issued [*sic*] in this lawsuit."  Compl. ¶ 29(a)-(c).  These allegations are insufficient.

---

to object to this lawsuit on personal jurisdiction grounds, and "[w]aiving service of a summons does not waive any objection to personal jurisdiction."  Fed. R. Civ. P. 4(d)(5); *Mann v. Castiel*, 681 F.3d 368, 373 (D.C. Cir. 2012).

[8] Plaintiffs also may not rely on RICO's nationwide service provision because, as put forth in Defendants' Rule 12(b)(6) motion, they do not have a viable RICO claim.  *See Gibbs-Squires v. Urb. Settlement Servs.*, 623 F. App'x 917, 920 (10th Cir. 2015).

The first and second categories of alleged contacts fail to establish a basis for jurisdiction on their face.  "Minimum contacts" by definition are those that "relate[] to or arise[] out of a defendant's contacts with the forum."  *Helicopteros*, 466 U.S. at 414 (quotation marks omitted). But Plaintiffs offer nothing apart from a conclusory statement (¶ 29(d)) to suggest that Teva Israel's contacts with U.S. regulatory authorities relate to this action, and it is directly contradicted by Teva Israel's affidavit establishing that it does not hold, and has never held, an NDA for Nuvigil or an ANDA for a generic EpiPen, and has not submitted any regulatory filings in connection with either product.  Shanahan Decl. ¶¶ 22-23.  Plaintiffs are thus left to rely on allegations of "generalized contacts," which "are not useful for establishing specific personal jurisdiction, because they have nothing to do with the particular conduct giving rise to the claims here."  *In re Aggrenox*, 94 F. Supp. 3d at 257 (denying personal jurisdiction over Teva Israel in patent settlement challenge).

Plaintiffs' remaining contention that Teva Israel "intentionally and repeatedly avails itself of the federal court system as a Plaintiffs [*sic*] in patent-related litigation, including the very products at issued [*sic*] in this lawsuit," Compl. ¶ 29(b), also fails to establish jurisdiction.  As is evident from public court records of which the Court may take judicial notice,[9] Teva Israel was not a plaintiff in the litigation initiated by Cephalon over the patents for Nuvigil or the litigation involving the EpiPen patents.[10]  Plaintiffs' demonstrably false assertion to the contrary cannot support jurisdiction.  *See Wenz*, 55 F.3d at 1508.

### III.    The contacts of Teva Israel's subsidiaries may not be imputed to Teva Israel.

Nor can Plaintiffs establish jurisdiction by imputing the contacts of Teva Israel's

---

[9] *See Cont'l Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1071 (D. Kan. 2007).

[10] *See Cephalon, Inc. v. Mylan Pharms., Inc.*, No. 1:09-cv-00954 (D. Del.); *In re Armodafinil Patent Litig.*, No. 1:10-md-02200 (D. Del.); *King Pharms.*, No. 1:09-cv-00652-GMS; *see also* Shanahan Decl. ¶ 24.

subsidiaries to Teva Israel.  *See* Compl. ¶ 28.  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (cleaned up).  A parent company is presumed to have "a separate corporate existence and is treated separately from the subsidiary," *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974), and "[t]he power to pierce the corporate veil is to be exercised reluctantly and cautiously," *Ticor Title Ins. of Fla. v. Nations Holding Co.*, 2008 WL 4427655, at *5 (D. Kan. Sept. 25, 2008) (cleaned up).  Although courts consider numerous factors when considering the alter ego question,[11] the "ultimate test" is whether "the relationship between the parent and subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business and assets of the two are so mingled that recognition of the subsidiary as a distinct entity would result in an injustice to third parties," *Doughty v. CSX Transp., Inc.*, 905 P.2d 106, 111 (Kan. 1995).  And it is "the exercise of, not the opportunity to exercise, control [that] is determinative."  *Quarles*, 504 F.2d at 1364.  Courts in the Tenth Circuit routinely apply the same alter ego standard in the liability and jurisdictional contexts.  *See, e.g.*, *id.*; *Gas Sensing Tech. Corp. v. Ashton*, 795 F. App'x 1010 (10th Cir. 2020).

---

[11] *See Ticor*, 2008 WL 4427655, at *6 (enumerating factors: "(1) whether the parent owns all or a majority of the capital stock of the subsidiary; (2) whether the organizations have common directors or officers; (3) whether the parent finances the subsidiary; (4) whether the parent subscribed to all of the capital stock of the subsidiary or otherwise causes its incorporation; (5) whether the subsidiary has grossly inadequate capital; (6) whether the parent pays the salaries or expenses or losses of the subsidiary; (7) whether the subsidiary has substantially no business except with the parent, or no assets except those conveyed to it by the parent; (8) whether in the papers of the parent, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent; and (10) whether the formal legal requirements of the subsidiary as a separate and independent organization are not observed").  In a diversity action, the forum state's law with respect to piercing the corporate veil governs, *see Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1262 (10th Cir. 1989), but the federal common law standard adopted by the Tenth Circuit is materially the same, *see N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993).

Plaintiffs' allegations (¶¶ 17-24) about Teva Israel's "organizational structure," "control" of its subsidiaries, and high-level corporate policy making come nowhere close to demonstrating the kind of "intimate" and "dominating" relationship required. Plaintiffs point to descriptions of Teva Israel and its affiliates as an "integrated," "global" entity, *id.*; however, "[g]eneral references by a parent corporation to the business of a subsidiary as being part of the business of the parent does not confer personal jurisdiction or serve to erase the substantive and legal distinctions between corporations," *Wirth v. PHC Las Cruces Inc.*, 2021 WL 2805357, at *6 (D.N.M. July 6, 2021) (citation omitted). The court filing that Plaintiffs reference (¶ 24) is covered by this rule.

Plaintiffs next assert that Teva Israel is an alter ego because its "organizational structure . . . blur[s] the layers of separation between [it] and its subsidiaries," which allows Teva Israel to "control" certain of its subsidiaries' decisions through its ability to select corporate officers for its subsidiaries. Compl. ¶¶ 18-20 (citing *City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 636-37 (N.D. Cal. 2020)).[12] But merely selecting or sharing employees and corporate officers with a subsidiary does not justify piercing the corporate veil, *see Ticor*, 2008 WL 4427655, at *6, and the allegation that the layers of separation between entities are "blurr[ed]" does not rise to the level of showing that corporate affiliates are "indistinct," *N.L.R.B.*, 2 F.3d at 1052, particularly in the face of the declaration establishing that Teva Israel and its affiliates respect corporate formalities, Shanahan Decl. ¶ 16.

Finally, Plaintiffs allege (¶¶ 21-23) that Teva Israel is an alter ego because it has implemented global policies relating to regulatory compliance, ethics, and customer relations. Even if true, "a parent of a multinational corporate enterprise may make broad policy decisions for

---

[12] *Purdue Pharma* is an unrelated tort case under California law that is unpersuasive here not least because the plaintiffs in that case made specific factual allegations of "injustice," whereas Plaintiffs do not. 491 F. Supp. 3d at 638-39. *See* p. 15, *infra*.

its subsidiaries" without providing a basis for piercing the corporate veil. *Palmieri v. Estefan*, 793 F. Supp. 1182, 1189 (S.D.N.Y. 1992) (citation omitted). Multinational corporations that distribute through subsidiaries understandably want to ensure that their "products and services meet uniform company standards," but that desire for quality control and uniformity does not establish an alter ego relationship. *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 164 (E.D.N.Y. 2006). Rather, the standard requires day-to-day control, and Teva Israel does not dominate, control, direct, or supervise the day-to-day operations of any of its co-Defendants. Shanahan Decl. ¶ 17.[13] In sum, Plaintiffs' allegations are inadequate under the law and directly contradicted by the facts.

Finally, a plaintiff seeking to rely on alter ego status must also "show that allowing the legal fiction of a separate corporate structure would result in injustice toward the plaintiff." *Doughty*, 905 P.2d at 111. Plaintiffs cannot—and do not—make that showing. There is no allegation that Teva Israel's corporate co-defendants are insolvent, undercapitalized, or otherwise unable to satisfy a judgment. And denying alter ego status here would not perpetrate a "fraud" against Plaintiffs. *Quarles*, 504 F.2d at 1362. Plaintiffs' desire to sweep in Teva Israel into this lawsuit is simply not reason enough to pierce the corporate veil.

## CONCLUSION

Teva Israel thus asks the Court to dismiss the Complaint for lack of personal jurisdiction.[14]

---

[13] Plaintiffs' conclusory allegations that that Teva Israel—at some unspecified level of engagement—"participates in the sale and/or management of facilities in the United States and business lines in the United States" do not suggest otherwise. Compl. ¶ 24 (footnotes omitted). Although Plaintiffs plead "participat[ion]," they do not explain what such participation has to do with the subsidiaries named as co-defendants in this action or why it would suggest alter ego status.
[14] If the Court concludes that Teva Israel is subject to its jurisdiction, Teva Israel then joins and incorporates by reference the Defendants' Motion to Dismiss for Failure to State a Claim.

Dated:  March 8, 2023

Respectfully submitted,

*/s/  James D. Griffin*

James D. Griffin          KS Bar # 12545
Brent N. Coverdale      KS Bar # 18798
SCHARNHORST AST KENNARD GRIFFIN PC
1100 Walnut, Suite 1950
Kansas City, MO 64106
Tel.: (816) 268-9419
Fax: (816) 268-9409
jgriffin@sakg.com
bcoverdale@sakg.com

*Of Counsel:*

Christopher T. Holding *(pro hac vice)*
William E. Evans *(pro hac vice)*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1947
cholding@goodwinlaw.com
wevans@goodwinlaw.com

Brian T. Burgess *(pro hac vice)*
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: (202) 346-4000
bburgess@goodwinlaw.com

*Attorneys for Defendant Teva Pharmaceutical Industries Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the 8th day of March, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ James D. Griffin*
**Attorney**