**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**DENA BURGE, LEIGH HOCKETT, JORDAN FURLAN, ANNE ARUNDEL COUNTY, CRISTINE RIDEY, PATRICIA SAWCZUK, individually and on behalf of all others similarly situated,**

**Plaintiffs,**

**v.**

**Case No. 22-2501-DDC-TJJ**

**TEVA PHARMACEUTICALS INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., TEVA PARENTERAL MEDICINES, INC., TEVA NEUROSCIENCE, INC., TEVA SALES & MARKETING, INC., and CEPHALON, INC.,**

**Defendants.**

**MEMORANDUM AND ORDER**

Defendants have filed a Motion for Certification for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (Doc. 80). Defendants ask the court to certify three questions for immediate appeal:

1. Whether a public decision holding that allegations of wrongdoing are plausible under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), places any potential plaintiffs on inquiry notice of claims premised on the same factual allegations and theory of wrongdoing;

2. Whether active concealment can be established in the absence of any concealing statement either to plaintiffs themselves or the general public; and

3. If a litigant agrees to lawfully settle one lawsuit in exchange for agreeing to lawfully settle another lawsuit, can that exchange of otherwise lawful settlements form the basis for an antitrust claim under *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013)?

Doc. 80 at 6–7. Plaintiffs responded (Doc. 82), and defendants replied (Doc. 83). This Order concludes that defendants haven't shouldered their burden to prove that any of these questions qualify for interlocutory appeal. So, exercising its discretion, the court denies defendants' motion.

## I. Background

The court briefly recites the factual and procedural background of this lawsuit, as it pertains to the present motion.[1] Plaintiffs—representing a proposed class—allege that defendants and their co-conspirators entered an unlawful reverse payment settlement. Doc. 129 at 14–16 (Corrected 2nd Am. Compl. ¶¶ 35–45). Specifically, plaintiffs allege that defendants conspired to safeguard their monopoly on Nuvigil—a wakefulness drug. *Id.* Plaintiffs allege that defendants agreed to stay out of the EpiPen market, allowing Mylan and Pfizer to maintain their EpiPen monopoly. *Id.* at 15 (Corrected 2nd Am. Compl. ¶ 42). In exchange, plaintiffs contend, Mylan and Pfizer agreed to stay out of the Nuvigil market, allowing defendants to maintain their Nuvigil monopoly. *Id.* Based on these factual allegations, plaintiffs assert four claims: (1) a Sherman Act claim; (2) claims for Conspiracy and Combination in Restraint of Trade under various state laws; (3) claims for Monopolization and Monopolistic Scheme under various state laws; and (4) a Racketeer Influenced and Corrupt Organizations Act (RICO) claim. *Id.* at 45–69 (Corrected 2nd Am. Comp. ¶¶ 205–308).

Defendants filed a Motion to Dismiss (Doc. 47). The court granted part of their motion, dismissing the RICO claim and a handful of state law claims. Doc. 72 at 71. But the court allowed plaintiffs' Sherman Act claim and many of their state law claims to survive. Now,

[1] For a fuller discussion of plaintiffs' factual and legal contentions, see Doc. 72.

defendants have filed a Motion for Certification for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (Doc. 80). As explained below, the court denies this motion.

## II. Legal Standard

Generally, federal courts of appeals have jurisdiction only to hear appeals from a district court's final decision. 28 U.S.C § 1291. But 28 U.S.C. § 1292 establishes certain exceptions to this rule, permitting courts of appeals to hear some interlocutory appeals. One interlocutory exception is a decision certified by a district judge. *Id.* § 1292(b). A district judge may certify an interlocutory order for immediate appeal when the judge is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" *Id.* "The proponent of an interlocutory appeal bears the burden of establishing that all . . . of [§ 1292(b)'s] substantive criteria are met." *Freedom Transp., Inc. v. Navistar Int'l Corp.*, No. 18-CV-02602-JAR-KGG, 2020 WL 108670, at *2 (D. Kan. Jan. 9, 2020).

A district court has discretion to certify an interlocutory order for appeal under § 1292(b). *Id.*; *see also Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) (explaining that when it enacted § 1292(b), "Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals"). But such certification is "limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994) (citation and internal quotation marks omitted); *see also Chamberlain v. Crown Asset Mgmt.*, 622 F. Supp. 3d 1068, 1071 (D. Utah 2022) ("[I]nterlocutory appeals should rarely be certified.").

To certify a question for interlocutory appeal, the court must conclude that the issue involves "a controlling question of law[.]" 28 U.S.C. § 1292(b). "A 'question of law' involves the meaning of a statute, constitution, regulation, or common-law doctrine, as opposed to a question of fact." *Freedom Transp.*, 2020 WL 108670, at *3. A question that asks how the law applies to a particular set of facts won't do. *See Certain Underwriters at Lloyd's, London, Subscribing to Pol'y No. 501/NM03ACMB v. Nance*, No. CV-04-937 JB/WDS, 2006 WL 4109675, at *3 (D.N.M. Aug. 24, 2006) ("[D]istrict courts should certify questions when they are unsure what the law is, not when there is merely a dispute as to how the law applies to the facts of a particular situation."); *see also Ahrenholz v. Bd. of Tr. of Univ. of Ill.*, 219 F.3d 674, 676–77 (7th Cir. 2000) ("We think [the framers of § 1292(b)] used 'question of law' in much the same way a lay person might, as referring to a 'pure' question of law rather than merely to an issue that might be free from a factual contest.").

The § 1292(b) test also demands that "there is substantial ground for difference of opinion" on the issue. 28 U.S.C. § 1292(b). To satisfy this standard, "'the question for certification must be difficult, novel, and involve a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions.'" *Freedom Transp.*, 202 WL 108670, at *3 (quoting *Am. Fidelity Assurance Co. v. Bank of N.Y. Mellon*, No. CV-11-1284-D, 2014 WL 8187951, at *4 (W.D. Okla. Dec. 12, 2014)).

The court now applies this governing standard to the three questions defendants ask the court to certify for appeal.

## III. Analysis

The court addresses the three questions that defendants ask it to certify, below. The court concludes this case isn't one of the "extraordinary" ones meriting interlocutory appeal. So, the

court denies defendants' motion, and, below, explains why each proposed question fails to satisfy the standard articulated in 28 U.S.C. § 1292(b).

**A. Question 1**

Defendants first ask the court to certify for appeal the question "whether a public decision holding that allegations of wrongdoing are plausible under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), places any potential plaintiffs on inquiry notice of claims premised on the same factual allegations and theory of wrongdoing." Doc. 80 at 6–7.

The court begins by placing the significance of this question—in a highly summarized fashion—in the larger context of this case. Plaintiffs' Second Amended Complaint alleges some claims that facially fall outside the applicable statute of limitations periods. Doc. 72 at 17, 39–40.[2] To circumvent this problem, plaintiffs contend that equitable tolling and fraudulent concealment tolled the statute of limitations for their claims. Doc. 129 at 43–45 (Corrected 2nd Am. Compl. ¶¶ 193–204). But these doctrines toll the statute of limitations only when plaintiffs "by the exercise of due diligence could not have known that they might have had a cause of

---

[2] Plaintiffs recently filed a Corrected Second Amended Complaint. Doc. 129. The court's motion-to-dismiss Order (Doc. 72) addressed claims raised by the First Amended Complaint (Doc. 42). But neither the claims for relief nor the "Equitable Tolling, Discovery Rule, and Fraudulent Concealment" sections changed between the First and Second Amended Complaints. This Order cites to the Corrected Second Amended Complaint as the currently operative complaint.

"The statute of limitations for federal antitrust actions is four years." *Kaw Valley Elec. Coop. Co. v. Kan. Elec. Power Coop., Inc.*, 872 F.2d 931, 933 (10th Cir. 1989). And a Sherman Act antitrust claim begins to accrue "on the 'particular date' that 'a plaintiff feels the adverse impact of an antitrust conspiracy.'" *Auraria Student Hous. at Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1247 (10th Cir. 2016) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971)). Plaintiffs' alleged injury centers on paying inflated prices for Nuvigil because no generic existed to compete with Nuvigil. Doc. 129 at 42, 46 (Corrected 2nd Am. Compl. ¶¶ 189, 214). Generic forms of Nuvigil hit the market in December 2016. Doc. 129 at 37 (Corrected 2nd Am. Compl. ¶ 169). Plaintiffs' cause of action thus accrued no later than December of 2016. But plaintiffs didn't file this lawsuit until December 2, 2022, easily four years after their cause of action had accrued. Doc. 1 (Compl.) (docketed on December 2, 2022). So, on the face of the Amended Complaint, the limitations period has expired for plaintiffs' antitrust claim.

action." *In re Urethane Antitrust Litig. (Urethane I)*, 913 F. Supp. 2d 1145, 1158 (D. Kan. 2012). Defendants argued that the court's Order denying a motion to dismiss in a related case—the EpiPen MDL, which involved largely similar allegations to the ones plaintiffs plead here—sufficed to put plaintiffs on notice of their cause of action as a matter of law. Doc. 47 at 27. The court considered and rejected that argument, concluding that factual issues—inappropriate for disposition in a motion-to-dismiss order—remain. Doc. 72 at 31–39; *see also Othart Dairy Farms, LLC v. Dairy Farmers of Am., Inc.*, 720 F. Supp. 3d 1087, 1104 (D.N.M. 2024) ("At the motion to dismiss stage, the Court need only find that the Complaint does not admit the elements of an affirmative defense that Defendants assert.").

Relatedly, some of plaintiffs' state law claims accrue under the injury-discovery rule. *See* Doc. 47-2 (Defs.' Ex. 1). This rule means these claims accrue either "when a plaintiff actually discovers his injury" or "when a reasonably diligent plaintiff would have discovered the injury." *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1279 (10th Cir. 2014). So, the "limitations period generally will not begin to run until the plaintiff either has actual or inquiry notice of the injury." *Id.* at 1280. "A plaintiff is on inquiry notice whenever circumstances exist that would lead a reasonably plaintiff of ordinary intelligence, through the exercise of reasonable due diligence, to discover his or her injury." *Id.* (quotation cleaned up). Defendants argued that the court's discussion of similar allegations in a related case sufficed to put plaintiffs on inquiry notice of their claims. Doc. 47 at 25. Again, the court considered and rejected that argument. Doc. 72 at 24–25.

So, defendants' first proposed question invites the court to certify these timeliness determinations for review by our Circuit. The court declines. Defendants' first proposed question doesn't satisfy the § 1292(b) test. It neither presents a pure question of law nor

provides opportunity for a substantial disagreement about the governing law, as the court explains, below.

**1. Pure Question of Law**

Defendants argue that their proposed question "presents a purely legal issue: whether a plaintiff *necessarily* has inquiry notice of a claim when a claim with the same factual and legal basis survives a motion to dismiss in a public lawsuit." Doc. 80 at 9 (emphasis in original). The court isn't persuaded. Instead, the court concludes it isn't a "pure" legal question because it seeks guidance about how to apply black letter law to the facts of this particular case. *See Nance*, 2006 WL 4109675, at *3 (opining that certification is inappropriate "when there is merely a dispute as to how the law applies to the facts of a particular situation.").

To be sure, defendants carefully phrased their question at a high level of abstraction—a relevant issue for assessing whether the proposed question involves "a controlling question of law." *Chamberlain*, 622 F. Supp. 3d at 1071 (explaining that proposed question "must be stated at a high enough level of abstraction to lift it out of details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law" (quotation cleaned up)). But framing a question at a high level of abstraction is necessary, but not sufficient, for the court to certify it for interlocutory appeal. That's so because nearly any litigant can reframe any decision denying a motion to dismiss as an abstract question of law. At bottom, however, defendants' proposed question asks how settled law should apply to an ambiguous factual situation. According to the legal standard, that's not the kind of question appropriate for interlocutory appeal.

**2. No Ground for Substantial Disagreement**

*Second*, there's no debate about *what* the underlying law is. No one disputes the basic legal standards at issue. Start with inquiry notice. "A plaintiff is on inquiry notice whenever

circumstances would lead a reasonable plaintiff of ordinary intelligence, through the exercise of due diligence, to discover his injury." *Alden*, 764 F.3d at 1280 (quotation cleaned up). And when a plaintiff should have discovered a cause of action is an issue of fact for a jury to decide. *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985) ("It is settled law in the majority of circuits that the issue of when a plaintiff knows or with reasonable diligence should have known of a cause of action is a question of fact for the jury."). Defendants cite no case law to rebut these legal principles. *See generally* Doc. 80.

Again, there's no disagreement about what the governing legal standard is for fraudulent concealment. Fraudulent concealment can toll the statute of limitations only when plaintiffs "by the exercise of due diligence could not have known that they might have had a cause of action." *Urethane I*, 913 F. Supp. 2d at 1158.

Finally, the weight of authority precludes substantial disagreement about notice and information in the public domain. As the court explained in its Order, plaintiffs plausibly have alleged that—even with the EpiPen MDL Order—there wasn't sufficient information in the public domain to put them on inquiry notice of their claims. Doc. 72 at 20–21 (citing Doc. 42 at 46 (1st Am. Compl. ¶¶ 200–201)). The court reiterates the substantial authority supporting its ruling, below. And then the court explains why none of the cases defendants invoke convince the court to reach a different outcome.

*First*, the mere availability of information in the public domain doesn't confer notice as a matter of law. The weight of authority supports this conclusion. *E.g.*, *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1171 (5th Cir. 1979) ("The mere filing of a similar lawsuit, without more, does not necessarily give 'good ground' because that suit might well be frivolous or baseless."); *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 555 (4th Cir. 2019) ("'[T]he mere availability of

open and readily accessible public records'—such as legal filings—'may not suffice by itself to defeat a fraudulent-concealment claim,' particularly if a plaintiff lacks 'ample reason to look at these records.'" (quoting *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 911 (6th Cir. 2010)); *id.* ("[T]he fraudulent concealment doctrine requires *reasonable* diligence; it does not necessarily hold individual borrowers to the diligence standard of combing court filings in potentially related cases[.]" (emphasis in original)); *Maughan*, 758 F.2d at 1389 ("[T]he mere cumulation of 'public' information is not sufficient to show, as a matter of law, that the plaintiffs' claim was untimely."); *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 503 (9th Cir. 1988) (holding that indictment and antitrust suit filed by competitor weren't sufficient to refuse to toll statute of limitations for fraudulent concealment as a matter of law). What's more, courts routinely refuse to rule out fraudulent concealment at the motion-to-dismiss stage. *E.g.*, *Blue Cross & Blue Shield of Vt. v. Teva Pharms. Indus., Ltd.*, 712 F. Supp. 3d 499, 563 (D. Vt. 2024) ("The court is mindful that resolution of a claim of fraudulent concealment so as to toll the statute of limitations is intimately bound up with the facts of the case and is generally not proper on a Rule 12(b)(6) motion." (quotation cleaned up)); *Brown v. JBS USA Food Co.*, No. 22-CV-02946-PAB-STV, 2023 WL 6292717, at *7 (D. Colo. Sept. 27, 2023) (similar); *Harrell v. BMW of N. Am., LLC*, 517 F. Supp. 3d 527, 538 (D.S.C. 2021) ("To rule in Defendant's favor at the motion to dismiss stage, this court would have to conclude that none of the tolling doctrines apply as a matter of law. The court simply cannot reach such a conclusion based on the limited information currently before it. Further factual development is necessary.").

The only case defendants cite as one purportedly suggesting that a complaint's filing puts potential plaintiffs on inquiry notice is *Catalyst Dynamic Alpha Fund v. Valeant Pharmaceuticals International, Inc.*, No. 18-12673 (MAS) (LHG), 2019 WL 2331631 (D.N.J.

May 31, 2019). There, the District of New Jersey held that "when a complaint is filed alleging substantially similar claims as raised in the instant matter, a reasonably diligent plaintiff would have sufficient information about the facts necessary to adequately plead" a claim. *Id.* at *6. There are three problems with relying on *Catalyst* here.

*One*, it arose in the context of a Securities Act claim. *Id.* This distinction is significant because "in cases alleging securities fraud, investors [have] reason to track the companies in which they invested." *Thompson v. 1-800 Contacts, Inc.*, No. 16-CV-1183-TC, 2018 WL 2271024, at *13 (D. Utah May 17, 2018) (compiling cases). Here, in contrast, plaintiffs had no special reason to track court filings. The court can't expect plaintiffs—purchasers of prescribed medications—"to research the legal actions . . . involving [defendants], much less apply a complex economic analysis to determine that the prices [they] paid for their product were artificially inflated." *Id.* *Two*, *Catalyst* doesn't purport to hold—categorically and as a matter of law—that the filing of a complaint puts plaintiffs on inquiry notice. *See* 2019 WL 2331631. And even if it did, it'd stand out-of-step with the weight of authority the court already has cited. And *three*, one case isn't enough to provide a "substantial difference of opinion." *Freedom Transp.*, 2020 WL 108670, at *3 ("A substantial difference of opinion may exist if the district court's ruling appears contrary to the rulings of *all* courts of appeal which have reached the issue, or if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point." (emphasis added) (quotation cleaned up)).

The court doesn't find the other authority defendants cite persuasive, either. *See* Doc. 80 at 13 n.7.[3] The court already has distinguished *In re Ciprofloxacin*. 261 F. Supp. 2d 188. There,

[3] After citing *Catalyst*, defendants string cite four more cases to support their contention that the court's ruling on the EpiPen MDL Motion to Dismiss sufficed to put plaintiffs on inquiry notice as a matter of law. Doc. 80 at 13 n.7 (first citing *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 225–26 (E.D.N.Y. 2003); then citing *Berry Petrol. Co. v. Adams & Peck*, 518 F.2d 402,

the settlement press release disclosed material facts about the agreement at the heart of the settlement. Doc. 72 at 29 (citing *In re Ciprofloxacin Hydrochloride*, 261 F. Supp. 2d at 225). Not so here. In *Cohen*, the Second Circuit cited *Berry Petroleum Co.* to acknowledge that it had held "that a plaintiff in the exercise of reasonable diligence, should have discovered public lawsuits[.]" *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 363 (2d Cir. 2013) (citing *Berry Petrol.*, 518 F.2d at 410). But then the Second Circuit explained that "it does not follow that reasonable diligence will in all circumstances result in discovery of any lawsuit." *Id.* In other words, determining whether particular information in the public domain sufficed to put plaintiffs on inquiry notice is an issue of fact.

*Korwek v. Hunt*—another one of defendants' cases—involved public disclosure of information beyond the filing of lawsuits. 646 F. Supp. at 958. There, public investigations—including hearings before Congressional committees—already had revealed much of the factual basis in the complaint. *Id.* Plus, there was significant media coverage of the "events which form[ed] the basis for plaintiffs' claims[.]" *Id.* at 959.

Finally, *Insulate SB, Inc. v. Advanced Finishings Sys., Inc.* actually undercuts defendants' position. 2014 WL 943224, at *6. It says that the filing of a lawsuit *can* give notice "if the litigation uncovers information that would tend to *verify* a plaintiff's allegations or suspicions." *Id.* (emphasis added). But the court is aware of no authority suggesting that a court's motion-to-dismiss order elevates plausible allegations to verified fact. *See* Doc. 72 at 35 (explaining the absence of a single case "where a court concluded that a court order finding a complaint's allegations plausible boosted the complaint from mere allegations to some degree of verification

410 (2d. Cir. 1975), *abrogated on other grounds by Menowitz v. Brown*, 991 F.2d 36 (2d Cir. 1993); then citing *Korwek v. Hunt*, 646 F. Supp. 953, 958 (S.D.N.Y. 1986); and then citing *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. CIV. 13-2664 ADM/SER, 2014 WL 943224, at *6 (D. Minn. Mar. 11, 2014), *aff'd*, 797 F.3d 538 (8th Cir. 2015)). As explained, the court doesn't find these cases persuasive.

for the allegations"). And here, plaintiffs plausibly allege that the EpiPen MDL didn't *verify* their claims until mid-2021, when the court ruled on summary judgment motions in that case. Doc. 129 at 34–35, 44 (2nd Am. Compl. ¶¶ 158, 199). The court isn't persuaded that ruling on a motion to dismiss serves to verify because such a ruling doesn't screen the *accuracy* of the factual allegations in the complaint. *See In re Beef*, 600 F.2d at 1171 ("The leap from plaintiffs' knowledge of the . . . complaint to actual or constructive knowledge of their cause of action . . . involves factual issues."); *Conmar*, 858 F.2d at 504 ("Even if [plaintiff] were charged with knowledge of it because it was a matter of public record . . . that knowledge would not necessarily justify the filing of a complaint[.]"). In short, defendants cite no cases that hold—categorically and as a matter of law—that filing a lawsuit or a court's denial of a motion to dismiss are sufficient to confer inquiry notice on plaintiffs. In sum, the court concludes there's no "substantial ground" for disagreement about this question.[4]

So, defendants' first proposed question doesn't pass muster. The court, therefore, won't certify it. Now, the second question.

**B. Question 2**

Defendants ask the court to certify a second question: whether active concealment can be established in the absence of any concealing statement applicable either to plaintiffs themselves or the general public. Doc. 80 at 7.

---

[4] Defendants argue that "a claim is considered discovered at the point 'a reasonably diligent plaintiff would have sufficient information' to adequately plead a claim 'with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.'" Doc. 80 at 12 (quoting *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013)). While defendants cite a bunch of cases to support that standard, those cases don't prove there's substantial ground for disagreement about the governing law. That's so because a party filing a complaint—or even a court ruling on it—does nothing to give potential plaintiffs sufficient ammunition to file their own complaint. *In re Beef*, 600 F.2d at 1171 ("The mere filing of a similar lawsuit, without more, does not necessarily give 'good ground' because that suit might well be frivolous or baseless."). The cases defendants cite also (1) are not Tenth Circuit cases and (2) arise in the context of securities fraud, which involve unique dimensions, as the court already has explained.

Recall that plaintiffs pleaded fraudulent concealment to toll the statute of limitations. Doc. 129 at 44 (Corrected 2nd Am. Compl. ¶¶ 199–202). Defendants' position is that the (Second) Amended Complaint doesn't plead any "affirmative" act of concealment. *See* Doc. 80 at 14–15. But the court evaluated—and rejected—this argument already. Doc. 72 at 29–31. To summarize briefly, the Second Amended Complaint—as did its predecessor, the First Amended Complaint—alleges that defendants and their co-conspirators concealed their conspiracy by (1) reporting the two patent litigation settlements to DOJ as unrelated and (2) "'announcing the two settlements separately over the course of multiple days to conceal the fact that each settlement was consideration for the other.'" *Id.* at 29–30 (quotation cleaned up) (quoting Doc. 42 at 45 (1st Am. Compl. ¶ 197)). The court remains convinced that these two acts—when viewed in the light most favorable to plaintiffs—plausibly may constitute affirmative acts of concealment, adequate to allege fraudulent concealment. *See In re Urethane Antitrust Litig. (Urethane II)*, 235 F.R.D. 507, 519 (D. Kan. 2006) (noting that fraudulent concealment requires "any affirmative act of concealment . . . to state a claim").

Defendants disagree with the court's conclusion and that is their right. But their disagreement, no matter how sincere or steadfast, doesn't render it appropriate for immediate review. The court won't certify this question because, as with defendants' first proposed question, the second proposed question doesn't satisfy § 1292(b)'s requirements. The court and parties agree that fraudulent concealment requires an affirmative act. Doc. 72 at 26 (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1042 (10th Cir. 1980)); Doc. 80 at 14 (citing *Watson v. Mylan Pharms., Inc.*, No. 18-04137-CM-JPO, 2019 WL 3252745, at *4 (D. Kan. July 18, 2019)). "[A]uthority from the Tenth Circuit indicates that any affirmative act of concealment is adequate to state a claim." *Urethane II*, 235 F.R.D. at 519. And "'where there is a dispute as

to the existence of fraudulent concealment, the question is one for the jury.'" *Urethane I*, 913 F. Supp. 2d at 1161–62 (quoting *King & King Enters. v. Champlin Petrol. Co.*, 657 F.2d 1147, 1156 (10th Cir. 1981)).

So like defendants' first proposed question, their second proposed question fails because (1) it doesn't present a "pure" question of law and (2) there's no "substantial ground" for disagreement about what the law is. *First*, the only issue is whether the concealment that plaintiffs allege qualifies as an "affirmative act." That isn't the type of question that's appropriate for interlocutory appeal because it isn't a "pure" question of law. *See Ahrenholz*, 219 F.3d at 676–77 ("We think [the framers of § 1292(b)] used 'question of law' in much the same way a lay person might, as referring to a 'pure' question of law rather than merely to an issue that might be free from a factual contest."). Instead, it asks how the law applies to the particular set of facts plaintiffs allege here. So, defendants' second proposed question doesn't involve the sort of question of law that § 1292(b) contemplates.

And *second*, there's no debate about what the law is here—at least as defendants have framed the issue. Tenth Circuit law is clear: Fraudulent concealment requires an affirmative act. *Urethane II*, 235 F.R.D. at 519. And fraudulent concealment is a question for the jury. *Urethane I*, 913 F. Supp. 2d at 1161–62. Defendants don't contest either one of these points meaningfully. And defendants' motion adds nothing new. It merely reiterates arguments that the court has addressed already. That stratagem won't do. With no authority to directly support its position, defendants haven't shouldered their burden to prove that there is substantial ground for disagreement about the underlying legal question. The court thus won't certify the second proposed question for appeal, either.

On to question three.

**C. Question 3**

Defendants finally ask the court to certify a third question for appeal: "If a litigant agrees to lawfully settle one lawsuit in exchange for agreeing to lawfully settle another lawsuit, can that exchange of otherwise lawful settlements form the basis for an antitrust claim under *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013)[?]" Doc. 80 at 7. The court declines to certify this question, too. Guided by *Actavis*, the court is confident in its conclusion that plaintiffs have stated a plausible antitrust claim. And the court concludes that there isn't substantial ground for disagreement on this question.

Defendants' position boils down to this: *AbbVie* held there's no cause of action when two lawful settlements are combined. Doc. 80 at 17 (citing *Mayor & City Council of Baltimore v. AbbVie Inc.*, 42 F.4th 709, 715 (7th Cir. 2022)). The court's explanation for distinguishing *AbbVie* is unpersuasive. *Id.* at 18. There is thus a substantial basis for disagreement. *Id.* But that's not enough. As the court explained at length in its Order denying defendants' Motion to Dismiss, *AbbVie* involved allegations quite different than those alleged here. Doc. 72 at 41–51. So, the court isn't persuaded that defendants have satisfied their burden of showing *any* basis for disagreement, let alone a substantial one. Again, and to no one's surprise, defendants disagree with the courts' explanation. But that disagreement doesn't yield a sufficient basis to certify the question for appeal.

While the court is satisfied with the explanation it gave in its Order denying defendants' Motion to Dismiss, the court revisits this discussion to highlight a few points. *First*, as defendants recognize, *see* Doc. 80 at 19, the weight of authority supports the proposition that settlements needn't involve cash transfers to qualify as reverse payments under *Actavis*. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 545 F. Supp. 3d 922, 993 (D. Kan. 2021) (compiling cases).

*Second*, when assessing antitrust claims under *Actavis*, substance matters—not form. *F.T.C. v. AbbVie Inc.*, 976 F.3d 327, 356 (3d Cir. 2020) ("[A] reverse payment's legality depends mainly on its economic substance, not its form."). *See also Actavis*, 570 U.S. at 147 ("The FTC alleges that *in substance*, the plaintiff agreed to pay the defendants many millions of dollars to stay out of its market[.]" (emphasis added)); *In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 550 (1st Cir. 2016) (noting that "antitrust scrutiny attaches not only to pure cash reverse payments, but to other forms of reverse payment that induce the generic [manufacturer] to abandon a patent challenge" and that antitrust law "has consistently prioritized substance over form").

*Third*, a fundamental lesson from *Actavis* and its lower court progeny is that courts should remain wary of entities using patent power to cause anticompetitive harm beyond what patent law authorizes, irrespective of *how* the entities wield that patent power. *Actavis*, 570 U.S. at 158 ("Although the parties may have reasons to prefer settlements that include reverse payments, the relevant antitrust question is: What are those reasons? If the *basic reason is a desire to maintain and to share patent-generated monopoly profits*, then, in the absence of some other justification, the antitrust laws are likely to forbid the arrangement." (emphasis added)); *F.T.C. v. AbbVie*, 976 F.3d at 356 ("The purpose of antitrust law is to protect consumers from arrangements that prevent competition in the marketplace. Because of that unique purpose, economic realities rather than a formalistic approach must govern." (citations omitted and quotation cleaned up)).

Put these points together. *Actavis* doesn't sanction per se antitrust immunity for the sort of exchange plaintiffs allege here. To be certain, *Actavis* provides that parties needn't fear antitrust liability if they settle "by allowing the generic manufacturer to enter the patentee's

market prior to the patent's expiration, without the patentee paying the challenger to stay out prior to that point." 570 U.S. at 158. But this statement assumes that early entry is the *whole* settlement. That is, the Court's statement presupposes that the challenger is a rational market actor, seeking to enter that drug market as early as possible. It doesn't contemplate a side deal where the challenger is willing to accept a *later* generic entry to prolong its monopoly power over a separate drug and distinct product market. The court simply doesn't read *Actavis* to approve the sort of collusive, horse-trading-of-monopolies arrangement that plaintiffs allege here. *See id.* at 149 (noting that "the Sherman Act 'imposes strict limitations on the concerted activities in which patent owners may lawfully engage'" and that agreements may violate antitrust laws "'although settling patent disputes'" (quoting and citing *United States v. Singer Mfg.*, 374 U.S. 174, 195, 197 (1963)); *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (characterizing "collusion" as "the supreme evil of antitrust").

In *Actavis*, the Supreme Court provided substantial guidance on analyzing claims found at the intersection of patent law and antitrust law. *See generally* 570 U.S. 136. And while the Tenth Circuit has yet to weigh in explicitly on the issue, lower courts have significantly expanded that guidance in the decade-plus since the Court decided *Actavis*. *E.g.*, *F.T.C. v. AbbVie*, 976 F.3d 327; *In re Loestrin*, 814 F.3d 538. So, the court can't say that the decision here "'is not substantially guided by previous decisions.'" *Freedom Transp.*, 2020 WL 108670, at *3 (quoting *Am. Fidelity Assurance Co.*, 2014 WL 8187951, at *4). That's not to predict that the Tenth Circuit necessarily will agree. "But, as our court has recognized previously, the mere 'possibility that the Tenth Circuit may reverse the court's rulings does not warrant a postponement of this case' for an interlocutory appeal to play out." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2021 WL

4948270, at *4 (D. Kan. Oct. 25, 2021) (quoting *Pro. Serv. Indus., Inc. v. Kimbrell*, 841 F. Supp. 358, 363 (D. Kan. 1993)).

Ultimately, the best defendants can do is point to a *single* case from another circuit that *arguably* disagrees with the court's holding. And our court has explained that for "substantial ground for a difference of opinion to exist, it is not enough . . . that the only other case on point reached the opposite conclusion." *Freedom Transp.*, 2020 WL 108670, at *3 (citations omitted). *Actavis* and its progeny "substantially guided" the court's Order on defendants' Motion to Dismiss. *Id.* Defendants' third proposed question thus can't satisfy § 1292(b)'s second prong. The court won't certify it for appeal.

## IV. Conclusion

This case—like many cases—involves challenging and substantial issues. And the court recognizes the discovery burdens of an antitrust lawsuit. But that's not sufficient justification to certify questions for interlocutory appeal. Ultimately, the court concludes that the questions presented by defendants don't satisfy the 28 U.S.C. § 1292(b) criteria. In its discretion, the court thus denies defendants' Motion for Certification for Interlocutory Appeal (Doc. 80).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Certification for Interlocutory Appeal (Doc. 80) is denied.

**IT IS SO ORDERED.**

**Dated this 6th day of November 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**