UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DENA BURGE, LEIGH HOCKETT,
JORDAN FURLAN, CRISTINE RIDEY,
PATRICIA SAWCZUK, and ANNE ARUNDEL
COUNTY, individually and on
behalf of all others similarly situated,

      Plaintiffs,

v.

TEVA PHARMACEUTICAL INDUSTRIES,
LTD., TEVA PHARMACEUTICALS USA, INC.,
TEVA PARENTERAL MEDICINES, INC.,
TEVA NEUROSCIENCE, INC.,
TEVA SALES & MARKETING, INC., and
CEPHALON, INC.,

      Defendants.

Case No. 22-cv-2501-DDC-TJJ

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Compel Discovery Responses

(ECF No. 132). Defendants request an order, pursuant to Fed. R. Civ. P. 37(a), overruling the

objections of Plaintiffs Burge, Hockett, Furlan, and Anne Arundel County (collectively

"Plaintiffs")[1] to Defendants' First Sets of Requests for Production ("RFPs") and Interrogatories,

and compelling production of responsive documents, complete responsive answers, or appropriate

privilege log entries. As explained below, Defendants' motion is granted in part and denied in part.

---

[1] Defendants do not move to compel with respect to the two other plaintiffs, Ridey and Sawczuk, who were added as parties on November 5, 2024, by the filing of the Corrected Second Amended Class Action Complaint (ECF No. 129). All references herein to "Plaintiffs" therefore *exclude* plaintiffs Ridey and Sawczuk. Defendants state in their motion they served "comparable" discovery on these two new plaintiffs on November 5, 2024, but discovery responses were not served by these plaintiffs until December 5, 2024, after this motion was filed. Certifs. of Service (ECF Nos. 103 and 145).

I.      **Nature of the Case and Background Relevant to the Discovery Dispute**

Plaintiffs—representing a proposed class—allege Defendants and their co-conspirators entered an unlawful reverse payment settlement and conspired to safeguard their monopoly on Nuvigil, a wakefulness drug with the generic name Armodafinil. Plaintiffs allege Defendants agreed to stay out of the EpiPen market, allowing Mylan and Pfizer to maintain their EpiPen monopoly. In exchange, Plaintiffs contend, Mylan and Pfizer agreed to stay out of the Nuvigil market, allowing Defendants to maintain their Nuvigil monopoly.[2] Based on these factual allegations, Plaintiffs assert four claims: (1) a Sherman Act claim; (2) claims for Conspiracy and Combination in Restraint of Trade under various state laws; (3) claims for Monopolization and Monopolistic Scheme under various state laws; and (4) a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim.[3]

Early in the case, Defendants filed motions to dismiss Plaintiffs' claims as barred by the statute of limitations.[4] On March 26, 2024, Judge Crabtree denied the motion to dismiss but suggested a bifurcated approach to discovery with initial discovery focused on the pivotal issue of timeliness.[5]

At the June 13, 2024 scheduling conference, the parties discussed bifurcation of discovery and indicated their positions on the scope of initial discovery regarding the timeliness issue. The Court thereafter entered an order requiring discovery in Phase I be bifurcated and limited to the

---

[2] Most of this factual background summary of the case is taken from District Judge Crabtree's Nov. 6, 2024 Mem. & Order (ECF No. 131).

[3] Corrected Second Am. Class Action Compl. (ECF No. 129) filed on Nov. 5, 2024.

[4] ECF Nos. 33 and 47.

[5] Mem. & Order (ECF No. 74) at 40.

timeliness of Plaintiffs' claims under the applicable statute of limitations ("Timeliness/Limitations discovery").[6] On July 15, 2024, the Court entered the Phase I Scheduling Order, which reflected the parties' agreement that Phase I Timeliness/ Limitations discovery is limited to:

> [T]he timeliness of Plaintiffs' claims under the applicable statutes of limitations and any related statute-of-limitations issues, facts, and circumstances, including Defendants' statute of limitations defense or defenses (and the elements thereof) and the issues of tolling, equitable tolling, and fraudulent concealment (and the elements thereof).[7]

On August 16, 2024, Defendants served their first set of twenty-one RFPs on each Plaintiff and first set of ten Interrogatories on plaintiff Anne Arundel County ("Anne Arundel") and five Interrogatories on plaintiffs Burge, Hockett, and Furlan ("Consumer Plaintiffs.")[8] On September 20, 2024, Plaintiffs served their responses and objections to Defendants' First RFPs and Interrogatories.[9] On October 1, 2024, Defendants sent a letter to Plaintiffs regarding deficiencies in the discovery responses.[10] The parties conferred on October 10, 17 and 18, 2024.[11]

On October 17 and 18, 2024, the parties contacted chambers requesting a D. Kan. Rule 37.1(a) pre-motion discovery conference on their respective anticipated discovery-related

---

[6] Order Regarding Phase I Disc. (ECF No. 88). Phase I discovery was also allowed on the issue of personal jurisdiction over Teva Israel.

[7] Phase I Sch. Order (ECF No. 92).

[8] Defendants initially served their first sets of RFPs and Interrogatories on each of the seven plaintiffs then in the case: Edgar, Burge, Hockett, Furlan, Gilomen-Study, UHA Health Insurance, and Anne Arundel County. In this motion, Defendants only seek to compel with respect to Consumer Plaintiffs and Anne Arundel, as the three former plaintiffs (Edgar, Gilomen-Study, and UHA Health Insurance) no longer assert claims in the Corrected Second Amended Class Action Complaint (ECF No. 129) and are no longer parties in this case.

[9] Pls.' Certif. of Service (ECF No. 110).

[10] Oct. 1, 2024 Letter (ECF No. 144-1) at 7–12.

[11] Chase Decl. ¶ 4 (ECF No. 144-1).

motions.[12]   The Court held the discovery conference on October 28, 2024, but only discussed Plaintiffs' anticipated motion to compel discovery. With respect to Defendants' anticipated discovery-related motion, the Court ordered the parties to further confer after Defendants reviewed Plaintiffs' amended discovery responses, extended Defendants' filing deadline, and waived the pre-motion discovery conference requirement.[13]

On October 29, 2024, Plaintiffs served amended objections and responses to Defendants' RFPs and Interrogatories. Defendants sent another deficiency letter on October 31, 2024.[14] On November 4, 2024, Plaintiffs served their second amended objections and responses. Defendants sent an email on November 5, 2024, asserting Plaintiffs' second amended objections and responses still suffered from many of the deficiencies laid out in Defendants' prior deficiency letters.[15] This motion followed.

## II.    Duty to Confer Requirement

As a threshold matter, the Court addresses Plaintiffs' argument that Defendants' motion should be denied for failure to confer or provide the required certification. Although Defendants' motion does not contain a certification,[16] it does describe their efforts, as set out above, to confer

---

[12] Plaintiffs previously served their own set of discovery requests on Defendants and the parties meet and confer efforts included discussions regarding Defendants' responses and objections to Plaintiffs' requests.

[13] Oct. 29, 2024 Disc. Conf. Order (ECF No. 126) at 2–3.

[14] Oct. 29, 2024 Letter (ECF No. 144-1) at 18–21.

[15] Nov. 5, 2024 Email (ECF No. 144-1) at 23.

[16] *See* Fed. R. Civ. P. 37(a)(1) (requiring a motion to compel discovery to "include a certification that the movant has in good faith conferred or attempted to confer with the . . . party failing to make disclosure or discovery in an effort to obtain it without court action"); D. Kan. Rule 37.2 ("Every certification required by Fed. R. Civ. P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery . . . disputes must describe with particularity the steps taken by all attorneys to resolve the issues in dispute.").

prior to filing the motion. Based on those reported efforts, the Court finds Defendants sufficiently conferred in accordance with D. Kan. Rule 37.2 prior to filing their motion.

## III.    Legal Standards

If a party fails to produce documents as requested under Rule 34[17] or fails to answer an interrogatory submitted under Rule 33,[18] the party propounding the discovery may move for an order compelling an answer, designation, production, or inspection pursuant to Rule 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond.[19] The party filing the motion to compel need only file the motion and draw the court's attention to the relief sought.[20] At that point, the burden is on the nonmoving party to support its objections with specificity and, where appropriate, with reference to affidavits and other evidence.[21] When ruling on a motion to compel, the court will consider only those objections that have been timely asserted, and relied upon in response to the motion to compel.[22] Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned.[23] Applying this rule here, the Court will address in this Memorandum and Order only those objections Plaintiffs relied upon in response to Defendants' motion to compel, disregarding other objections asserted in their discovery responses but not addressed in the briefing.

---

[17] Fed. R. Civ. P. 37(a)(3)(B)(iv).

[18] Fed. R. Civ. P. 37(a)(3)(B)(iii).

[19] Fed. R. Civ. P. 37(a)(4).

[20] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005).

[21] *Id.*

[22] *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 615 (D. Kan. 2005).

[23] *Id.*

## IV.    A Word of Caution

Most of Plaintiffs' responses to the RFPs in dispute generally include a laundry list of objections concluding with the statement Plaintiffs agree to produce responsive nonprivileged documents and communications. For example, after a series of objections, Plaintiffs' responses to RFP 3 conclude with the following:

> Accordingly, pursuant to and consistent with the parties' meet and confer agreements, the Court's orders—including the ESI Protocol (Dkt. No. 100) and the Stipulated Protective Order (Dkt. No. 99)—and the Federal and Local Rules of Civil Procedure, Plaintiff[s] agree[] to produce responsive, non-privileged documents and communications in [their] possession, custody, or control that can be located through a reasonable, good-faith search and that relate to the timeliness of Plaintiff[s'] claims.[24]

These responses leave the propounding party and the Court guessing whether any other responsive documents are being withheld on the basis of the several objections asserted. Thus, even though Plaintiffs do not state their RFP responses are "subject to" their objections, the Court concludes they are still improper conditional objections. Nearly all of Plaintiffs' RFP responses follow this same pattern. Rather than overrule Plaintiffs' objections in this instance, the Court will address the substance of the objections and rule upon them. The Court, however, cautions counsel, if improper conditional objections are asserted in response to future discovery requests which become the subject of a motion to compel in this case, the Court will likely find the conditional objections waived in accordance with the authorities cited in its ruling on Plaintiffs' motion to compel discovery from Defendants.[25]

---

[24] RFP Resps. (ECF Nos. 133-1 to 133-4).

[25] See authorities cited on page 8 of the Court's Memorandum and Order (ECF No. 152) explaining conditional objections and their implications.

V.      **Plaintiffs' Relevance Objections to Defendants' RFPs**

Defendants request an order overruling Plaintiffs' relevance objections and compelling them to produce documents responsive to RFPs 2–4, 8–9, 13–15, 18 and 20. In their response to Defendants' motion, Plaintiffs only reassert and discuss their relevance objections to RFPs 2–4, 18, and 20.[26] Plaintiffs do not reassert or offer any argument in support of their respective relevance objections to RFPs 8–9 and 13–15. The Court therefore deems Plaintiffs to have abandoned their relevance objections to RFPs 8–9 and 13–15;[27] they must produce documents responsive to these requests that were withheld on the basis of relevance objections. The Court therefore need only address Plaintiffs' relevance objections to RFPs 2–4, 18 and 20.

A.      **RFPs 2, 4 and 20 – Plaintiffs' Responses Limited to Post-Attorney Contact**

RFP 2 requests Plaintiffs produce all documents and communications concerning their investigation into all claims in this action. RFP 4 requests documents and communications Plaintiffs received or reviewed while determining whether to take part in this action. RFP 20 seeks all communications with and/or documents provided by law firms Keller Rohrback, LLP, Sharp Law LLP and/or their counsel prior to June 5, 2023—the date Plaintiffs filed their First Amended Complaint.

Plaintiffs object to these RFPs as seeking irrelevant information and state they are "withholding on relevance grounds all documents after the first contact with counsel that only bear on the contemporaneous investigation of potential claims."[28] Defendants challenge Plaintiffs'

---

[26] Pls.' Resp. (ECF No. 144) at 4–5, 7–8.

[27] *See Cardenas*, 230 F.R.D. at 615 (finding objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned.).

[28] RFP Resps. (ECF Nos. 133-1 to 133-4)

limitation of their discovery responses to such post-attorney contact based upon their relevance objections.

Generally, the scope of discovery is limited by Rule 26(b)(1) to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." However, for purposes of this motion, Phase I discovery has been specifically limited by the parties' agreement to: (1) the timeliness of Plaintiffs' claims under the applicable statutes of limitations; (2) any related statute-of-limitations issues, facts, and circumstances, including Defendants' statute of limitations defense or defenses (and the elements thereof); and (3) the issues of tolling, equitable tolling, and fraudulent concealment (and the elements thereof). The Court will therefore evaluate Plaintiffs' relevance objections and corresponding limitations of the RFPs based upon the parties' agreed Phase I discovery scope limitation and reasonable interpretation of that agreement.

Also pertinent to the parties' discovery disputes are the statute of limitations findings and conclusions set forth in Judge Crabtree's order denying Defendants' motion to dismiss Plaintiffs' claims as barred by the statute of limitations. In his ruling, Judge Crabtree found Plaintiffs' Sherman Act and RICO claims were subject to a four-year statute of limitations, but Plaintiffs had alleged facts "capable of supporting a plausible finding or inference that fraudulent concealment and equitable tolling apply to toll the statute of limitations."[29] The Court further noted a factual dispute exists over whether and when Plaintiffs possessed either actual or constructive knowledge of their claims and over Plaintiffs' "diligence in discovering their claims."[30]

In light of the factual disputes noted above, the Court finds Defendants' RFPs 2 and 4—seeking documents and communications concerning Plaintiffs' investigation into all claims in this

---

[29] Mar. 26, 2024 Mem. & Order (ECF No. 74) at 27.

[30] *Id.* at 36, 39.

action, and those documents received or reviewed while determining whether to take part in this action—both seek discovery relevant to the time when Plaintiffs obtained actual or constructive knowledge of their claims and/or their diligence in discovering their claims. As such, RFPs 2 and 4 are proper Phase I discovery requests.

However, the Court finds RFP 20—requesting communications with and/or documents provided by Plaintiffs' law firms prior to June 5, 2023—is overly broad on its face because it is not limited to Phase I issues of Timeliness/Limitations discovery. RFP 20 contains no limitation on the subject matter or nature of the requested communications and documents. The request is therefore overly broad and would encompass communications and documents not relevant to Phase I Timeliness/Limitations discovery issues. The temporal restriction does not cure the overly broad nature of the discovery request. Additionally, to the extent RFP 20 seeks documents relevant to Phase I discovery, they would be encompassed by RFPs 2 and 4. Moreover, RFP 20 calls for the production of documents and communications *provided by* Plaintiffs' attorneys, all likely protected from discovery by attorney-client privilege and/or as attorney work product. The Court therefore sustains Plaintiffs' overly broad and relevance objections to RFP 20 in full. Plaintiffs are not required to respond to RFP 20.

Turning back to RFPs 2 and 4, Plaintiffs unilaterally limited their responses based on relevance to exclude documents and communications *after* the dates Plaintiffs first contacted attorneys to pursue claims in this action. The three Consumer Plaintiffs saw an attorney advertisement about potential claims related to Nuvigil overcharges and contacted an attorney in October 2022.[31] Anne Arundel consulted with Keller Rohrback L.L.P. attorneys and reviewed

---

[31] *See* Interrog. 2 Resps. (ECF Nos. 133-6 to 133-8) at 7.

information provided in the course of that communication "beginning in or around March 2023."[32]

In support of their relevance objection and corresponding post-attorney contact limitation, Plaintiffs argue Judge Crabtree previously concluded for Defendants to succeed on their limitations argument they must show Plaintiffs knew of the claims before December 2018 (outside the limitations time period) but did not file for over four years. Plaintiffs acknowledge the date when they first contacted counsel, and their investigations prior to that point, may be relevant to timeliness,[33] but argue documents and communications during the short investigation period from when Plaintiffs' contacted their attorneys to when they filed this action is not relevant to what Defendants concealed and when that information became publicly available.[34] Plaintiffs argue post-attorney contact investigative materials are simply not relevant for these Plaintiffs under these circumstances. Finally, Plaintiffs argue any relevance of these responsive documents is outweighed by what they claim is "almost entirely attorney-client communications and attorney work product."[35]

Defendants argue Plaintiffs' refusal to provide discovery post-attorney contact is improper. Defendants note Plaintiffs claim such information "typically" or "likely" involves attorneys, but they do not allege that is the case here. Regardless, Defendants contend to the extent the communications include publicly available information, that information is relevant to questions of diligence, inquiry, notice and whether these Plaintiffs are differently situated than the EpiPen

---

[32] *See* Interrog. 2 Resp. (ECF No. 133-5) at 7–8. Anne Arundel was not a plaintiff in the Class Action Complaint filed on December 2, 2022, but was added as a plaintiff in the First Amended Class Action Complaint (ECF No. 42) filed on June 5, 2023.

[33] Pls.' Resp. (ECF No. 144) at 4.

[34] *Id.* at 5.

[35] *Id.*

MDL plaintiffs.

The Court overrules Plaintiffs' relevance objections and corresponding limitations to post-attorney contact for RFPs 2 and 4. Documents and communications concerning Plaintiffs' investigation into their claims and those received or reviewed while determining whether to take part in this action—even *after* the dates Plaintiffs contacted their attorneys in October 2022 (March 2023 for Plaintiff Anne Arundel)—are relevant to when Plaintiffs had actual or constructive knowledge of their claims and their diligence or lack thereof in discovering their claims. For example, the documents Plaintiffs reviewed in 2022 or 2023 after they contacted their attorneys could include documents that were already in existence before 2018 and which Plaintiffs could or should have been aware of prior to 2018. The Court finds unpersuasive Plaintiffs' argument the District Judge's prior statute of limitations ruling suggests discovery for the post-attorney contact time period is irrelevant to Phase I Timeliness/Limitation issues. Defendants' motion to compel is granted with respect to RFPs 2 and 4. Plaintiffs shall produce all nonprivileged[36] documents responsive to RFPs 2 and 4, and log in a privilege log all responsive documents withheld as attorney-client privileged and/or protected by work product.

## B.    RFP 3 – Plaintiffs' Decisions to Be Named Plaintiffs

RFP 3 asks Plaintiffs to produce all documents and communications concerning their decisions to be named as plaintiffs. Plaintiffs object to the discovery requested as irrelevant because Plaintiffs' decisions to be named as plaintiffs "has no bearing on the timeliness of Plaintiff[s'] claims that are the focus of Phase I discovery."

---

[36] Plaintiffs acknowledge there are responsive documents that are not attorney-client privileged or work product. *See* Pls.' Resp. (ECF No. 144) at 5 (referring to the documents as *almost* entirely attorney-client communications and attorney work product). In any event, the post-attorney contact period is relatively limited in time and the burden of preparing the privilege log warranted.

Defendants argue RFP 3 seeks discovery relevant to the timeliness issues that are the focus of Phase I discovery. More specifically, it seeks discovery on the nature of each individual Plaintiff's pre-suit investigation, the timing of when it occurred, the documents or other information considered, and the sources of that information. Defendants contend this is relevant to whether Plaintiffs exercised diligence in bringing their claims and issues of actual, constructive and inquiry notice.

The Court overrules Plaintiffs' relevance objections to RFP 3. Discovery concerning Plaintiffs' decisions to be named as plaintiffs in this action are relevant to Phase I discovery timeliness issues. The Court finds this discovery is relevant to when Plaintiffs had actual or constructive knowledge of their claims, and Plaintiffs' diligence in discovering their claims. The Court notes Plaintiffs also object to RFP 3 to the extent it seeks information protected by attorney-client privilege and/or attorney work product, but fail to state whether documents are withheld. Plaintiffs shall produce all nonprivileged documents responsive to RFP 3 and serve amended responses to RFP 3 that state whether responsive documents are being withheld on the basis of their privilege objections. If so, they shall provide a privilege log. Defendants' motion to compel is granted with respect to RFP 3.

### C.      RFP 18 - Plaintiffs' Alleged Lack of Ability to Discover Basis for Claims

RFP 18 requests Plaintiffs produce documents on which they intend to rely in support of their allegation that "Plaintiffs lacked the ability to discover[] that the drug prices [they were] paying were higher than they should have been because of anticompetitive, fraudulent, or otherwise deceptive conduct." Plaintiffs object to this request because it seeks information that is not relevant to Phase I and seeks "premature expert discovery."

In their response to the motion to compel, Plaintiffs clarify they object to RFP 18 insofar as it seeks information that is irrelevant to Phase I discovery. They contend this request for

information relating to the Nuvigil pricing, such as documents linking the price of Nuvigil to Defendants' conduct, goes to a merits issue. Likewise, the price that they could have obtained absent Defendants' misconduct is a matter for merits-phase expert analysis. Plaintiffs maintain their response is consistent with Defendants' position that Phase I Discovery is limited "to issues concerning the timeliness of Plaintiffs' claims[.]"

Defendants argue RFP 18 seeks discovery relevant to Phase I timeliness issues. They contend the requested documents are relevant, for example, to whether Plaintiffs exercised diligence in bringing their claims and issues of notice.

The Court overrules Plaintiffs' objection that RFP 18 seeks information irrelevant to Phase I discovery. Plaintiffs' argument the discovery requested by RFP 18 is relevant solely to merits-phase expert analysis is not persuasive. RFP 18 does not request expert analysis, but it does request documents that show the factual basis for Plaintiffs' "inability" claim. Documents Plaintiffs intend to rely upon concerning their inability to discover that the drug prices they were paying were higher because of anticompetitive, fraudulent, or otherwise deceptive conduct are also relevant to when Plaintiffs had actual or constructive knowledge of their claims and whether they exercised diligence in bringing their claims. Defendants' motion to compel is granted with respect to RFP 18. Plaintiffs shall produce nonprivileged documents responsive to RFP 18 and log all responsive documents withheld on the basis of attorney-client privilege and/or work product.

## VI.     Plaintiffs' Privilege Objections

### A.     Withholding Based on Privilege Objections

Defendants argue Plaintiffs must state whether they are withholding information on the basis of their privilege objections. Defendants claim they are entitled to know when information is being withheld for privilege and at least as much information as is required by a privilege log

Plaintiffs argue their responses to RFPs 5–7, 13, and 21 already state they are withholding

documents protected by attorney-client privilege and/or attorney work product. Plaintiffs contend their RFP responses appropriately identify what categories of documents will be produced, limits on their search for responsive documents, and what documents are withheld.

Federal Rule of Civil Procedure 34(b)(2)(B) requires a party responding to a request for production of documents to "state with specificity the grounds for objecting to the request, including the reasons." Rule 34(b)(2)(C) further requires a party asserting an objection to a request for production to "state whether any responsive materials are being withheld on the basis of that objection."

Plaintiffs are correct their responses to RFPs 5–7, 13, and 21 state they are "withholding documents protected by attorney-client privilege and/or attorney work-product." However, Plaintiffs assert attorney-client privilege and/or attorney work product objections to more than just those five RFPs. Those objections are clearly deficient because they fail to state whether documents are being withheld on the basis of the objections. For those RFP privilege objections with regard to which Plaintiffs have not already stated whether documents are being withheld, Plaintiffs shall serve supplemental or amended RFP responses that state whether documents are being withheld on the basis of their privilege objections, as required by Rule 34(b)(2)(C). And again, Plaintiffs must provide a privilege log that logs all responsive documents withheld on the basis of attorney-client privilege and/or work product.

### B.    RFPs 10–19 Document Identification Work Product Objections

Defendants also argue Plaintiffs cannot refuse to produce documents on "false claims of work product" as set forth in their responses to RFPs 10–19. These RFPs seek documents on which Plaintiffs intend to rely in support of various allegations or arguments. For example, RFP 12 pertains to Plaintiffs' allegation that "[i]nformation in the public domain was insufficient to place Plaintiffs and members of the classes on inquiry notice of Teva's unlawful activities." In their

responses to RFPs 10–19, Plaintiffs object to "re-producing Defendants' documents or the documents of third parties (like Mylan and Pfizer) that Defendants have in their possession." Plaintiffs contend "[t]hese materials . . .would reveal attorney work-product."[37]

The Court initially finds the broad unlimited language of RFP 10 renders it objectionable on its face. RFP 10 would require Plaintiffs to produce "[a]ll Documents on which You intend to rely in support of Your allegations in Phase 1 of This Action." RFP 10 is therefore overly broad and outside the scope permitted by Rule 26(b)(1). Although limited to "allegations in Phase I," RFP 10 is still overly broad because it is not limited to any specific timeliness/limitations-based allegation or argument made by Plaintiffs. Defendants' motion to compel with respect to RFP 10 is therefore denied.

Unlike RFP 10, RFPs 11–19 are limited to specific timeliness/limitations allegations. Plaintiffs object to these requests, arguing that re-producing documents Defendants have in their possession "would reveal attorney work-product." They argue the wording and timing of RFPs 11–19 is important because these RFPs request documents that Plaintiffs *intend* to rely upon rather than documents "relating to or concerning" the allegations or arguments. This language therefore will "seek attorney mental impressions through document identification."

Defendants argue Plaintiffs must produce documents concerning Defendants' alleged conduct (including EpiPen MDL filings) that were previously provided by counsel. They contend it does not matter whether Defendants have the public documents; the discovery here targets what facts Plaintiffs knew (or should have known) and when, which are pivotal to the timeliness inquiry.

The Court finds the RFPs' language requiring Plaintiffs to produce documents they "intend to rely" on to support or demonstrate various allegations is essentially no different than if the

---

[37] RFP Resps. (ECF Nos. 133-1 to 133-4).

requests had simply asked for documents "in support" of the various allegations without the "rely upon" qualifying language. Furthermore, the Court overrules Plaintiffs' objections because Plaintiffs have not supported their attorney work product objections or cited any legal authority for their argument the RFPs are objectionable because they "seek attorney mental impressions through document identification." The Court finds Plaintiffs' work product argument unsubstantiated and unpersuasive. The attorney-selection argument is sufficiently analogous to cases from this District holding "an attorney's selection of documents shown to a witness in preparation for deposition testimony does not constitute work product where those documents have already been produced during discovery."[38] As explained in *New Jersey v. Sprint*, it is "too big a leap to suggest that the mere identification of documents a witness reviews at the direction of counsel improperly provides a roadmap of the attorney's strategies and opinions."[39] Another noted problem with the work product argument is it "assumes that one can extrapolate backwards from the results of a selection process to determine the reason a document was selected."[40] This rationale applies to Plaintiffs' argument here that their identification—by production—of documents responsive to RFPs 11–19 would reveal attorney work product. Plaintiffs' argument is too big a leap to show it would reveal their attorneys' thought processes or reveal why documents were selected as responsive to a particular RFP. Plaintiffs' "document identification" work product

---

[38] *See Northern Nat. Gas Co. v. Approximately 9117.53 Acres*, 289 F.R.D. 644, 647–48 (D. Kan. 2013) (collecting cases).

[39] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 436 (D. Kan. 2009).

[40] *Northern Nat. Gas*, 289 F.R.D. at 649–50 (quoting dissent in *Sporck v. Peil,* 759 F.2d 312, 319 (3d Cir. 1985)).

objections to RFPs 11–19 are overruled.[41]

Plaintiffs also argue RFPs 11–19 effectively seek premature Rule 26(a)(3)(A)(iii) disclosures. Defendants acknowledge Plaintiffs need not "disclose" the specific documents required by that Rule, but that does not absolve their responsibility to produce the documents requested here. The Court disagrees with Plaintiffs that RFPs 11–19 seek premature disclosures required by Rule 26(a)(3)(A)(iii). That Rule does not require disclosure of documents a party intends to rely upon, but rather "evidence that it may present at trial"[42] and specifically, with respect to the identification of documents, those "the party expects to offer and those it may offer if the need arises."[43] Plaintiffs' objections RFPs 11–19 call for premature Rule 26(a)(3)(A)(iii) disclosures are overruled.

Finally, with respect to Plaintiffs' objections to re-producing documents responsive to RFPs they claim Defendants already have in their possession, Plaintiffs need not produce responsive documents again. Instead, if Plaintiffs believe Defendants already have responsive documents in their possession, Plaintiffs may alternatively opt to serve supplemental or amended responses to RFPs 11–19 that identify by Bates Number(s), or other identification method, all documents responsive to these RFPs.

Defendants' motion to compel is granted with respect to RFPs 11–19. Plaintiffs shall produce or identify all nonprivileged documents responsive to RFPs 11–19, and log all responsive documents withheld on the basis of attorney-client privilege and/or work product.

---

[41] However, this ruling does not preclude Plaintiffs from relying upon any *document-specific* attorney-client privilege and/or attorney work product protections Plaintiffs assert and log on a privilege log.

[42] Fed. R. Civ. P. 26(a)(3)(A).

[43] Fed. R. Civ. P. 26(a)(3)(A)(iii).

### C.    Logging Privileged Documents

Defendants also ask the Court to compel Plaintiffs to log withheld privileged documents that are responsive to *all* the RFPs. Plaintiffs' response suggests instead they will only log withheld privileged documents responsive to RFPs 5–7 and 21.

Plaintiffs' responses to RFPs 2–21 repeat the following statement with respect to producing and logging privileged documents:

> During meet and confer, the Teva Defendants clarified and agreed that their First Set of Requests for Production do not seek the production of any privileged documents. The Teva Defendants further clarified and agreed that their First Set of Requests for Production do not seek the production or logging of documents previously produced in the EpiPen MDL unless Plaintiffs intend to use or rely on those documents in the present Action and the documents are not produced by the party who originally produced them in the EpiPen MDL.[44]

For RFPs 5–7, 13 and 21, Plaintiffs also state they are withholding documents based on attorney-client privilege and/or attorney work product privilege and "will log any documents if required by the Parties' ESI Protocol."[45] The ESI Protocol provides that privileged or otherwise protected documents dated after the filing of the first complaint on December 2, 2022, do not need to be logged except that communications with Plaintiffs first identified or included in the First Amended Complaint filed on June 5, 2023, must be logged for the time period through June 5, 2023.[46]

Although Defendants state they are not seeking to compel Plaintiffs to produce privileged documents at this time, they clarify in their reply, that "Plaintiffs must log withheld documents

---

[44] RFP Resps. (ECF Nos. 133-1 to 133-4). It is not clear whether Defendants dispute Plaintiffs' assertion that Defendants agreed certain documents need not be logged.

[45] *Id.*

[46] Order Governing the Production of Electronically Stored Information and Documents (ECF No. 100) at 17. The ESI Protocol also reflects the parties' agreements on what specific information the producing party must include on a privilege log and that privilege logs shall be "exchanged within thirty days after each document production." *Id.* at 17–18.

responsive to *all* RFPs, and not just those responsive to RFPs 5–7, and 21."[47]

The party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable.[48] A party asserting a privilege in response to discovery requests is subject to the requirements of Rule 26(b)(5)(A), which requires a party withholding information otherwise discoverable by claiming that the information is privileged to:

> (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.[49]

A privilege log must provide sufficient information to allow the other party to assess the claimed privilege.[50] If a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived.[51]

Plaintiffs are asserting attorney-client privilege and work product protections to nearly all Defendants' RFPs, and therefore have the burden of establishing the applicability of their asserted privileges and/or protections. This entails providing a privilege log for all responsive documents withheld that contains sufficient information for the privilege or protection to be assessed. It is thus fundamental that all responsive documents a party withholds from production as attorney-client privileged and/or attorney work product in response to a discovery request must be listed on

---

[47] Defs.' Reply (ECF No. 146) at 2.

[48] *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984).

[49] Fed. R. Civ. P. 26(b)(5)(A).

[50] *Banks v. St. Francis Health Ctr., Inc.*, No. 15-CV-2602-JAR-TJJ, 2015 WL 7451174, at *4 (D. Kan. Nov. 23, 2015).

[51] *New Jersey*, 258 F.R.D. at 448.

a privilege log. In this case, the parties have stipulated under Fed. R. Civ. P. 29 to exclude some privileged responsive documents from the logging requirements, as memorialized in their ESI Protocol. Plaintiffs however may not unilaterally exclude privileged documents from the logging requirements. Defendants' motion is therefore granted to the extent it requests an order compelling Plaintiffs to log all documents responsive to *all* RFPs to which they have asserted attorney-client privilege and/or work product objections, except documents exempt from logging pursuant to the provisions of the ESI Protocol.[52]

## VII.     Interrogatory Responses in Dispute[53]

### A.     Anne Arundel's Response to Interrogatory 3 (Actions to Investigate or Pursue Claims)

Defendants request Anne Arundel be compelled to supplement its response to Interrogatory 3, which seeks the principal and material facts regarding what actions, if any, Anne Arundel took to investigate or otherwise further pursue its claim, including identifying all documents and communications that played any part in the process.[54]

Anne Arundel asserted several objections to Interrogatory 3, including that it seeks information protected by attorney-client privilege and/or attorney work product. It incorporated by

---

[52] To the extent this Memorandum and Order requires Plaintiffs to log documents withheld on the basis of attorney-client privilege and/or work product, the Court's orders are not intended to override the logging exemption set out in the parties ESI Protocol.

[53] Defendants initially moved to compel with respect to Interrogatories 3–5 to all Plaintiffs, and 6 and 9 to Anne Arundel. Defs.' Mem. in Supp. of Mot. (ECF No. 133) at 9–11. In their reply (ECF No. 146), Defendants omit any substantive discussion regarding Interrogatory 6, thereby suggesting Interrogatory 6 is no longer in dispute. In any event, the Court finds Anne Arundel has sufficiently answered Interrogatory 6.

[54] Pl. Anne Arundel Interrog. Resp. (ECF No. 133-5) at 8.

reference its response to Interrogatory 2[55] and stated, in pertinent part:

> Beginning in or around March 2023, Plaintiff Anne Arundel County consulted with Keller Rohrback L.L.P. attorneys and reviewed information provided in the course of those communications.
>
> ***
>
> Additionally, starting on or around April 7, 2023, and extending to at least May 31, 2023, Anne Arundel County reviewed transactional data for prescriptions filled by participants in its various health plans for Nuvigil and the EpiPen during the time frame 2012–2016.[56]

Defendants argue in their reply that the only action Anne Arundel identifies is "consult[ing] with Keller Rohrback L.L.P. attorneys." They state if Anne Arundel did nothing else, it need not supplement, but if it did more, Anne Arundel must supplement without any ambiguity.

Fed. R. Civ. P. 33 governs interrogatories. It provides that each interrogatory "must, to the extent it is not objected to, be answered separately and fully in writing under oath."[57] It further requires the grounds for objecting "must be stated with specificity."[58] "An objection to an interrogatory must be specific and must be supported by a detailed explanation of why the interrogatory is objectionable."[59] The party objecting to interrogatories has the burden to support

---

[55] Interrogatory 2 inquired regarding the principal and material facts leading Anne Arundel to conclude it had a potential claim and to be added as a plaintiff.

[56] Pl. Anne Arundel Interrog. Resp. (ECF No. 133-5) at 7–8.

[57] Fed. R. Civ. P. 33(b)(3).

[58] Fed. R. Civ. P. 33(b)(4).

[59] *Mannell v. Kawasaki Motors Corp.*, No. 89-4258-R, 1991 WL 34214, at *2 (D. Kan. Feb. 22, 1991).

its objections,[60] unless the interrogatory is overly broad on its face.[61] However, the moving party

bears the burden to show that the disputed interrogatory responses are deficient or incomplete.[62]

The Court finds Anne Arundel's response to Interrogatory 3 is sufficient. Anne Arundel

answered Interrogatory 3 by stating it consulted with Keller Rohrback L.L.P. attorneys and

reviewed transactional data for prescriptions filled by participants in its various health plans for

Nuvigil and the EpiPen during the time frame 2012–2016. Defendants have not met their burden

to show the interrogatory response is deficient or incomplete. The interrogatory response is of

course always subject to supplementation as required by Fed. R. Civ. P. 26(e). Defendants' motion

to compel Anne Arundel to supplement its answer to Interrogatory 3 is denied.

### B.      Plaintiffs' Responses to Interrogatory 4 (Actions Taken or Not Taken by Teva and/or Mylan Causing Plaintiffs to Not File Earlier)

Interrogatory 4 asks Plaintiffs to:

> State the principal and material facts regarding Any action allegedly taken or not taken by Teva and/or by Mylan caused You not to file Your claims in this Action earlier than You did, Including each specific action taken or not taken, and the date(s) thereof; the date(s) on which You became aware of each such alleged action; how You came to be aware of each such alleged action; and how Your awareness of each such action influenced Your conduct in relation to investigating or filing a potential claim against Defendants.[63]

Plaintiffs object to Interrogatory 4 as vague and ambiguous, compound and disjunctive,

---

[60] *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2192860, at *1 (D. Kan. July 25, 2007) (citing *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 661–62 (D. Kan. 2004)).

[61] *Swackhammer*, 225 F.R.D. at 661 ("Unless an interrogatory is overly broad on its face, the party resisting discovery has the burden to support its overbreadth objection.").

[62] *See High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 4526770, at *12 (D. Kan. Sep. 28, 2011) (finding that even if the answering party waived its objections to interrogatories, the moving party "has the burden to show that [the answering party's] interrogatory responses are deficient or incomplete").

[63] Pls.' Interrog. Resps. (ECF Nos. 133-5 to 133-8).

speculative, seeking irrelevant information, and seeking information protected by attorney-client privilege and/or attorney-work product doctrine. After conferring with Defendants, Plaintiffs then served amended responses limited to the "non-privileged principal and material facts and circumstances regarding at what time Plaintiff[s] contend[] that there were facts publicly available sufficient to bring a claim, what were those facts, when did Plaintiff[s] learn about those facts, and how did Plaintiff[s] learn about those facts." Plaintiffs then responded to Interrogatory 4:

> There were enough facts publicly available to bring a claim in June 2021 when this Court released its summary judgment order and unsealed the related exhibits in In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation, Case No. 17-md-2785-DDC-TJJ. [Plaintiffs] learned about these facts from [their] attorneys in this case [after October 10, 2022 for Plaintiffs Burge and Furlan; October 13, 2022 for Plaintiff Hockett; beginning in or around March 2023 for Anne Arundel].[64]

Plaintiffs argue Interrogatory 4 is confusing because it requires a hypothetical analysis of how certain actions or inactions might have influenced Plaintiffs' conduct and asks Plaintiffs to explain how their "awareness of each such action influenced" their behavior. Plaintiffs also argue Interrogatory 4 is compound, asking for: (1) what information do Plaintiffs contend Defendants concealed; and (2) when do Plaintiffs contend there was sufficient information public for a reasonably diligent person to be aware of their claims and when did these Plaintiffs become aware of that information. Plaintiffs claim they limited their response based upon discussions with counsel during the parties meet-and-confer.

Defendants contend Plaintiffs' responses are deficient because they did not answer the question posed in Interrogatory 4. They also dispute Interrogatory 4 is compound, arguing what Plaintiffs allege Defendants concealed and the date when Plaintiffs became aware of such actions

---

[64] *Id.*

are part of a "common theme" and thus permissible in a single interrogatory.

An interrogatory is not necessarily objectionable simply because it is compound or contains subparts.[65] Fed. R. Civ. P. 33(a)(1) sets numerical limit on the number of interrogatories a party may serve and that limit includes all "discrete subparts." In determining what constitutes a "discrete subpart," courts in this District have found an interrogatory containing subparts directed at eliciting details concerning a "common theme" to constitute a single interrogatory.[66] "An interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question," while an interrogatory with "subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation."[67]

In this case, the Phase I Scheduling Order limits Defendants to five interrogatories on each named individual plaintiff and ten interrogatories on Anne Arundel. Defendants served the maximum number of interrogatories allowed on each Plaintiff. Plaintiffs argue here that Interrogatory 4 is compound and asks for at least two distinct things.

The Court finds Interrogatory 4 should be considered a single interrogatory and overrules Plaintiffs' compound objections. Although it contains multiple subparts, those subparts are directed at eliciting details concerning the common theme of inquiring about Plaintiffs' knowledge of Defendants' actions that caused them to delay filing their claims. The subparts inquire regarding the specific actions, the dates thereof, how Plaintiffs became aware of the actions, and how those actions influenced their conduct. As such, Interrogatory 4 constitutes a single interrogatory for

---

[65] *Zapata v. IBP, Inc.*, No. 93-2366-EEO, 1997 WL 50474, at *1 (D. Kan. Feb. 4, 1997).

[66] *High Point SARL*, 2011 WL 4036424, at *3; *Swackhammer*, 225 F.R.D. at 664–65.

[67] *High Point SARL*, 2011 WL 4036424, at *3 (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2168. 1, at 261 (2d ed. 1995)).

purposes of the numerical limit set in the Phase I Scheduling Order.

The Court further finds Interrogatory 4 seeks information relevant to Phase I Timeliness/Limitations discovery and overrules Plaintiffs' relevance objections. Plaintiffs have not sufficiently answered all subparts of Interrogatory 4. Defendants' motion to compel is granted as to Interrogatory 4. Plaintiffs shall serve supplemental or amended responses to Interrogatory 4 that answer all subparts.

### C.    Plaintiffs' Responses to Interrogatory 5 (Actions Taken to Monitor Whether Overcharged for Nuvigil)

Interrogatory 5 asks Plaintiffs to:

> State the principal and material facts regarding All actions [they] took, at any time from 2012 to the date of the filing of the First Amended Complaint, to monitor whether [they] were being overcharged for Nuvigil and/or generic armodafinil and/or whether [they] might have Any claim related to a payment [they] made for Nuvigil and/or generic armodafinil, Including Identifying All Documents and Communications that played Any part in the process.[68]

Plaintiffs object to Interrogatory 5 as vague and ambiguous, overbroad and unduly burdensome, over-inclusive, compound and disjunctive, seeking irrelevant information, and seeking information protected by attorney-client privilege and/or attorney-work product doctrine. After limiting their responses to non-privileged principal and material facts and circumstances limited to claims against Defendants, the Consumer Plaintiffs responded they were:

> aware of the price of [their] prescription medication, but did not have the ability to discover "overcharges" in drug prices including for Nuvigil and/or generic armodafinil and/or to uncover nonpublic or concealed information that the drug prices for Nuvigil and/or generic armodafinil were higher than they would or should have been but for the Teva Defendants' conduct at issue in this lawsuit. [They] only became aware of the potential overcharge caused by the Teva Defendants' conduct

---

[68] Pls.' Interrog. Resps. (ECF Nos. 133-5 to 133-8).

at issue in this lawsuit when [they] saw the attorney advertisement in October 2022.[69]

Anne Arundel similarly objected and responded to Interrogatory 5, providing a more lengthy summary of the actions it took during the time period requested to monitor drug costs and whether it was being overcharged, and to monitor drug trends and industry trends.

Defendants move to compel Plaintiffs to supplement their responses if they did anything to monitor whether they were being overcharged for armodafinil products, even if related to other parties. They complain the Consumer Plaintiffs did not explain in their responses why they did not have the ability to discover overcharges in drug prices, and Anne Arundel does not state what news and industry publications it follows, or critically, whether it took any actions to monitor litigations involving Nuvigil. Defendants argue as an example, Anne Arundel does not state whether it uses Google Alerts or litigation tracking software or services, which might have provided news regarding the EpiPen MDL.

Plaintiffs argue Defendants' position, at its base, is that Plaintiffs should have answered questions that were not asked. Interrogatory 5 did not ask whether Anne Arundel employees had "Google Alerts" for Nuvigil, or ask Plaintiffs to identify any "litigation tracking software" they utilized. Plaintiffs contend Defendants can probe these issues at Plaintiffs' depositions. But Plaintiffs maintain they responded to the posed questions with the requisite conscientious endeavor and Defendants provide no authority supporting their position to the contrary.

Defendants argue in their reply that if Plaintiffs do not monitor litigations to determine if they have claims, then they need not supplement Interrogatory 5. If Plaintiffs monitor litigations, then their responses are deficient and must be supplemented. Here, too, they argue there must be

---

[69] Consumer Pls.' Interrog. Resps. (ECF Nos. 133-6 to 133-8).

no ambiguity permitted.

Plaintiffs' responses to Interrogatory 5 are sufficient except that they failed to identify documents and communications, if any, that played any part in their monitoring process. Defendants have not met their burden to show Plaintiffs' interrogatory responses to Interrogatory 5 are otherwise deficient or incomplete. For example, Interrogatory 5 does not ask Plaintiffs whether they monitored relevant litigations. As Plaintiffs suggest, Defendants can ask follow-up questions inquiring in further detail at Plaintiffs' depositions. Defendants' motion to compel Plaintiffs to supplement Interrogatory 5 is therefore granted insofar as Plaintiffs must identify the documents and communications requested, but is otherwise denied.

### D.    Plaintiff Anne Arundel's Response to Interrogatory 9 (Systems or Processes to Monitor Legal Developments)

Interrogatory 9 asks Anne Arundel to:

> Identify any systems or processes that [it has] in place to monitor legal developments or other events that may be relevant to [its] work, business, or operations and may provide a basis for asserting a claim, including, but not limited to, press releases related to drug approvals; the expected timing of drug product launches; and/or patent settlements.[70]

Anne Arundel objects to this Interrogatory as vague and ambiguous, overbroad and unduly burdensome, overinclusive, seeking irrelevant information, requiring a legal conclusion, compound, and seeking information protected by attorney-client privilege and/or attorney-work product doctrine. It then provided a substantive four-paragraph response identifying its systems and processes.

Anne Arundel argues Defendants' motion to compel is moot with respect to Interrogatory 9. It asserts that it conferred with Defendants about Interrogatory 9's broad language requesting it

---

[70] Anne Arundel Interrog. Resp. (ECF No. 133-5) at 22 (internal capitalization removed for readability).

identify "any system or processes" to monitor any "events," and the parties agreed to limit Interrogatory 9 to: "press releases related to drug approvals; the expected timing of drug product launches; and/or patent settlements." Anne Arundel states it has responded to Interrogatory 9 as appropriately narrowed, but now Defendants disavows that agreement. Anne Arundel requests that Interrogatory 9 be limited as the parties agreed.

Defendants do not dispute they agreed to limit Interrogatory 9 as set out by Plaintiffs. Instead, they argue in their reply that this interrogatory goes to the heart of whether Anne Arundel exercised reasonable diligence in investigating potential claims. Anne Arundel did not respond with what it does, if anything, to monitor legal developments, and thus should be compelled to do so.

Based upon its review of Anne Arundel's response to Interrogatory 9, the Court finds it contains overly broad language requesting Anne Arundel identify "any system or processes" to monitor any "events." Anne Arundel's overbroad objections to Interrogatory 9 are sustained. The response, as limited by the overbroad objection, sufficiently answers Interrogatory 9, including what it does to monitor legal developments, subject to any attorney-client privilege and/or work product objections. Defendants have not met their burden to show the interrogatory response is otherwise deficient or incomplete. Defendants' motion to compel Anne Arundel to supplement Interrogatory 9 is denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Discovery Responses (ECF No. 132) is **granted in part and denied in part**. Plaintiffs' relevance objections to RFPs 2–4 and 18 are overruled and their relevance objections to RFPs 8–9 and 13–15 deemed abandoned. Defendants' motion is granted as to these RFPs. Plaintiffs shall produce (or identify by Bates Number(s)) all nonprivileged documents responsive to **RFPs 2–4, 8–9, 13-15, and 18**,

including those being withheld on the basis of their <u>relevance</u> objections, and log all responsive documents withheld on the basis of attorney-client privilege and/or work product, except documents exempt from logging pursuant to the provisions of the ESI Protocol.

**IT IS FURTHER ORDERED** that Plaintiffs' "document identification" work product objections to RFPs 11–19 are overruled. Defendants' motion is granted as to these RFPs. Plaintiffs shall produce (or identify by Bates Number(s)) all documents responsive to **RFPs 11–19**, and log all responsive documents withheld on the basis of attorney-client privilege and/or work product, except documents exempt from logging pursuant to the provisions of the ESI Protocol.

**IT IS FURTHER ORDERED** that Defendants' motion is denied as to **RFPs 10 and 20**.

**IT IS FURTHER ORDERED** that for **all RFP responses, except for RFPs 10 and 20**, where Plaintiffs have not already stated whether documents are being withheld, Plaintiffs shall also serve supplemental or amended responses expressly stating whether documents are being withheld on the basis of their attorney-client privilege and/or work product objections, as required by Fed. R. Civ. P. 34(b)(2)(C).

**IT IS FURTHER ORDERED** that Plaintiffs shall serve supplemental or amended responses to **Interrogatory 4** that answer all subparts. Plaintiffs' responses to **Interrogatories 3, 5, and 9** are sufficient, except that Plaintiffs must identify documents and communications, if any, that played any part in the monitoring process as requested by **Interrogatory 5**.

**IT IS FURTHER ORDERED** that all production and supplemental or amended responses ordered herein shall be served **<u>within fourteen (14) days of the date of this Order</u>**.

**IT IS FURTHER ORDERED** that Plaintiffs shall serve their privilege log(s) **<u>within thirty (30) days after the production ordered herein</u>**.

IT IS SO ORDERED.

Dated February 11, 2025, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge