UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DENA BURGE, LEIGH HOCKETT, JORDAN FURLAN, CRISTINE RIDEY, PATRICIA SAWCZUK, and ANNE ARUNDEL COUNTY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICAL INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., TEVA PARENTERAL MEDICINES, INC., TEVA NEUROSCIENCE, INC., TEVA SALES & MARKETING, INC., and CEPHALON, INC.,<br><br>Defendants. | Case No. 22-cv-2501-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Compel Plaintiff Anne Arundel County ("Anne Arundel") to Designate Additional Custodians (ECF No. 154). Defendants request an order compelling Anne Arundel to designate three additional custodians (all in-house attorneys) for purposes of Phase I document collection and production, and to produce responsive documents from those custodians. Anne Arundel opposes the motion. As explained below, Defendants' motion is granted with respect to adding in-house counsel Tyler as a Phase I custodian but is otherwise denied.

### I.    Nature of the Case and Discovery Dispute Background

Plaintiffs—representing a proposed class—allege Defendants and their co-conspirators entered an unlawful reverse payment settlement and conspired to safeguard their monopoly on

Nuvigil, a wakefulness drug with the generic name Armodafinil. Plaintiffs allege Defendants agreed to stay out of the EpiPen market, allowing Mylan and Pfizer to maintain their EpiPen monopoly. In exchange, Plaintiffs contend, Mylan and Pfizer agreed to stay out of the Nuvigil market, allowing Defendants to maintain their Nuvigil monopoly.[1] Based on these factual allegations, Plaintiffs assert four claims: (1) a Sherman Act claim; (2) claims for Conspiracy and Combination in Restraint of Trade under various state laws; (3) claims for Monopolization and Monopolistic Scheme under various state laws; and (4) a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim.[2] Anne Arundel joined the lawsuit as a named plaintiff with the filing of the First Amended Class Action Complaint on June 5, 2023.[3]

Early in the case, Defendants filed a motion to dismiss Plaintiffs' claims as barred by the statute of limitations.[4] On March 26, 2024, Judge Crabtree denied the motion to dismiss in part, but suggested a bifurcated approach to discovery with initial discovery focused on the pivotal issue of timeliness.[5]

At the June 13, 2024 scheduling conference, the parties discussed bifurcation of discovery and indicated their positions on the scope of initial discovery regarding the timeliness issue. The Court thereafter entered an order requiring discovery in Phase I be bifurcated and limited to the timeliness of Plaintiffs' claims under the applicable statute of limitations ("Timeliness

---

[1] Most of this factual background summary of the case is taken from District Judge Crabtree's Nov. 6, 2024 Mem. & Order (ECF No. 131).

[2] Corrected Second Am. Class Action Compl. (ECF No. 129) filed on Nov. 5, 2024.

[3] First Am. Class Action Compl. (ECF No. 42).

[4] ECF No. 47.

[5] Mar. 26, 2024 Mem. & Order (ECF No. 74) at 40.

discovery").[6] On July 15, 2024, the Court entered the Phase I Scheduling Order, which reflected the parties' agreement that Phase I Timeliness discovery be limited to:

> [T]he timeliness of Plaintiffs' claims under the applicable statutes of limitations and any related statute-of-limitations issues, facts, and circumstances, including Defendants' statute of limitations defense or defenses (and the elements thereof) and the issues of tolling, equitable tolling, and fraudulent concealment (and the elements thereof).[7]

The Court also entered, upon the parties' request, an Order Governing the Production of Electronically Stored Information and Documents ("ESI Protocol") (ECF No. 100). It includes the parties' agreements with respect to identification and collection of documents, and sets forth the following agreed provision regarding the parties' identification of Phase I custodians:

> The parties shall . . . identify those **key persons whose files are likely to contain documents relating to the subject matter of Phase I of this litigation, limited to the topics of the timeliness/limitations of Plaintiffs' claims** . . . as set out in the Court's Order dated June 14, 2024 [D.I. 88] (each a "Phase I Custodian"), along with a description of the proposed Phase I Custodians' job title and brief description of such person's responsibilities . . . . The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional Phase I Custodians be searched and meet and confer regarding such request.[8]

In response to Defendants' discovery requests and pursuant to the ESI Protocol, Anne Arundel designated as Phase I custodians the following five employees within its Office of Personnel, the department that administers its pharmacy benefits: Benefits Manager Shaquisha Bishop ("Bishop"); Personnel Officer Anne Budowski ("Budowski"); Senior Personnel Analyst & Contracts Administrator Natalie Fretz ("Fretz"); Benefits Contract Consultant/Senior Personnel

---

[6] Order Regarding Phase I Disc. (ECF No. 88). Discovery was also allowed on the issue of personal jurisdiction over Teva Israel.

[7] Phase I Sch. Order (ECF No. 92).

[8] ESI Protocol (ECF No. 100) ¶ V.A.1 (bold added).

Analyst & Contracts Administrator (ret.) Douglass Hart ("Hart"); and Assistant Personnel Officer Kelly Lovett ("Lovett").[9]

Defendants raised issues regarding the custodians designated by Anne Arundel and requested additional Phase I custodians be designated.[10] At an October 28, 2024 discovery conference, Anne Arundel argued the additional custodians Defendants requested were duplicative of its five already-named custodians and Defendants' request was premature as Plaintiffs had not yet produced any documents. The Court agreed Defendants' request for additional custodians was premature and ordered the parties to further confer after review of Anne Arundel's substantially completed document productions. The parties provided an update on the status of their custodian dispute at a January 28, 2025 status conference.

Anne Arundel substantially completed its production of documents on January 31, 2025.[11] After Defendants reviewed that document production, they emailed Anne Arundel renewing their request for additional custodians, stating "Anne Arundel does not appear to have produced any documents that actually are responsive to [Defendants'] RFPs for which it agreed to produce documents."[12] Unable to resolve the dispute after further email exchanges, Defendants timely filed their motion requesting Anne Arundel designate additional Phase I custodians on February 14, 2025.[13]

---

[9] *See* Aug. 30, 2024 Email identifying first four custodians (ECF No. 154-1) at 4–5. Anne Arundel later identified Lovett as a fifth custodian during the parties' conferral process. *See* Oct. 8, 2024 Letter (ECF No. 159-1) at 3 n.2.

[10] Oct. 25, 2024 Disc. Position Statement (ECF No. 154-2) at 3–4.

[11] Anne Arundel's Opp'n to Defs.' Mot. (ECF No. 159) at 4.

[12] Feb. 10, 2025 Email (ECF No. 154-3) at 5.

[13] *See* Status Conf. Order (ECF No. 150) ¶ 2(b), (d) (setting motion deadline and waiving D. Kan. Rule 37.1(a) pre-motion conference requirement).

## II.    Legal Standards

This Court has previously addressed motions requesting that a party responding to discovery designate additional custodians for searches of electronically stored information ("ESI"). In the case *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litigation* ("*EpiPen MDL*"),[14] the court set forth the following general principles applicable to motions to compel a party to designate additional custodians:

> First, "determining what is relevant and proportional under the circumstances for each matter often requires a highly fact-specific inquiry." Second, absent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems "most likely to possess responsive information and to search the files of those individuals." Third, unless the party's choice is "manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient," the court should not dictate the designation of ESI custodians. Fourth, the party seeking to compel the designation of a particular additional ESI custodian has the initial threshold burden of showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case. This is because the party responding to discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case. Fifth, mere speculation that one's position as a senior executive might increase the relevance of that individual's files is not a basis for designating that individual as a custodian.[15]

Only a few cases in the District of Kansas have addressed discovery disputes regarding requests for a party to designate additional ESI custodians. In the *EpiPen MDL*, Mylan and Sanofi each requested the other designate former CEOs as additional ESI custodians. The court found each had met its burden of showing that one executive-level custodian for each party was "likely to have unique information and ESI, not available through other [of its] custodians, relevant to the

---

[14] No. 17-MDL-2785-DDC-TJJ, 2018 WL 1440923, at *1 (D. Kan. Mar. 15, 2018). Some of the same attorneys appearing for Plaintiffs and Defendants in this case also represented parties in the *EpiPen MDL*.

[15] *Id.* (citations omitted).

claims and defenses in the case."[16] The court found, based upon exhibits and information presented at a status conference, that the requested custodians, in their roles as former CEOs during the relevant time period were involved in discussions and decisions concerning relevant issues in the case.[17] In *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*,[18] the court denied the defendant's motion to add the plaintiffs' outside counsel of record to their custodian list, finding the defendant had not demonstrated the plaintiffs' productions to be deficient without him designated as a records custodian. In an earlier case where additional custodians were requested, *In re Syngenta AG MIR 162 Corn Litigation*, the court found good cause to increase the number of designated custodians from five to fifteen upon a showing that they were "fairly high level managers with direct knowledge about important aspects of [that] case."[19] The court granted a later motion to compel the plaintiff to designate two additional custodians, finding the requested custodians were likely to have unique, discoverable information, not previously captured and the plaintiff had not demonstrated an undue burden in searching the requested custodians' records.[20]

## III.    The Parties' Positions

    Defendants request Anne Arundel be compelled to designate, and produce responsive

---

[16] *Id.* at *4.

[17] *Id.* at *3–*4. (The court required Mylan to designate one of its former CEOs, Coury, who held that position when Mylan raised the prices of its EpiPen products. The court likewise required Sanofi to designate its CEO Viehbacher, who held that position during the relevant time period. The court, however, did not require Sanofi to designate former CEO Brandicourt, who had less significant involvement and resided in France).

[18] No. 19-CV-4007-HLT-TJJ, 2022 WL 834066, at *6 (D. Kan. Mar. 21, 2022).

[19] *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-02591-JWL-JPO (D. Kan. June 23, 2015), ECF No. 861 (text entry).

[20] *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-02591-JWL, 2019 WL 5622318, at *2–*3 (D. Kan. Oct. 31, 2019).

documents from, additional custodians, including the following three in-house attorneys who work in Anne Arundel's Office of the Law: Genevieve Marshall ("Marshall"), Hamilton Tyler ("Tyler"), and Lori Blair Klasmeier ("Klasmeier"). Defendants argue this relief is warranted for three reasons: (i) Anne Arundel's substantially complete document production does not include documents on numerous Phase I topics, and the documents it has produced demonstrate that many of the Phase I topics fall within the purview of Anne Arundel's Office of Law, yet no in-house attorneys are currently designated as Phase I custodians; (ii) Anne Arundel's discovery responses to date demonstrate additional custodians likely have relevant, non-duplicative documents responsive to Phase I; and, (iii) Anne Arundel has not and cannot substantiate its argument that any purported undue burden outweighs the likely benefit of the proposed additional discovery.

Anne Arundel opposes adding custodians, arguing: (i) Defendants only offer speculative arguments, which fail to meet their burden to show Anne Arundel's selection of its Phase I custodians was manifestly unreasonable or the additional requested custodians are likely to have unique information responsive to Phase I timeliness discovery requests; (ii) any non-privileged, relevant documents its in-house attorneys Tyler, Marshall, or Klasmeier may have would be duplicative of the existing custodians' documents; and (iii) the burden of adding these attorneys as custodians—thus requiring it to collect and review all the documents, produce nonprivileged responsive documents, and log privileged documents—would far outweigh the likely benefit of whatever limited, nonprivileged documents in-house counsel may have that are responsive to Defendants' discovery requests.

## IV.    Whether Anne Arundel Should Be Compelled to Designate Additional Phase I Custodians

Under the legal standards set forth above, the Court considers the following framework in analyzing Defendants' request to compel Anne Arundel to designate additional Phase I custodians.

7

First, the Court determines whether Defendants have met their burden to show Anne Arundel's document production from its existing custodians is manifestly unreasonable or deficient. Second, the Court determines whether Defendants have established that the specifically identified in-house attorneys should be added as additional custodians because each is likely to have relevant, non-duplicative responsive documents. Finally, the Court considers proportionality by determining whether the burden and expense that would be imposed by compelling additional custodians would be outweighed by the likely benefit of the discovery.

### A. Whether Anne Arundel's Document Production from its Existing Custodians is Manifestly Unreasonable or Deficient

The Court starts from the premise that it should not dictate the designation of a responding party's custodians unless the party's choice is "manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient."[21] Defendants thus bear the burden of demonstrating Anne Arundel's designation of five employees within its Office of Personnel, the department that administers pharmacy benefits, as its Phase I custodians is manifestly unreasonable or its resulting document production from those custodians would be deficient. Mere speculation based upon a requested custodian's title or position is not enough to satisfy this

---

[21] *EpiPen MDL*, 2018 WL 1440923, at *2 (quoting *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. CV 13-373-SDD-EWD, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018)). *See also LifeScan, Inc. v. Smith*, No. CV 17-5552 (CCC)(JSA), 2023 WL 11986899, at *3 (D.N.J. Sept. 27, 2023) ("While our courts normally play no role in search design, search tools, search terms or designation of custodians, a court may intervene when a party demonstrates that the choices of those items are 'manifestly unreasonable,' or the requesting party 'demonstrates that the resulting production is deficient.'") (citing *Mortg. Resolution Servicing v. JP Morgan Chase Bank, NA*, No. 15-CV-0293, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017)).

burden.[22]

Defendants argue Anne Arundel's document production—limited to searches from five custodians in its Office of Personnel—is deficient because it contains virtually no documents responsive to Phase I timeliness issues. They argue the production does not include a "a single document on litigation monitoring or tracking, Anne Arundel's actual or constructive knowledge of its claims, any diligence or pre-suit investigation Anne Arundel conducted, its decision to be a named plaintiff in this action, or the facts it learned that gave it reason to believe it had a claim."[23] Defendants argue almost all the 1,250 documents Anne Arundel produced from these custodians have no clear relevance to Phase I timeliness topics. Defendants assert the only seemingly relevant documents are ten that relate to Anne Arundel joining in the EpiPen MDL class post-settlement and 128 documents hitting on the term "Nuvigil," which largely relate to formulary placement. Defendants contend these results show Anne Arundel's production is plainly deficient and underscores that Anne Arundel has not designated the correct Phase I custodians.

Anne Arundel argues Defendants mischaracterize the bulk of its production as merely "formulary placements and agreements." Rather, taken together, Anne Arundel contends its documents demonstrate its due diligence practices are responsive to Defendants' document requests, and "cover the waterfront of issues" that concern the cost of drugs as pertinent to Phase

---

[22] *EpiPen MDL*, 2018 WL 1440923, at *2 (citing *Mortg. Resolution*, 2017 WL 2305398, at *3) (speculation that a senior executive's position might increase the relevance of his files is not a basis for designating him as a custodian). *See also Harrington Enters., Inc. v. Safety-Kleen Sys., Inc.*, No. 13-00167-CV-W-BP, 2014 WL 12611318, at *3 (W.D. Mo. July 11, 2014) ("To compel Defendant to expend undue cost and burden to produce supplemental ESI—when Plaintiff's reasons for requesting such discovery are based on speculation that the proposed custodians' positions and a few emails in the related litigation might lead to admissible evidence—would be contrary to Rule 26(b)."). *See also Garcia v. Tyson Foods, Inc.*, No. 06-2198-JWL, 2010 WL 5392660, at *14 (D. Kan. Dec. 21, 2010) (the moving party "must present something more than mere speculation that responsive e-mails *might* exist in order . . . to compel the searches and productions requested") (emphasis in original).

[23] Defs.' Mem. in Supp. of Mot. (ECF No. 155) at 7.

I discovery. Anne Arundel maintains its interrogatory responses and document production are fully responsive, and it has produced documents that demonstrate and substantiate its practices and procedures for monitoring drug price overcharges and litigation. Anne Arundel lists the following examples of documents it has produced from these custodians: documents forming the basis of its contract with pharmacy benefit manager CVS/Caremark; concerning its annual prescription drug plan performance review; demonstrating its auditing practices aimed at reviewing its prescription drug plans; and reflecting the drug Nuvigil's removal from its formularies when generics became available. It contends these documents show members of the Office of Personnel, including its five currently designated custodians from that department, communicate about drug pricing with the third parties that administer its health care and prescription drug plans.

The Court finds Defendants have satisfied their initial burden to show Anne Arundel's document production from its existing five custodians is deficient.[24] Context is important here. Recall that discovery has been bifurcated. Discovery during Phase I, which is where the parties are today, is limited to the timeliness of Anne Arundel's claims under the applicable statute of limitations. Yet Defendants contend the bulk of documents produced through Anne Arundel's five designated custodians do not relate to Phase I timeliness topics specifically identified by Defendants. Anne Arundel's response fails to show otherwise. Broad assertions such as its claim that the documents produced "cover the waterfront" fail to rebut Defendants' assertion. Defendants argue the decision whether to join a lawsuit as a named plaintiff is a serious one for a governmental entity such as Anne Arundel and logically would have involved its in-house attorneys. Similarly, litigation tracking and monitoring and pre-suit investigations are matters in-house attorneys are

---

[24] Given the custodians Anne Arundel has designated, its stated rationale and arguments for choosing them, and examples of documents that have been produced from these custodians, the Court does not find Anne Arundel's designation of only these custodians to be manifestly unreasonable.

typically involved in. The Court finds Defendants' arguments regarding the likely involvement of Anne Arundel's in-house attorneys in activities relevant to the pivotal issues of timeliness at issue here persuasive.

Defendants offer more than mere speculation to support their deficiency argument. Defendants reference an email exchange they claim shows Anne Arundel's currently designated custodians from its Office of Personnel turn to in-house counsel from the Office of Law to determine how to proceed in legal matters such as whether Anne Arundel should join a class action lawsuit. They also reference an Anne Arundel interrogatory response they claim shows in-house counsel were intimately involved in Anne Arundel's decision to be a named plaintiff in this case and had numerous communications with outside counsel, with no other Anne Arundel employees copied on those communications.

After review of the referenced email exchange and interrogatory response, the Court finds Defendants make a persuasive argument that Anne Arundel's exclusion of *any* in-house attorney from the Office of Law as a custodian causes their current custodian designations and resulting production to be deficient. The Court finds compelling the October 22, 2021 email exchange referenced by Defendants from a CVS Account Executive to Bishop in Anne Arundel's Office of Personnel, regarding the deadline for filing a claim in the EpiPen settlement.[25] This email was then forwarded by Bishop to Lovett, another employee within its Office of Personnel, with the message: "Seems like it would be a good idea to file a claim(s). Should we talk to Law or have we typically handled these types of things ourselves?"[26] Lovett then forwarded the email to Hart, also in the Office of Personnel, who responded:

---

[25] Oct. 22, 2021 Email (ECF No. 154-5) at 3.

[26] *Id.* at 2.

> "We should file a claim(s) and you are correct, we should consult with the Office of the Law to see who should take the lead on this and how to proceed. Ham [Tyler] or Lori [Klasmeier] usually consulted with us on these. We just need to get it filed timely online before the deadline if the Office of Law concurs."[27]

This email shows that the Office of Personnel employees typically consult with an attorney in the Office of the Law regarding the filing of drug pricing litigation claims, as occurred in the EpiPen settlement notice.

Defendants also reference Anne Arundel's response to Interrogatory 10. That interrogatory response shows two attorneys in the Office of Law, Marshall and Tyler, had multiple communications with Plaintiffs' outside counsel regarding "Possible Nuvigil Litigation." Of note, none of the current designated custodians from the Office of Personnel are included or copied on many of those communications. The Court is persuaded by Defendants' argument that this interrogatory response supports the conclusion Anne Arundel's in-house attorney(s) likely received and reviewed documents before Anne Arundel became a named plaintiff in this case and were likely involved in investigating its potential claims and decision to become a named plaintiff. The Court is further convinced that some communications to or from Anne Arundel's in-house counsel relevant to the pivotal issue of timeliness likely occurred without involvement of members from the Office of Personnel and therefore would not be identified or produced through the currently designated custodians.

Anne Arundel does not deny that the referenced email exchange shows members of its Office of Personnel consult with its in-house attorneys, but rather argues these emails actually supports its designation of custodians from the Office of Personnel. Anne Arundel contends that its in-house attorneys would have conferred with the Office of Personnel custodians before

---

[27] *Id.* The Court understands "Ham" as referring to the first name of in-house attorney Tyler and "Lori" as the first name of Klasmeier.

bringing any claim regarding drug price litigation and therefore "any non-privileged, relevant documents" in the possession of its in-house attorneys would be duplicative of those from the existing custodian. Anne Arundel also attaches declarations from attorneys Tyler and Marshall stating "[a]ny factual information concerning drug price litigation during the relevant timeframe would have come from or been received by members of the Office of Personnel."[28] Both also deny knowledge "of any alleged trade-for-delay scheme involving the Defendants" before Anne Arundel was contacted by outside counsel in March 2023 and state they would not be able to evaluate the viability of a drug-price related claim or settlement without first enlisting the assistance of employees in the Office of Personnel.[29]

The Court is not persuaded by these arguments. In fact, as discussed above, the third amended response to Interrogatory 10 indicates members of Anne Arundel's Office of Law had relevant communications on which members of the Office of Personnel were not included or copied. This refutes Anne Arundel's argument that "any non-privileged, relevant documents" in the possession of its in-house attorneys would be duplicative of those from the existing custodians. As for the declarations of Tyler and Marshall, they contain conclusory statements upon which the Court is unwilling to base its determination of proper custodians in this case.[30] The Court finds

---

[28] Tyler Decl. (ECF No. 159-4) at ¶ 8; Marshall Decl. (ECF No. 159-6) at ¶ 9. Klasmeier's declaration likewise states this but adds on "working with the third-party administrators of the County's health benefits and prescription drug plans and with possible assistance from Personnel's consultant, Aon." Klasmeier Decl. (ECF No. 159-5) at ¶ 7.

[29] Tyler Decl. at ¶¶ 5, 7; Marshall Decl. at ¶¶ 6, 8. Klasmeier denies knowledge of any alleged trade-for-delay scheme involving Defendants until the filing of this motion. Klasmeier Decl. at ¶ 4. She also states that she conferred with members of the Office of Personnel to evaluate the viability of a claim after receiving a notice of a class action settlement regarding whole drug prices, approximately a decade ago. *Id.* at ¶¶ 5–6.

[30] *Cf. Tartt v. Unified Sch. Dist. No. 475,* No. 23-02146-EFM, 2024 WL 3328576, at *3–*4 (D. Kan. July 8, 2024) (disregarding portions of affidavits containing conclusory or self-serving statements).

Defendants have satisfied their initial burden to show Anne Arundel's document production resulting from its existing five custodians is deficient.

**B.     Whether Specific Identified In-House Attorneys Should Be Designated as Additional Phase I Custodians**

The Court next determines whether Anne Arundel's in-house attorneys Tyler, Marshall, and/or Klasmeier should be designated as additional Phase I custodians. This requires a showing they are key persons whose files are likely to contain relevant, non-duplicative documents responsive to Phase I. Again, Defendants have the initial threshold burden of showing that each requested custodian likely has relevant, non-duplicative documents responsive to Phase I timeliness discovery.

**1.     Tyler**

Defendants argue Anne Arundel's in-house counsel Tyler had numerous communications with outside counsel, as shown in Anne Arundel's third amended response to Interrogatory 10. His declaration states he "oversee[s] the litigation conducted by the Office of Law, including affirmative litigation" since 2015, which time period would encompass both the EpiPen MDL and this action. Defendants also argue emails produced by Anne Arundel show that existing designated custodians in the Office of Personnel are not the decision-makers and instead "consult with the Office of Law to see who should take the lead . . . and how to proceed" when deciding whether to join settlements or litigation. Finally, Defendants argue Anne Arundel's privilege log shows Tyler sent or received communications described on the log as "Proposed EpiPen/Nuvigil litigation" and "Attorney Advertising – Teva Lawsuit."

Anne Arundel primarily relies upon Tyler's declaration supporting the designation of the existing custodians from the Office of Personnel and disavowing his knowledge of Nuvigil's trade-for-delay scheme prior to contact by outside counsel in March 2023. Anne Arundel asserts its

privilege log shows Tyler conferred with its currently designated custodians when considering litigation concerning drug pricing. It points to an entry the day after receiving correspondence about the trade-for-delay scheme involving Nuvigil, indicating the Office of Law sent an email with the subject line "Fwd: Attorney Advertising – Teva Lawsuit" to, among others, custodian Lovett of the Office of Personnel. Several weeks later, Lovett returned an email in the same chain to the Office of Law, attaching documents reflecting factual materials prepared at request and direction of counsel. And on April 27, Tyler of the Office of Law reached out to Christine Anderson, and custodian Budowski in an email with the subject line "Proposed EpiPen/Nuvigil litigation" that attached documents titled "EpiPen-Nuvigil litigation" and "Nuvigil-EpiPen data," providing legal advice regarding potential Nuvigil litigation.

After review of the referenced exhibits, the Court finds Defendants have shown that in-house attorney Tyler is a key person whose files are likely to contain relevant documents relating to Phase I timeliness discovery. First, Tyler's own declaration shows he was significantly involved in Anne Arundel's decision to join this action as a plaintiff. In his role as the Deputy County Attorney in charge of Anne Arundel's Litigation Section, he oversaw the litigation conducted by the Office of Law, including affirmative litigation.[31] He also directed the submission of Anne Arundel's claim after receiving a notice of class action settlement regarding EpiPen.[32]

Anne Arundel's third amended response to Interrogatory 10 further supports Defendants' argument that in-house attorney Tyler was involved with discussions with outside counsel (and possibly others) surrounding the possible Nuvigil litigation during the time period April 13, 2023 through June 2, 2023. He is listed as a sender (frequently the only identified sender) or recipient

---

[31] Tyler Decl. at ¶ 2.

[32] *Id.* at ¶ 4.

of all but three communications with outside counsel regarding the claims at issue in this case and/or regarding EpiPen MDL before the filing of the First Amended Complaint.[33]

Anne Arundel's privilege log also supports a finding that Tyler was significantly involved in the investigation of the trade-for-delay scheme involving Nuvigil in 2023 as his name appears throughout the log. The fact that existing custodian Lovett is also included on these email communications—documents which were obtained from a search of Lovett and Budowski's email—does not establish that an Office of Personnel custodian was included on all communications involving the trade-for-delay scheme involving Nuvigil. The privilege log provided, consisting of only nine entries, does not support Anne Arundel's argument that adding Tyler as a custodian would not result in a materially different document production than from its existing custodians.

Defendants have met their burden and shown that in-house attorney Tyler is a key person whose files are likely to contain relevant, non-duplicative documents responsive to Phase I and should be added as another Phase I custodian. Anne Arundel shall designate in-house attorney Tyler as a Phase I custodian and search his files and records to determine whether they contain documents responsive to the Phase I timeliness topics.

## 2. Marshall and Klasmeier

With respect to attorneys Marshall and Klasmeier, Defendants have not shown them to be key persons likely to have relevant, non-duplicative Phase I timeliness discovery. For both, their level of involvement in the pertinent timeliness topics appears more sporadic and much less significant than Tyler's involvement. Attorney Marshall is an attorney in its Office of Law's

---

[33] 3d Am. Interrog. Resps. (ECF No. 159-7) at 42–43.

Litigation Section and provides advice and representation in employment defense matters.[34] Attorney Klasmeier sits within the Operations side of the Office of Law and primarily advises on legislation, land use, and budget related issues.[35] She also interacts with the Office of Personnel on pension issues and once assisted in filing a claim regarding a class action settlement concerning wholesale drug price litigation, but that was approximately a decade ago.[36] Their positions within the Office of Law and reported responsibilities suggest they would not have been significantly involved with matters relevant to the Phase I Timeliness Topics.

Both Marshall and Klasmeier's names do appear in a couple of emails, Anne Arundel's supplemental response to Interrogatory No. 10, and a privilege log. Marshall is the attorney who assisted in filing Anne Arundel's claim in the EpiPen MDL settlement and her name appears on the privilege log as a recipient for the communications with outside counsel regarding "potential Nuvigil litigation." Klasmeier is mentioned as one of the attorneys the Office of Personnel had consulted with in the October 22, 2021 email exchange. However, the Court finds that none of these limited references warrants designating Marshall or Klasmeier as additional Phase I custodians, particularly since the Court is requiring Anne Arundel to designate in-house counsel Tyler as an additional custodian. To the extent Anne Arundel's Office of Law was involved in matters relevant to Phase I timeliness, relevant communications and documents should be discovered through the designation of Tyler as a custodian. Defendants' request that Anne Arundel designate in-house attorneys Marshall and Klasmeier as additional Phase I custodians is therefore denied.

---

[34] Marshall Decl. at ¶¶ 2–3.

[35] Klasmeier Decl. at ¶¶ 2–3.

[36] *Id.* at ¶¶ 3, 5.

**C.      Proportionality Considerations: Whether Burden and Expense of an Additional Custodian Would Be Outweighed by the Likely Benefit**

Finally, the Court considers whether compelling Anne Arundel to designate Tyler as an additional custodian is "proportional to the needs of the case," as required by Federal Rule of Civil Procedure 26(b)(1). Under that Rule, the Court considers: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Applying proportionality to custodian disputes, courts have commented that the Federal Rules "do not require a responding party to embark on an unrestricted search through the ESI of every senior executive employee in the hopes of finding additionally potentially relevant material, especially where it has almost certainly already been gathered, processed and reviewed."[37]

Anne Arundel claims compelling it to designate additional custodians will require it to run the searches, collect and review "probably volumes of non-responsive documents," produce nonprivileged responsive documents, and log all privileged documents. It argues the associated burden and expense of this additional work far outweighs the likely benefit of whatever limited, nonprivileged documents in-house counsel may have that are responsive to Defendants' discovery requests. It claims Defendants' burden analysis fails to consider two types of documents likely to exist in the files of its in-house counsel custodians: (1) internal communications and (2) communications with outside counsel regarding this case. And it contends such communications are indisputably privileged and will necessarily be swept into Anne Arundel's document collection

---

[37] *Newman v. Associated Press*, No. 24-CV-20684, 2024 WL 4433465, at *5 (S.D. Fla. Oct. 4, 2024) (citing *Enslin v. Coca-Cola Co.*, No. 14-CV-06476, 2016 WL 7042206, at *15 (E.D. Pa. June 8, 2016)).

because of Defendants' search terms for "Nuvigil," and the law firm name of its outside counsel.

Defendants argue Anne Arundel's arguments fail for multiple reasons. They contend Anne Arundel need only review, produce and, where claiming privilege, log documents that hit on the parties' agreed upon search terms, and thus documents "wholly unrelated to this litigation" will not be reviewed. Defendants also point out the Court has already found that the post-attorney contact period is relatively limited and the burden of preparing the privilege log warranted, and Defendants have undertaken the same exercise with respect to responsive documents involving their own in-house counsel.

Anne Arundel fails to provide any specific information or evidentiary support for the time and expense it would incur searching the files and records of the requested custodians, reviewing the "probable volumes of non-responsive documents," and logging any responsive privileged documents. Without evidence of the anticipated burden that Anne Arundel would incur, the Court has insufficient information to make a proportionality determination.[38] Here, with proportionality in mind, the Court will only require Anne Arundel to designate one in-house Anne Arundel attorney as an additional Phase I custodian, a much smaller burden than requiring the designation of all three in-house attorneys as custodians. But, without any specific information from Anne Arundel documenting how burdensome it would be to collect and review Tyler's files and records for responsive documents and log privileged documents, the Court cannot find the burden and expense Anne Arundel will incur outweighs the likely benefit of the Phase I timeliness discovery located as a result of designating him a custodian. Nor has Anne Arundel shown the Phase I

---

[38] *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-02591-JWL, 2019 WL 5622318, at *3 (D. Kan. Oct. 31, 2019) (party objecting to designating additional custodians provided no affidavit or other evidence of the burden it would incur, leaving the court without information sufficient to make a proportionality determination) (citing *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, No. 12-2350-SAC, 2014 WL 806122, at *8 (D. Kan. Feb. 28, 2014)).

timeliness discovery sought from Tyler's files and records is likely wholly duplicative of the existing custodians from the Office of Personnel. To be clear, the Court finds it is essential that Anne Arundel add Tyler as an additional custodian, otherwise the Phase I discovery in this case would be deficient.

The Court has no information upon which it can base a determination of the potential volume of documents, emails or other information that a search of Tyler's files may generate utilizing the prescribed search terms and temporal timeframe in this case. Perhaps that volume is significant, perhaps not (and the Court will not attempt to define "significant" here). The Court recognizes because Tyler is an attorney there will be some challenges unique to him as opposed to the non-attorney custodians in this case. Therefore, if warranted based upon the search(es) of Tyler's files, the Court strongly encourages the parties to confer in good faith and discuss possible refinements in search terms and/or temporal scope, as well as possible refinements of the privilege log "logging" requirements relative to (and unique to) Tyler's files. Additionally, the Court has set aside **May 7, 2025 at 1:30 PM (central)** for a Zoom discovery conference with counsel, *if needed*, to discuss any concerns or disputes regarding the production required by this order. Counsel must confer in good faith and submit a joint report by email to the Court by **5:00 PM (central) on May 5, 2025**. This joint report of no more than five (5) pages shall inform the Court of the number of "hits" resulting from the search(es) of Tyler's files and the total volume of related discovery, indicate whether any disputes exist and, if so, summarize the parties' disputes and their efforts to resolve them. If there are no major disputes, the Zoom discovery conference will be canceled.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Plaintiff Anne Arundel County to Designate Additional Custodians (ECF No. 154) is **granted in part and denied in part**. The motion is granted with respect to adding in-house counsel Hamilton Tyler as a Phase

I custodian but is otherwise denied.

**IT IS FURTHER ORDERED** that after Anne Arundel has added Tyler as a custodian and searched his files and records (including e-mail) and after the parties have conferred in good faith regarding the results of the search(es), the parties shall email a joint report to the Court, by **5:00 PM (central) on May 5, 2025**, including the information noted above. If needed, the Court will hold a Zoom discovery conference on **May 7, 2025 at 1:30 PM (central)** to discuss concerns or disputes regarding the production required by this Order.

**IT IS FURTHER ORDERED** that **within thirty (30) days of the date of this Order**, Anne Arundel shall produce any non-privileged responsive documents from its search of Tyler's files and records. Any privileged responsive documents withheld from production shall be included on Anne Arundel's privilege log, except documents exempt from logging pursuant to the provisions of the ESI protocol. The privilege log is due **thirty (30) days after the deadline for production.**

IT IS SO ORDERED.

Dated April 14, 2025, at Kansas City, Kansas.

_Teresa J. James_
Teresa J. James
U. S. Magistrate Judge