UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DENA BURGE, LEIGH HOCKETT,
JORDAN FURLAN, CRISTINE RIDEY,
PATRICIA SAWCZUK, and ANNE ARUNDEL
COUNTY, individually and on
behalf of all others similarly situated,

       Plaintiffs,

v.

TEVA PHARMACEUTICAL
INDUSTRIES, LTD.,
TEVA PHARMACEUTICALS USA, INC.,
TEVA PARENTERAL MEDICINES, INC.,
TEVA NEUROSCIENCE, INC.,
TEVA SALES & MARKETING, INC., and
CEPHALON, INC.,

       Defendants.

Case No. 22-cv-2501-DDC-TJJ

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Compel Non-Parties Burns

Charest LLP, Keller Rohrback L.L.P., and Sharp Law LLP ("Law Firms") to Produce Documents

(ECF No. 160). Defendants request an order, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), compelling

three Law Firms representing the named Plaintiffs in this action to comply with Phase I subpoenas

for the production of documents. The Law Firms oppose the motion. As explained below,

Defendants' motion is granted in part and denied in part.

# I.      Nature of the Case and Discovery Dispute Background

Plaintiffs—representing a proposed class—allege Defendants and their co-conspirators entered an unlawful reverse payment settlement and conspired to safeguard their monopoly on Nuvigil, a wakefulness drug with the generic name Armodafinil. Plaintiffs allege Defendants agreed to stay out of the EpiPen market, allowing Mylan and Pfizer to maintain their EpiPen monopoly. In exchange, Plaintiffs contend, Mylan and Pfizer agreed to stay out of the Nuvigil market, allowing Defendants to maintain their Nuvigil monopoly.[1] Based on these factual allegations, Plaintiffs assert four claims: (1) a Sherman Act claim; (2) claims for Conspiracy and Combination in Restraint of Trade under various state laws; (3) claims for Monopolization and Monopolistic Scheme under various state laws; and (4) a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim.[2]

Early in the case, Defendants filed a motion to dismiss Plaintiffs' claims as barred by the statute of limitations.[3] Judge Crabtree denied Defendants' motion.[4] Pertinent here, he found Plaintiffs' Sherman Act and RICO claims were subject to a four-year statute of limitations, but Plaintiffs had alleged facts "capable of supporting a plausible finding or inference that fraudulent concealment and equitable tolling apply to toll the statute of limitations."[5] He further noted a factual dispute exists over whether and when Plaintiffs possessed either actual or constructive

---

[1] Most of this factual background summary of the case is taken from District Judge Crabtree's Nov. 6, 2024 Mem. & Order (ECF No. 131).

[2] Corrected Second Am. Class Action Compl. (ECF No. 129) filed on Nov. 5, 2024.

[3] ECF No. 47.

[4] Mar. 26, 2024 Mem. & Order (ECF No. 74).

[5] *Id.* at 17.

knowledge of their claims and over Plaintiffs' "diligence in discovering their claims."[6] Judge Crabtree also concluded Plaintiffs plausibly alleged Defendants actively concealed their wrongdoing, but stated Defendants "are free to attempt to persuade the jury that a reasonable plaintiff should've had notice of their claims from the press releases or Mylan's disclosure" regarding the patent litigation settlements.[7] He also addressed Defendants' argument the EpiPen MDL plaintiffs were represented by several of the same lawyers in this case, noting "[a]s an initial matter, the court can't rely on the knowledge of plaintiffs' lawyers" in order to impute plaintiffs' counsel's knowledge onto plaintiffs themselves if there is "no indication these plaintiffs had a relationship with their attorneys in 2017."[8]

Judge Crabtree's ruling also suggested a bifurcated approach to discovery with initial discovery focused on the pivotal issue of timeliness.[9] The undersigned Magistrate Judge subsequently entered the Phase I Scheduling Order, which limited Phase I Timeliness/Limitations discovery to:

> [T]he timeliness of Plaintiffs' claims under the applicable statutes of limitations and any related statute-of-limitations issues, facts, and circumstances, including Defendants' statute of limitations defense or defenses (and the elements thereof) and the issues of tolling, equitable tolling, and fraudulent concealment (and the elements thereof).[10]

As part of Phase I discovery, Defendants served subpoenas upon three law firms that represent Plaintiffs in this action: Keller Rohrback, L.L.P. ("Keller"), Sharp Law LLP ("Sharp"),

---

[6] *Id.* at 36, 39.

[7] *Id.* at 31.

[8] *Id.* at 31–32.

[9] *Id.* at 40.

[10] Phase I Sch. Order (ECF No. 92).

and Burns Charest LLP ("Burns"). The subpoenas contain four requests: Subpoena Requests 1 and 2 seek documents and communications the Law Firms disseminated soliciting potential plaintiffs for participation, respectively, in the EpiPen MDL and this action. Request 3 seeks documents and communications related to the EpiPen MDL made publicly available via the Law Firms' websites or any other platform from January 1, 2016 through the present. Request 4 seeks documents and communications related to this action made publicly available via the Law Firms' websites or any other platform from January 2021 through the present.

The Law Firms served their respective responses to the subpoenas, asserting various objections, including relevance, burden, and privilege. Following and in response to the Court's February 11, 2025 ruling on Defendants' motion to compel discovery from Plaintiffs,[11] the Law Firms served amended responses and objections to the subpoenas.[12]

As part of their document productions, Keller and Sharp initially produced "webpages located on [their] own website[s] and advertisements and press releases posted on social media platforms such as Facebook" as screenshots, which are static images of the pages.[13] Defendants claimed the screenshots produced were deficient because: (1) they were produced without the "associated metadata" sufficient to identify the dates made public; (2) they failed to display user interactions with social media posts (e.g., "like," "share," or "comment"); and (3) they did not include responsive materials accessible via links in the social media posts.[14] Defendants contended

---

[11] Mem. & Order (ECF No. 153). The Court's order, *inter alia,* overruled Plaintiffs' relevance objections and corresponding limitations to post-attorney contact. *Id.* at 7–11.

[12] ECF Nos. 166-5 to 166-7.

[13] Fierro Decl. (ECF No. 166-12) ¶ 14; Feb. 25, 2025 Email (ECF No. 166-8) at 3–8 (referencing Sharp's production of screenshots).

[14] Feb. 20 and 25, 2025 Emails (ECF No. 166-8) at 3, 6.

the lack of metadata could be corrected through a "proper collection of the requested information via a native export or one of many e-discovery tools available."[15] Keller thereafter supplemented its production for the social media posts.[16]

Defendants subsequently reported that their own investigation revealed additional online publications regarding the EpiPen MDL litigation the Law Firms never produced. Defendants attached screenshots of the located publications,[17] and requested the Law Firms produce them along with "appropriate metadata."[18] In response, Keller and Sharp stated they did not produce past versions of their websites because they do not maintain or have an archive of them.[19] After further email attempts to confer about the Law Firms' objections to the subpoenas, Defendants timely filed their motion to compel.[20]

## II.   Legal Standards

Federal Rule of Civil Procedure 45 governs subpoenas served upon non-parties. Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. "The scope of discovery under a subpoena is the same as party discovery permitted by

---

[15] *Id*. at 6.

[16] Feb. 25, 2025 Email (ECF No. 166-8) at 3; Feb. 26, 2025 Email (ECF No. 166-9). It is not clear from the email string or motion briefing whether Sharp also supplemented its production regarding the social media posts. *See* Feb. 26, 2025 Email (ECF No. 166-8) at 7 (stating the Law Firms would not be supplementing Sharp's production).

[17] ECF No. 166-14.

[18] Feb. 28, 2025 Email (ECF No. 166-10) at 4.

[19] Keller Am. Resp. (ECF No. 166-5) at 8 n.1; Sharp Am. Resp. (ECF No. 166-6) at 9 n.1.

[20] *See* Jan. 29, 2025 Status Conf. Order (ECF No. 150) at 2–3 (setting motion deadline and waiving D. Kan. Rule 37.1(a) pre-motion conference requirement).

Fed. R. Civ. P. 26."[21]  The court must determine "whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards as set forth in Rule 26(b) and as applied to Rule 34 requests for production."[22] Under Rule 26(b)(1), unless otherwise limited by court order, the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

The party issuing the subpoena must take "reasonable steps to avoid imposing undue burden or expense" on the subpoenaed entity.[23] With respect to a subpoena that requests electronically stored information ("ESI"), Rule 45(e)(1) provides that if a subpoena does not specify a form for producing ESI, it must be produced in a form or forms "in which it is ordinarily maintained or in a reasonably usable form or forms," and need not be produced "in more than one form."[24]  The subpoenaed entity need not provide discovery of ESI from sources identified as "not reasonably accessible because of undue burden or cost."[25] But if a motion to compel discovery is filed, the subpoenaed entity must show that the ESI is not reasonably accessible because of undue burden or cost.[26] If that showing is made, the court may nonetheless order discovery from such

---

[21] *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)). *See also* Fed. R. Civ. P. 45 advisory committee note to the 1970 amendment (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules").

[22] *Stewart v. Mitchell Transp.*, No. 01-2546-JWL, 2002 WL 1558210, at *3 (D. Kan. July 11, 2002).

[23] Fed. R. Civ. P. 45(d)(1).

[24] Fed. R. Civ. P. 45(e)(1)(B)-(C).

[25] Fed. R. Civ. P. 45(e)(1)(D).

[26] *Id.*

sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).[27]
The court may also specify conditions for the discovery.[28]

Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[29] Document subpoenas seeking discovery from current counsel representing the opposing party raise additional concerns. Counsel are not automatically exempt from being subjected to a subpoena to produce documents or to testify, however, courts generally disfavor subjecting opposing trial counsel to broad discovery and recognize its potential disruptive effect on the attorney-client relationship and the adversarial process.[30]

A few cases from other districts within the Tenth Circuit have applied the three *Shelton*

---

[27] *Id.*

[28] *Id.*

[29] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.,* No. 17-MD-2785-DDC-TJJ, 2018 WL 4854027, at *2 (D. Kan. Oct. 5, 2018) (citations omitted).

[30] *See Monster Energy Co. v. Vital Pharm., Inc.,* No. 5:18-cv-01882-JGB, 2020 WL 2405295, at *9 (C.D. Cal. Mar. 10, 2020) (applying a heightened standard to document subpoenas served on former opposing counsel and law firm, noting "discovery sought from opposing counsel is universally disfavored"); *In re Allergan, Inc*, No. 14-cv-02004-DOC (KES), 2016 WL 5922717, at *4 (C.D. Cal. Sept. 23, 2016) (finding the fact that the defendant served the subpoena upon opposing trial counsel a factor to be considered in determining if the subpoena imposed an undue burden); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) ("Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery.").

criteria[31] for deposing opposing counsel to subpoenas duces tecum served on opposing counsel.[32] Because no case from this District has expressly applied the three *Shelton* criteria to document subpoenas served upon opposing counsel, this Court will not do so here. However, the Court finds compelling the statement in *Friedman* that courts have been "especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery."[33] The Court shares the concern expressed by *Friedman* in the context presented here and therefore proceeds with heightened caution with respect to the subpoenas served upon the Law Firms representing Plaintiffs that are the subject of the instant motion.

## III.    Summary of Parties' Positions

Defendants request an order compelling the Law Firms to: (a) produce all solicitations the Law Firms disseminated to any potential plaintiffs for participation in this Action, responsive to Subpoena Request 2; (b) produce improperly withheld EpiPen MDL solicitations and documents

---

[31] *Shelton v. Am Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Under *Shelton*, a party seeking to depose opposing counsel must show: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* The Tenth Circuit has adopted the *Shelton* criteria for requests to take the deposition of opposing counsel. *Boughton v. Cotter Corp.*, 65 F.3d 823, 829–30 (10th Cir. 1995).

[32] *See Capana Swiss Advisors AG v. Rymark, Inc.*, No. 2:23-CV-00467-TS-CMR, 2024 WL 4564551, at *2–*3 (D. Utah Oct. 24, 2024) (applying *Shelton* criteria to motion to quash document subpoena served on a party's former counsel); *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *31 (D.N.M. Apr. 1, 2016) (applying *Shelton* test's reasoning to motion to quash document subpoenas issued to opposing counsel); *Kirzhner v. Silverstein*, No. 09-CV-02858-CMA-BNB, 2011 WL 1321750, at *3 (D. Colo. Apr. 5, 2011) (applying reasoning of *Shelton* to subpoena duces tecum served on the plaintiff's trial counsel, concluding the "use of a subpoena duces tecum to attempt to obtain opposing counsel's documents and files is equally improper and may be more burdensome than merely attempting to obtain testimony"), *objections sustained in part and overruled in part on other grounds*, 870 F. Supp. 2d 1145 (D. Colo. 2012), *on reconsideration in part*, No. 09-CV-02858-RBJ-BNB, 2012 WL 1222368 (D. Colo. Apr. 10, 2012).

[33] *Friedman*, 350 F.3d at 70.

made publicly available on websites and other platforms, responsive to Subpoena Requests 1 and 3; and (c) collect and produce associated "metadata" showing when webpage-based publications were publicly shared.

The Law Firms oppose the motion, arguing: (a) non-public solicitations sent to other potential plaintiffs who are not the named Plaintiffs in this case are not relevant to Phase I timeliness discovery, and the Law Firms are not withholding any responsive documents as privileged under Defendants' definition of "solicitations;" (b) they do not maintain an archive of past versions of their websites; and (c) neither the ESI Protocol, nor customary standards of ESI production, require production of webpage "metadata."

## IV.       Law Firm Solicitations (Subpoena Request 2)

Subpoena Request 2 would require the Law Firms to produce "[a]ll documents and communications disseminated in any manner . . . soliciting potential plaintiffs for participation in this Action."[34] The Law Firms objected to producing any information that was not disseminated publicly or sent directly to a Named Plaintiff as irrelevant to the statute of limitations. They also objected to Request 2 to the extent it seeks information protected by attorney-client privilege and/or attorney work product and state they are withholding documents on the basis of their objections.[35]

### A.        Relevance Objections

Defendants argue the Law Firms' solicitations sent to all potential plaintiffs for participation in this Nuvigil action are relevant to Plaintiffs' constructive or inquiry notice, not just

---

[34] Subpoenas (ECF Nos. 160-1 to 106-3).

[35] Keller Am. Subpoena Resp. (ECF No. 166-5) at 6; Burns Am. Subpoena Resp. (ECF No.166-7) at 6–7. Sharp Am. Subpoena Resp. (ECF No. 166-6) at 6–7.

the named Plaintiffs' actual notice of their claims. More specifically, the requested non-party solicitations are relevant to establish when and how plaintiffs were solicited by the Law Firms, and whether the information shared as part of the solicitations was information Plaintiffs could have and should have been aware of prior to December 2018. According to Defendants, Plaintiffs' interrogatory responses state that attorney advertisements were the only way they learned of potential Nuvigil claims. Therefore, solicitations sent out by the Law Firms representing the named Plaintiffs would be relevant to show what facts about Nuvigil the Law Firms shared with other potential plaintiffs and when, and whether the only reason the named Plaintiffs did not sue earlier is due to the timing of when the Law Firms shared facts with the named Plaintiffs.

The Law Firms argue private, non-public solicitations they sent to others not named as Plaintiffs in this action are not relevant to Phase I timeliness discovery issues. They contend these solicitations would not show Plaintiffs' actual or constructive knowledge of their potential Nuvigil claims. They argue while Defendants attempt to couch the subpoena requests in terms of constructive knowledge, the requested solicitations would only show the knowledge of Plaintiffs' counsel, which this Court has ruled they cannot rely upon to impute knowledge to Plaintiffs. The Law Firms argue what they may have known and said privately to others who are not parties to this action is not relevant to what a named Plaintiff would, or even could, have found in public sources.

The Court finds non-public solicitations the Law Firms sent to other potential plaintiffs *who are not parties to this litigation* are not relevant to any Phase I timeliness issue. Defendants do not explain how information conveyed via the Law Firms' *non-public* solicitations sent to other potential plaintiffs could be imputed to the named Plaintiffs as constructive or inquiry knowledge of Plaintiffs' claims in this case. Their argument seems to hinge on speculation that the named

Plaintiffs may have received the *same* solicitations *at the same time* the Law Firms disseminated them to others. Such speculation does not warrant an order compelling the Law Firms to produce solicitations related to this action sent to any potential plaintiff. Notably, as Judge Crabtree stated in his March 2024 ruling, Defendants "are free to attempt to persuade the jury that a reasonable plaintiff should've had notice of their claims from the press releases or Mylan's disclosure" regarding the patent litigation settlements. It is significant that the press releases and disclosures referenced by Judge Crabtree (from which plaintiffs could have had notice of their claims) are *publicly* available, unlike the requested non-public solicitations at issue here. Furthermore, the Law Firms make a persuasive policy-based argument that requiring them to produce private solicitations for non-parties would invade the internal business affairs of the Law Firms and could have a chilling impact on plaintiffs-side litigation. The Court agrees and is concerned about the burdens this request would place on the adversary process.[36] Therefore, the Court sustains the Law Firms' relevance objections to producing any solicitations responsive to Subpoena Request 2 that were not disseminated publicly or sent directly to one of the named Plaintiffs.

### B.     Privilege Objections

The Law Firms also object to Subpoena Request 2 to the extent it seeks information that is protected by attorney-client privilege and/or attorney-work product privilege. The Law Firms then state they are withholding private, attorney-client or privileged communications with non-Named Plaintiffs that occurred prior to October 28, 2024.[37] Given the Court's ruling in the preceding section that the Law Firms' solicitations to potential plaintiffs who are not parties to this litigation

---

[36] *See Friedman*, 350 F.3d at 70 (noting the "burdens imposed on the adversary process" when lawyers are the subject of discovery requests).

[37] Keller Am. Subpoena Resp. (ECF No. 166-5) at 6–7.

are not relevant and need not be produced, the Court also need not address the Law Firms' privilege

objections relative to communications with non-Named Plaintiffs.

With respect to the Named Plaintiffs, the Law Firms' respective objections and responses

to Request 2 are lengthy, somewhat ambiguous, and raise questions about what is being produced

and withheld. For example, Keller states:

> Responding Law Firm will withhold and log all privileged documents soliciting
> any Named Plaintiffs for participation in this Action in accordance with the ESI
> protocol entered in this Action.[38]

Sharp and Burns make inconsistent statements whether they are withholding communications that

went to Named Plaintiffs:

> For documents or communications soliciting potential plaintiffs for participation in
> this Action that went to Named Plaintiffs and that are privileged, the responding
> law firm *will withhold* any such documents and log them in accordance with the
> ESI Protocol entered in this Action. The responding law firm *is not withholding*
> any documents based on this objection.[39]

Keller and Sharp then state the following response to Subpoena Request 2:

> Responding Law Firm will conduct a reasonable search and *produce or log*
> documents and communications in its possession, custody, or control soliciting
> potential plaintiffs for this Action that were disseminated publicly or were sent to
> any Named Plaintiff prior to October 28, 2024, including any advertisements
> identified by Named Plaintiffs in their interrogatory responses.[40]

Burns provides a different response:

> Responding law firm will conduct a reasonable search and produce nonprivileged
> documents and communications in its possession, custody, or control soliciting
> potential plaintiffs for this Action that were disseminated publicly or were sent to
> any Named Plaintiff prior to October 28, 2024, including any advertisements

---

[38] Keller Am. Subpoena Resp. (ECF No. 166-5) at 6–7.

[39] Sharp Am. Subpoena Resp. (ECF No. 166-6) at 6–7; Burns Am. Subpoena Resp. (ECF No. 166-7) at 7 (emphasis added).

[40] Keller Am. Subpoena Resp. (ECF No. 166-5) at 7; Sharp Am. Subpoena Resp. (ECF No. 166-6) at 7 (emphasis added).

identified by consumer Named Plaintiffs in their interrogatory responses. Pursuant to the Court's Status Conference Order and Order Granting Joint Motion for Extension of Phase I Scheduling Order (ECF No. 150), responding law firm will produce responsive documents on or before February 14, 2025. Responding law firm states that after conducting a reasonable search as described it has no documents.[41]

In response to Defendants' motion, the Law Firms state the dispute over solicitations the Law Firms have withheld from production as privileged is now moot based upon the definition of the term "solicitation" Defendants provided in their motion. Based upon Defendants' stated definition as "one-directional communications targeted at individuals with whom no attorney-client relationship (or any relationship) has been established," the Law Firms state they "no longer have any documents that are responsive to the Request that are being withheld on privilege grounds."[42] This statement, too, raises questions. If the Law Firms would "no longer" be withholding responsive documents on privilege grounds under Defendants' solicitation definition, then were they withholding responsive documents outside that definition in their responses to Request 2?

Defendants dispute the Law Firms' assertion that the privilege dispute over solicitations is moot. They argue the Law Firms are attempting to redefine the subpoenas as seeking only one-sided solicitations, while Plaintiffs' own discovery responses demonstrate that the Law Firms solicited them and, in so doing, provided Plaintiffs with non-privileged facts regarding potential claims. Defendants also argue in their reply that the Law Firms confirm they have withheld a "limited" set of responsive communications involving individuals with whom the Law Firms had

---

[41] Burns Am. Subpoena Resp. (ECF No. 166-7) at 7.

[42] Resp. (ECF No. 166) at 7.

an "existing attorney-client or other relationship."[43]

The Law Firms seize upon loose language in Defendants' memorandum in support of their motion purportedly defining "solicitation" and suggest based upon that "definition," the privilege dispute with regard to Subpoena Request 2 is moot, as they have no responsive documents under that definition. But Defendants disclaim the supposed new definition, and the Law Firms responded to the Request without objecting to the term "soliciting" as vague or ambiguous. Although the Law Firms' suggestion would simplify things, the suggestion is not persuasive and inclusion in the definition of the "or any relationship" language would seem to allow the Law Firms to withhold responsive documents when there is no legal basis for doing so. The Court declines to adopt this definition of "solicitation" or to find the privilege dispute moot for all responsive communications sent to the Named Plaintiffs.

It is axiomatic that any solicitations sent to the Named Plaintiffs before an attorney-client relationship was established with the Law Firms would not be attorney-client privileged. The Law Firms therefore cannot withhold as privileged documents and communications responsive to Request 2 for the Named Plaintiffs *before* an attorney-client relationship was established. Dates and timing are at the crux of discovery in Phase I of the case. To be clear, each Law Firm must produce any solicitations sent to the Named Plaintiffs before an attorney-client relationship with the Law Firm was established and must list on their privilege log any solicitations responsive to Request 2 after an attorney-client relationship was established. Perhaps this is what the Law Firms intended, but it certainly is not clear to the Court from their responses and objections to Request 2 or their briefing on the privilege issue. The Law Firms must also supplement their responses to

---

[43] Reply (ECF No. 170) at 4.

Request 2 to remove any ambiguity and clearly state that all responsive documents and communications with Named Plaintiffs prior to when an attorney-client relationship was established will be produced (or none exist) and that all responsive documents and communications after an attorney-client relationship was established will be logged on a proper privilege log.[44]

## V.     EpiPen MDL-related Website Publications and Materials Referenced in Social Media Posts (Subpoena Requests 1 and 3)[45]

### A.     Website Publications

Defendants also request the Law Firms produce improperly withheld documents responsive to Subpoena Requests 1 and 3, soliciting EpiPen MDL plaintiffs or related to the EpiPen MDL that the Law Firms made publicly available via their website or any other platform. Defendants state they have identified, from their own search, past publications on the Law Firms' websites they claim are responsive and have not been produced. Specifically, Defendants attach four publications to their motion, with dates between 2017 and 2022, regarding the EpiPen MDL that appeared on Burns' website, claiming none of them were produced.[46] Defendants argue these omissions raise serious questions about what other responsive publications the Law Firms failed to produce. Because such documents are directly relevant to the topics at issue in Phase I, Defendants contend the Law Firms should be compelled to produce all their past responsive

---

[44] If the parties intended for the ESI Protocol to apply to the Law Firms, then the Law Firms may exempt the identified documents from logging to the extent provided for, if any, in the ESI Protocol. ECF No. 100 at 18.

[45] Defendants' motion requests the Law Firms produce responsive publications responsive to Subpoena Requests 1 and 3 (both related to the EpiPen MDL), but the Law Firms reference Requests 3 and 4 in their response (ECF No. 166 at 7). The Court's rulings herein would also apply to Request 4 (related to this Nuvigil action).

[46] Exs. J–M to Mot. (ECF Nos. 160-10 to 160-13).

webpage publications regarding the EpiPen MDL litigation.

The Law Firms offer differing explanations why they did not produce the past publications related to the EpiPen MDL litigation from their own websites that Defendants independently located. With respect to the four EpiPen-related publications appearing on Burns' website in 2017, 2018, and 2020, Burns merely states it initially understood that it would not be producing publicly available documents. When brought to its attention, Burns states it provided Defendants with the publicly available web address links for two publicly available documents it contends are responsive to the subpoena requests, without any mention of the other two responsive documents Defendants identified.[47]

Keller provides a more detailed explanation in response to Defendants' examples of deficiencies in its webpage production, including the fifteen EpiPen-MDL-related publications from its website Defendants claim Keller failed to produce in response to the subpoena.[48] Keller states it investigated Defendants' claimed deficiencies and noted several inaccuracies in Defendants' assertions. Some of the webpages Defendants located were unrelated to the EpiPen MDL and therefore not responsive to the Subpoena Request. Keller does acknowledge that one webpage, a May 26, 2020 publicly available press release, had been inadvertently omitted from its production, and it produced it several business days later.[49] Keller explains that most of the webpages at issue were produced in their most recent form because Keller does not maintain archives of past versions of its webpages. Keller does not offer any specific explanations regarding the 2017 and 2018 EpiPen-related publications from its website which hadn't been produced but

---

[47] Resp. (ECF No. 166) at 11 n.4.

[48] Ex. J to Resp. (ECF No. 166-14) at 6–20.

[49] Ex. L to Resp. (ECF No. 166-16).

Defendants discovered.[50]

Similar to Keller's explanation, Sharp states it does not have an archive of past versions of its website and will therefore only produce documents in its "possession, custody, and control." Sharp does state that its production included advertisements ran in connection with this action and screenshots of its website that mentioned the settlements resulting from the EpiPen MDL and comments from the Court's final approval hearing.[51] After Defendants raised issues with Sharp's production, Sharp states it immediately conducted a reasonable investigation into the alleged deficiencies and reached the same conclusion as Keller, that the tools proposed by Defendants would not capture the information requested.

That Defendants were able to independently find responsive publications from the Law Firms' own websites lends credence to Defendants' argument Plaintiffs' production was deficient. The Law Firms offer little explanation, instead Keller and Sharp rely upon the argument they do not maintain an archive of past versions of their websites and therefore responsive publications and documents previously publicly available on their websites are not within their "possession, custody, or control." They argue they cannot produce documents or data they do not have.

Under Fed. R. Civ. P. 45(a)(1)(A)(iii), a subpoena may require the production of designated documents, ESI, or tangible things in the "possession, custody, or control" of a subpoenaed individual or entity. The reference to documents or tangible things within the producing party's "possession, custody, or control" mirrors the language from Fed. R. Civ. P. 34 with regard to

---

[50] Ex. J to Resp. (ECF No. 166-14) at 14, 16, and 18.

[51] Although not clear from the briefing, Sharp's description of what it produced is consistent with the two examples Defendants discovered and used as examples of deficiencies in Sharp's webpage production. Ex. J to Resp. (ECF No. 166-14) at 21–22.

requests for production from a party.[52] Documents are deemed to be within the "possession, custody, or control" if the party has "actual possession, custody, or control or has the legal right to obtain the documents on demand."[53] "Production of documents in a party's possession is required if a party has the practical ability to obtain the documents from another, irrespective of legal entitlement to the documents."[54] "The party moving to compel production has the burden of establishing that there are responsive documents in the responding party's 'possession, custody, or control.'"[55]

The Court finds unpersuasive the Law Firms' argument that past publications publicly posted on their own websites are not within their possession, custody, or control. That the Law Firms may not currently possess or have in their custody past versions of their websites showing the responsive publications does not establish they lack control or the practical ability to locate and obtain the requested publications. Even if these prior publications are no longer currently available on their websites, the Law Firms would have had control over and access to the publications that appeared on their websites. In *Arteria Property Pty Ltd. v. Universal Funding V.T.O., Inc.*,[56] the court addressed a similar issue whether a website was under the possession, custody or control of the defendants. The court found the website was under the control of the defendants because they had the "ultimate authority, and thus control, to add, delete, or modify the

---

[52] *B & K Mech., Inc. v. Wiese*, No. 03-4149-RDR, 2005 WL 8160222, at *3 (D. Kan. Nov. 10, 2005).

[53] *F.D.I.C. v. McCaffree*, 289 F.R.D. 331, 339 (D. Kan. 2012).

[54] *B & K Mech.,* 2005 WL 8160222, at *3.

[55] *Consumer Fin. Prot. Bureau v. Integrity Advance, LLC*, No. 21-MC-206-JWL, 2022 WL 293240, at *4 (D. Kan. Feb. 1, 2022) (quoting *Norman v. Young*, 422 F.2d 470, 472–73 (10th Cir. 1970)).

[56] No. 05-4896 (PGS), 2008 WL 4513696, at *5 (D.N.J. Oct. 1, 2008).

website's content."[57] Like in the *Arteria* case, the Court finds here the Law Firms would have "control" over their own websites, including the ability to add or remove publications and documents from the websites. The Law Firms therefore cannot refuse to produce responsive publications and documents previously posted or appearing on their websites by merely stating they do not maintain an archive of past versions of their websites. The responsive publications and documents added to and removed from their websites would be within their "control," and they must conduct a good faith search for and produce them.

To the extent the Law Firms argue their past webpage publications would be equally available to Defendants, that is not true here. The Law Firms would have a better idea when they posted publications on their own websites and where to locate those publications, even if no longer on their websites. Presumably, someone at the Law Firm drafted or supplied the content of the publications or documents that were then uploaded to the Law Firms' websites. The Law Firms shall conduct a good faith search for and produce all communications and documents made publicly available on their websites or other platform responsive to Subpoena Requests 1 and 3. To be clear, the Court is not requiring the Law Firms to produce "past versions of their websites" that no longer exist, but instead the responsive publications and documents publicly available on their websites. The Law Firms shall also serve supplemental or amended responses to Requests 1 and 3 stating they have made a good faith search for responsive publications and documents publicly available on their websites, and indicating whether any additional responsive publications or documents were located as a result of those searches. If responsive publications or documents are located, the Law Firms must produce them.

---

[57] *Id.*

**B.      Webpage Metadata**

Defendants also request the Law Firms be compelled to collect the requested website documents using "appropriate e-discovery tools and to then reproduce them with the necessary metadata."[58] They argue the Law Firms' productions improperly failed to include metadata that would identify when the publications were posted or publicly available on their websites. Defendants contend the lack of metadata and incomprehensive nature of the production can be corrected through a "proper collection via a native export or one of many e-discovery tools available."[59]

The Law Firms argue the parties' ESI Protocol and customary standards of ESI production do not require them to provide the information Defendants request. Instead, Defendants are using ambiguities in the meaning of "metadata" to push for the collection of collateral information, ignoring that the Law Firms have already applied collection tools equivalent to those suggested by Defendants.

Two of the Law Firms explain their respective efforts to address Defendants' complaints the Law Firms improperly excluded metadata from their productions. Keller provides a detailed declaration from Eric Fierro ("Fierro"), its partner overseeing the firm's e-discovery team. Fierro states Keller initially produced screenshots of responsive webpages as static images of the pages, which is "how webpages are customarily produced in e-discovery."[60] Fierro states the e-discovery tools proposed by Defendants (i.e., X1, Page Vault, or Web Preserver) would not provide the full slate of information demanded or would be unduly cumbersome so Keller utilized another e-

---

[58] ECF No. 161 at 10.

[59] *Id.*

[60] Fierro Decl. (ECF No. 166-12) at ¶ 14.

discovery program called "SingleFile." Fierro also explains the limitations with using the e-discovery tool SingleFile for capturing webpage metadata, and why it cannot capture the creation date of a webpage.[61]

Sharp states it conducted a reasonable investigation into Defendants' alleged production deficiencies and requests for additional metadata for the documents produced. Sharp reached the same conclusion as Keller, the tools proposed by Defendants would not capture the information requested. Sharp contends its collection process complied with the ESI Protocol and Appendix A in this case, which only required production of this document type in a reasonably usable or exportable form.[62]

Pursuant to Rule 45(e)(1)(D), a subpoenaed entity need not provide discovery of ESI from sources identified as "not reasonably accessible because of undue burden or cost." If a motion to compel discovery or for a protective order is filed, the subpoenaed entity must show that the information is not reasonably accessible because of undue burden or cost.[63] The Law Firms have sufficiently shown the requested webpage metadata is not reasonably accessible. In their reply, Defendants do not rebut the Law Firms' arguments regarding their compliance with the requirements of the ESI Protocol and customary standards for ESI production, or the detailed Fierro Declaration regarding the limits of the e-discovery tools suggested by Defendants. Furthermore, under Rule 34(b)(2)(E)(iii) the Law Firms are not required to produce ESI "in more

---

[61] Fierro Decl. (ECF No. 166-12) at ¶ 21.

[62] To the extent the ESI Protocol (and Appendix A) (ECF No. 100) would apply to the disputed document subpoenas served on the Law Firms, who are not technically "parties" in this case, the Court finds the ESI Protocol (and Appendix A) (ECF No. 100) provide little helpful guidance on the present dispute as neither directly address webpages or webpage metadata.

[63] Fed. R. Civ. P. 45(e)(1)(D).

than one form." If the Law Firms have already produced responsive webpage publications in a reasonably usable form, they are not also required to produce it again in another form. Defendants' request for the Law Firms to re-produce their responsive webpage publications with "appropriate metadata" is denied.

*However*, even though the Court will not require the Law Firms to produce responsive past webpage publications with "metadata," this does not mean the Law Firms are relieved of their responsibility to provide information regarding the dates when responsive publications and documents were publicly posted or disseminated. To the extent the Law Firms' production of responsive past webpage publications would not include the dates when the publications were publicly available on the Law Firms' websites, then the Law Firms must use their good faith best efforts to determine those dates and provide that information to Defendants in their responses to the Subpoena Requests 1 and 3. The date each responsive publication was publicly available goes to the heart of the timeliness and statute of limitations issues in Phase I discovery and the Law Firms must provide this highly relevant timing information.

### C.    Referenced Materials in Links within Social Media Posts (Subpoena Requests 3 and 4)

Defendants also request the Law Firms be compelled to produce the materials accessible via links in the social media posts they previously produced as static screenshots. Defendants argue the Law Firms' productions to date suggest there are additional solicitation documents that have not been produced. Defendants argue this information is relevant to Plaintiffs' fraudulent concealment argument and the timeliness of this Action.

Defendants' request for production of materials linked in the Law Firms' social media posts appears limited to Sharp and Burns, as Keller supplemented its social media posts production on

February 26, 2025.[64] Sharp and Burns offer no argument regarding the requested social media post linked materials so it is unclear (a) whether they previously produced any responsive social media posts with links,[65] and (b) whether they have supplemented that production. Defendants state in their memorandum in support of their motion that Sharp "could not commit to addressing its production deficiencies prior to the motion to compel deadline," but they do not mention social media post materials in their reply. To the extent the Law Firms have not already done so, they shall produce all social media posts and any materials available via "links" in the posts responsive to Subpoena Requests 3 and 4.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Non-Parties Burns Charest LLP, Keller Rohrback L.L.P., and Sharp Law LLP to Produce Documents (ECF No. 160) is **granted in part and denied in part as set forth herein**.

**IT IS FURTHER ORDERED** that all production and supplemental or amended responses ordered herein shall be served **within fourteen (14) days of the date of this Order**.

**IT IS FURTHER ORDERED** that privilege log(s) are due **within thirty (30) days after the production ordered herein**.

IT IS SO ORDERED.

Dated May 27, 2025, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[64] *See* Fierro Decl. (ECF No. 166-12) at ¶ 20 (Keller "eventually used an adequate e-discovery tool 'SingleFile' (which is similar to Web Preserver) to collect and reproduce the social media posts [Defendants] complained about.").

[65] Only Keller's social media posts from Facebook, Instagram, and X (formerly Twitter) are included as Exhibit G to the Law Firms' Response (ECF No. 166-11).