UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DENA BURGE, LEIGH HOCKETT, JORDAN FURLAN, CRISTINE RIDEY, PATRICIA SAWCZUK, and ANNE ARUNDEL COUNTY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., TEVA PARENTERAL MEDICINES, INC., TEVA NEUROSCIENCE, INC., TEVA SALES & MARKETING, INC., and CEPHALON, INC.,<br><br>Defendants. | Case No. 22-cv-2501-DDC-TJJ |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Compel Regarding Anne Arundel County Government's Fourth Privilege Log (ECF No. 217). Defendants request the Court compel Plaintiff Anne Arundel County ("Anne Arundel") to produce seven documents identified on its fourth privilege log being withheld as attorney-client privileged and work product. Defendants' motion is granted in part and denied in part.

**I.   Background**[1]

Plaintiffs—representing a proposed class—allege Defendants and their co-conspirators

---

[1] The background of this case is set forth in more detail in the Court's July 31, 2025 Memorandum and Order (ECF No. 226) on the parties' first set of privilege log motions.

entered an unlawful reverse payment settlement and conspired to safeguard their monopoly on Nuvigil, a wakefulness drug with the generic name armodafinil. Plaintiffs allege Defendants agreed to stay out of the EpiPen market, allowing Mylan and Pfizer to maintain their EpiPen monopoly. In exchange, Plaintiffs contend, Mylan and Pfizer agreed to stay out of the Nuvigil market, allowing Defendants to maintain their Nuvigil monopoly. Plaintiffs refer to these agreements as the "trade-for-delay" agreement.

This case is currently bifurcated in Phase I to discovery focused on the pivotal issues of the timeliness of Plaintiffs' claims under the applicable statutes of limitations and the related issues of tolling and fraudulent concealment.[2]

During Phase I discovery, the Court granted in part and denied in part Defendants' motion to compel Anne Arundel to designate its in-house counsel, Hamilton Tyler ("Tyler"), as an additional Phase I records custodian.[3] Anne Arundel subsequently searched Tyler's files and produced documents. In conjunction with that production, Anne Arundel provided its fourth privilege log on June 9, 2025. On July 1, 2025, the Court held a pre-motion discovery conference and set a July 11, 2025 deadline for Defendants to file any motion to compel regarding Anne Arundel's fourth privilege log.[4] Anne Arundel provided its amended fourth privilege log listing approximately fifty-three entries on July 10, 2025.[5] This motion followed.

---

[2] July 15, 2024 Phase I Sch. Order (ECF No. 92) at 2 ("Phase I 'Timeliness/ Limitations Discovery' shall be limited to the timeliness of Plaintiffs' claims under the applicable statutes of limitations and any related statute-of-limitations issues, facts, and circumstances, including Defendants' statute of limitations defense or defenses (and the elements thereof) and the issues of tolling, equitable tolling, and fraudulent concealment (and the elements thereof).").

[3] Apr. 14, 2025 Mem. & Order (ECF No. 181).

[4] July 1, 2025 Disc. Conf. Order (ECF No. 212).

[5] Anne Arundel's Am. Priv. Log No. 4 (ECF No. 223-3) (hereinafter "Anne Arundel 4th Priv. Log").

**II.     Legal Standards**

In this case, federal law governs attorney-client privilege and any waiver of that privilege because the action arises under federal law—the Sherman Act and RICO.[6] Under federal common law, the essential elements of the attorney-client privilege are:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his [or her] instance permanently protected (7) from disclosure by [the client] or by the legal advisor, (8) except if the protection is waived.[7]

The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[8] The privilege also protects advice given by the lawyer in the course of representing the client.[9] The protection applies to communications with in-house counsel as well as outside attorneys.[10]

The party asserting the privilege bears the burden of establishing its applicability.[11] Moreover, a party must make a "clear showing" that the privilege applies.[12] The existence of the

---

[6] *See* Fed. R. Evid. 501; *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005) ("Since this action arises under a federal statutory scheme, federal law provides the rule of decision as to application of the attorney-client privilege.").

[7] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2018 WL 5281604, at *1 (D. Kan. Oct. 24, 2018) (citing *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009)).

[8] *New Jersey*, 258 F.R.D. at 425 (citation omitted).

[9] *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)).

[10] *Id.*

[11] *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995).

[12] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2021 WL 2875514, at *2 (D. Kan. July 8, 2021).

privilege is determined on a case-by-case basis.[13]

### III. Anne Arundel Documents Challenged by Defendants

Defendants argue Anne Arundel is improperly withholding as fully privileged two general categories of documents listed on its fourth privilege log: (1) Documents containing publicly available information; and (2) Data, utilization and spend reports concerning Nuvigil and EpiPen.

### A. Publicly Available Documents

Defendants argue Anne Arundel is improperly withholding two publicly available documents based upon its assertion of attorney-client privilege. Anne Arundel identifies the filenames of these documents on its fourth privilege log as:

- "AACG_NUVIGIL_00020472 – CONFIDENTIAL Health Plan Consumer Plaintiff Fact Sheet.pdf" ("Fact Sheet")

- "AACG_NUVIGIL_00020473 – IMS price-declines-after-branded-medicines-lose-exclusivity-in-the-us.pdf" ("Article").[14]

Each is described on the privilege log as a "[d]ocument provided by outside counsel to in-house counsel in response to client's request for legal advice and reflecting mental impressions and strategy of counsel" regarding "anticipated discovery in possible Nuvigil litigation" (for the Fact Sheet) and "potential theories of damages in possible Nuvigil litigation" (for the Article).[15]

Defendants argue a publicly available document is not protected by the attorney-client privilege and does not become privileged merely because it is contained in a communication between a client and its attorney. With respect to the Article, Defendants state an internet search for the Article's title results in a pdf document with the exact same title on the IQVIA (formerly

---

[13] *Id.*

[14] Anne Arundel 4th Priv. Log (ECF No. 223-3).

[15] *Id.*

IMS) website. Page two of the publicly available pdf states that one of the contributors was Lauren Caskey, whom Defendants believe is the "lcaskey" listed as author of the document on Anne Arundel's privilege log. Defendants claim that according to her LinkedIn profile, Ms. Caskey was a research manager at IMS at the time this document was published and is neither an attorney, nor an employee of any of the law firms representing Anne Arundel. Defendants likewise claim the Fact Sheet is a publicly available document and is not privileged just because it is titled "confidential." Defendants argue because these documents are purely factual and/or otherwise public documents, they are not privileged and Anne Arundel must produce them.

Anne Arundel argues its fourth privilege log establishes all the elements of the attorney-client privilege, noting that Defendants do not dispute the two challenged documents were communicated between Anne Arundel and its attorneys in confidence and in response to a request for legal advice. It argues Defendants are speculating, without evidence to support such speculation, that the documents are public because one document is found online and the other is public based on its file name. Anne Arundel further argues that even if the documents are public, they would still be protected as privileged because its log makes clear they were communicated between client and counsel for the purpose of seeking legal advice and outside counsel was not merely a conduit. It claims the documents were provided at the request of its in-house counsel for the purpose of evaluating its participation in this litigation.

The Tenth Circuit has made clear that not all communications from an attorney are privileged; rather the inquiry is directed toward the content of the communication, considering whether that content included legal advice or tended to reveal confidences of the client, or included

instead merely facts from other sources.[16] Information is not privileged simply because it comes from an attorney.[17] When an attorney is merely acting as a conduit for non-confidential information, the client may not invoke the attorney-client privilege.[18]

This attorney "conduit" privilege exception for non-confidential information has been applied to written discovery. In the case *In re: Motor Fuel Temperature Sales Practices Litigation*, the court found the attorney-client privilege did not apply when the attorney was merely acting as a conduit for underlying facts by forwarding a public news story or report.[19] Similarly, in *Dealer Computer Services, Inc. v. Griffith*, the court concluded, after an *in camera* review, the challenged documents were not protected by the attorney-client privilege because they "were created by non-parties and were not created for the purpose of communicating legal advice."[20] The Court specifically noted one of the documents was a state judge's order, finding "[t]his *public* document is not transformed into a privileged document merely because defendant's attorney sent a copy of the ruling to defendant."[21]

---

[16] *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, No. 11-2684-JWL, 2014 WL 5581274, at *3 (D. Kan. Oct. 31, 2014) (citing *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182–83 (10th Cir. 2010).

[17] *In re Grand Jury Subpoena to Kan. City Bd. of Pub. Utilities*, 246 F.R.D. 673, 679 (D. Kan. 2007).

[18] *See Grand Jury Proceedings,* 616 F.3d at 1182–84 (10th Cir. 2010) (holding the client could not invoke the attorney-client privilege to questions requesting only "conduit" non-confidential information—where a "third party's statement was passed along by the attorney to the client" if answering did not require the attorney directly or indirectly to reveal the substance of any legal confidence).

[19] *In re: Motor Fuel Temperature Sales Pracs. Litig.*, No. 07-MD-1840-KHV, 2010 WL 11431877, at *2 (D. Kan. Nov. 8, 2010) ("[F]or example, the forwarding of a news story or report would not be deemed [a] privileged communication.").

[20] *Dealer Computer Servs., Inc. v. Griffith*, No. 11-2305-JWL, 2012 WL 3156814, at *2 (D. Kan. Aug. 3, 2012) (emphasis added).

[21] *Id.*

The Court finds Defendants have shown or raised a reasonable suspicion the Fact Sheet and Article are documents created by third parties and accessible by the public. Anne Arundel, as the party asserting the privilege, bears the burden to show the privilege applies. Anne Arundel does not refute or dispute that the Fact Sheet and Article are accessible to the public.[22] Rather, Anne Arundel weakly argues Defendants' speculation the documents are public is "inappropriate, insufficient, and irrelevant." It then relies on its statements in its privilege log the documents were provided in response to client's request for legal advice and reflecting mental impressions and strategy of counsel. This is not sufficient to establish the confidential element of the privilege here where the documents facially appear to be publicly available. Even if the documents were provided by outside counsel via an email communication responding to the client's request for legal advice, Anne Arundel has not explained how merely including or attaching the publicly available documents in the communication constitutes the provision of legal advice to the client. Defendants are not challenging Anne Arundel's assertion of privilege for the email (AACG_NUVIGIL_00020467) to which these public documents were attached and presumably which communicated legal advice concerning these public documents. Anne Arundel has not argued the withheld documents contain handwritten comments or other attorney-drafted changes made by counsel reflecting legal advice. Because these documents appear created by non-parties and publicly available, they are not transformed into privileged documents merely because Anne Arundel's outside counsel sent the documents to its in-house counsel. Instead, the attorney is only acting as a conduit for the non-confidential and publicly available Fact Sheet and Article. Anne Arundel fails to establish how the attorney-client privilege's protection of confidential

---

[22] As of the date of this Memorandum and Order, the Article does appear to be publicly available at: https://www.iqvia.com/-/media/iqvia/pdfs/institute-reports/price-declines-after-branded-medicines-lose-exclusivity-in-the-us.pdf.

communications applies here to public documents created by third parties. Defendants' motion to compel is granted and Anne Arundel must produce the Fact Sheet and Article (AACG_NUVIGIL_00020472–73).

### B. Anne Arundel's Utilization and Spend Reports

Defendants also seek to compel Anne Arundel to produce five documents withheld as privileged and described as its data, utilization and spend reports concerning armodafinil and epinephrine ("Utilization and Spend Reports").[23] They are described on the privilege log as materials summarizing Anne Arundel's yearly utilization and expenditures, on a drug-by-drug basis, for epinephrine (EpiPen) and armodafinil (Nuvigil), or both.[24] The log entries state all were "requested by and prepared at the direction of counsel in furtherance of development of legal advice re [Anne Arundel's] standing and possible damages in potential Nuvigil litigation."[25] Anne Arundel claims both attorney-client privilege and work product protection for all five documents.

Defendants argue the Utilization and Spend Reports at issue are Excel spreadsheets that appear to contain purely factual data and information concerning Nuvigil and EpiPen, which would not be protected by either the attorney-client privilege or work product. They contend these Utilization and Spend Reports date back to 2012, concern the products at issue in this case (Nuvigil and EpiPen) from the time period in which Anne Arundel is claiming damages, and may provide insight into Anne Arundel's due diligence and litigation tracking, which are the issues at the heart

---

[23] Identified on Anne Arundel's 4th Privilege log as AACG_NUVIGIL_00020405, 406, 409, 479, and 480). Anne Arundel argues Defendants never conferred regarding one of these documents ('20405). ECF No. 223 at 1 n.1. However, as Defendants point out, this document was specifically listed on Defendants' Position Statement for the Court's July 1, 2025 discovery status conference.

[24] Anne Arundel 4th Priv. Log (ECF No. 223-3).

[25] *Id.*

of Phase I discovery. Defendants assert the appropriate remedy for analyzing Anne Arundel's claim of privilege for these documents is for the Court to review the documents *in camera.*

Anne Arundel argues the Utilization and Spend Reports are not just factual data but *analyses* of its utilization and spend for armodafinil and epinephrine that were prepared at the direction of its in-house counsel to facilitate the provision of legal advice. It argues a straightforward application of the attorney–client privilege standard establishes that these analyses are privileged. It argues Defendants offer no basis to believe these documents could plausibly put Anne Arundel on notice of its Nuvigil-based claims prior to 2018 or otherwise relate to the Phase I timeliness issues. The documents were created in April 2023 shortly before Anne Arundel joined this case as a plaintiff and two of them concern solely epinephrine and not Nuvigil. Anne Arundel also points out that it already produced the raw utilization and expenditure data concerning both Nuvigil and EpiPen purchases during the proposed class period whereas the reports Defendants seek here are its attorney-directed analyses of the utilization data.

The attorney-client privilege protects not only the giving of professional advice to those who can act on it but also the *giving of information to the attorney* to enable him to give sound and informed advice.[26] The privilege serves the client's need for legal advice, but it also serves the attorney's need to receive complete information from the client in order to provide that legal advice.[27] It thus not only protects advice given by an attorney in the course of representing the client, but also protects confidential communications made by a client to an attorney in order to

---

[26] *Upjohn*, 449 U.S. at 390 (emphasis added).

[27] *See Upjohn*, 449 U.S. at 389 ("The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.").

obtain legal assistance from the attorney in his capacity as a legal advisor.[28] In *Upjohn*, the Supreme Court extended the attorney-client privilege and work product protection to questionnaire responses provided by the corporation's foreign managers to its general counsel, finding the communications were made by the corporation's employees to counsel "at the direction of corporate superiors in order to secure legal advice from counsel."[29]

The Court finds Anne Arundel has met its burden to establish the five challenged Utilization and Spend Reports are protected from disclosure by the attorney-client privilege. Anne Arundel has established that its Utilization and Spend Reports were part of its confidential communications to its attorneys made for the purpose of providing legal advice regarding standing and possible damages in potential Nuvigil litigation. The content of these spreadsheets was part of Anne Arundel's confidential *communications* given to its in-house attorney to enable him to provide legal advice in this litigation. The drug-specific utilization and spend factual data and calculations contained in these reports were made at the request of Anne Arundel's in-house counsel shortly before it joined this litigation as a plaintiff in June 2023 and for the purpose of rendering legal advice regarding this case. There is nothing suggesting these spreadsheets were routinely created, prepared for any other purpose than this litigation, or have been disclosed to a third party.

The log identifies the "author" of four of the Utilization and Spend Reports as Marina Mangerie. She does not appear to be an attorney or an Anne Arundel employee but instead is identified as a Senior Clinical Advisor for CVS-Caremark, the company that serves as Anne

---

[28] *In re Grand Jury Proceedings*, 616 F.3d at 1182; *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV-DJW, 2012 WL 646003, at *5 (D. Kan. Feb. 28, 2012).

[29] *Upjohn*, 499 U.S. at 394.

Arundel's pharmacy benefits manager.[30] The parties do not raise any issue with Ms. Mangerie being listed as the "author" of some of the Utilization and Spend Reports. In any event, she appears to be acting as Anne Arundel's agent for purposes of the attorney-client privilege.[31]

Anne Arundel has sufficiently shown the five challenged Utilization and Spend Reports contain information compiled and prepared at the request of Anne Arundel's in-house counsel as part of Anne Arundel's confidential *communications* to counsel for the purpose of enabling him to provide legal advice about this case. Anne Arundel has therefore met all the elements of the attorney-client privilege for the five challenged documents, and they are therefore protected from disclosure. As the Court finds the Utilization and Spend Reports are attorney-client privileged, it need not also determine whether they are also attorney work product. Defendants' motion to compel with respect to the Utilization and Spend Reports is therefore denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Regarding Anne Arundel County Government's Fourth Privilege Log (ECF No. 217) is **granted in part and denied in part**. Defendants' motion is granted as to the Fact Sheet and Article and is denied as to the Utilization and Spend Reports. Anne Arundel shall produce the Fact Sheet and Article (labelled as AACG_NUVIGIL_00020472–73) within **fourteen (14) days of the date of this Order**.

---

[30] Ms. Mangerie is identified by Anne Arundel in its response to the Court's prior request for a list identifying all non-attorney individuals (by title/position/department) listed on a challenged privilege log entry.

[31] *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 2555834, at *6 (D. Kan. June 13, 2017) ("The presence of a third-party, such as a consultant, does not destroy the attorney-client privilege where that party is the client's agent or possesses 'a commonality of interest with the client.'"). *See also Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 1643679, at *5 (D. Kan. Apr. 2, 2020) (finding communications with the defendant's third-party vendor were necessary to facilitate the attorneys' legal work for defendant and were therefore privileged).

IT IS SO ORDERED.

Dated September 30, 2025, at Kansas City, Kansas.

*Teresa J. James*

Teresa J. James
U. S. Magistrate Judge
