UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DENA BURGE, LEIGH HOCKETT, JORDAN FURLAN, CRISTINE RIDEY, PATRICIA SAWCZUK, and ANNE ARUNDEL COUNTY, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., TEVA PARENTERAL MEDICINES, INC., TEVA NEUROSCIENCE, INC., TEVA SALES & MARKETING, INC., and CEPHALON, INC.,<br><br>  Defendants. | Case No. 22-cv-2501-DDC-TJJ |

## *IN CAMERA* REVIEW ORDER

Defendants have submitted and the Court has completed its *in camera* review of the 46 partially redacted documents listed on Defendants' privilege log and challenged by Plaintiffs. The Court's prior orders directed Defendants to submit the identified documents for an *in camera* review to determine whether they should be disclosed under the crime-fraud exception to attorney-client privilege and/or because the predominant purpose of the communication was for business

and not legal advice.[1]

I.     Law Regarding Crime-Fraud Exception to Privilege

Under the crime-fraud exception, "[t]he attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud."[2] The purpose of the crime-fraud exception is to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.[3]

To invoke the crime-fraud exception, the party opposing the privilege must present "*prima facie* evidence that the allegation of attorney participation in the crime or fraud has some foundation in fact."[4] "The evidence must show that the client was engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it."[5] The exception does not apply if the assistance is sought only to disclose past wrongdoing, but it does apply if the assistance was

---

[1] *See* July 31, 2025 Mem. & Order (ECF No. 226) (the "Privilege M&O") and Sept. 8, 2025 Mem. & Order (ECF No. 243). The July 31st order directed Defendants to submit 34 documents, identified (in the order they appear) on the "Crime-Fraud" privilege log (ECF No. 177-3) with Priv Log IDs: 362, 302, 307, 319, 320, 479, 562, 563, 649, 823, 824, 825, 828, 1413, 1432, 2345, 2354, 845, 1122, 1414, 62, 64, 2068, 2085, 2842, 1707, 1146, 1147, 1148, 1149, 1708, 1156, 1710, and 1174. The September 8th order directed Defendants to submit an additional 12 documents from the "Crime-Fraud" privilege log, identified by Priv Log IDs: 3567, 412, 413, 3615, 103, 3081, 77, 78, 561, 3561, 1859, and 2384. The "Crime-Fraud" privilege log is a separate exhibit Plaintiffs prepared to segregate and identify Defendants' documents they contend should be produced under the crime-fraud exception. It was attached to their original motion to compel (ECF No. 177-3).

[2] *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995). *See Clark v. United States*, 289 U.S. 1, 15 (1933) ("There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.").

[3] *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal quotations and citations omitted).

[4] *In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998).

[5] *Id.*

used to cover up and perpetuate the crime or fraud.[6]

A court's determination that otherwise privileged documents are subject to the crime-fraud exception is a two-step process. The first step is to determine whether an *in camera* review of the challenged documents is justified. The second step is the *in camera* review. The requirements for the second step, i.e., determining whether the crime-fraud exception applies to the challenged documents, are less clear, but the Supreme Court's *Zolin* opinion suggests the evidentiary standard is higher.[7]

The Supreme Court in *Clark* provided general guidance on how the crime-fraud exception should be applied:

> It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud. To drive the privilege away, there must be something to give colour to the charge; there must be prima facie evidence that it has some foundation in fact. When that evidence is supplied, the seal of secrecy is broken.[8]

The Supreme Court later in *Zolin* acknowledged that the use in *Clark* of the phrase "*prima facie* case to describe the showing needed to defeat the privilege has caused some confusion," but did not "decide the quantum of proof necessary ultimately to establish the applicability of the crime-fraud exception."[9] Like the Supreme Court, the Tenth Circuit has also declined to articulate the exact quantum of proof necessary to meet the *prima facie* standard to establish the crime-fraud

---

[6] *Id*.

[7] *See Zolin*, 491 U.S. at 572 ("We therefore conclude that a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege.").

[8] *Clark*, 289 U.S. at 15 (citations and quotations omitted).

[9] *Zolin*, 491 U.S. at 563 and n.7.

3

exception to privilege.[10]

Few cases in this district discuss the standard applicable to the actual *in camera* review of the documents for possible disclosure under the crime-fraud exception. However, the opinion in *AKH Co. v. Universal Underwriters Ins. Co.* provides guidance that is useful here. In *AKH*, the magistrate judge conducted an *in camera* inspection of over 1,300 pages of documents, primarily emails, to determine whether they should be disclosed under the crime-fraud exception to privilege.[11] The order after the *in camera* inspection stated the communications were reviewed for "evidence of an intent by plaintiff to conceal material elements of the negotiations or settlement from defendant."[12] Several documents were found to be "relevant to defendant's theory and, therefore, discoverable,"[13] but the order reiterated that "the documents [did] not, in and of themselves, establish fraud. Rather, standing alone and unrebutted, the documents may create a *prima facie* case of fraud."[14] Upon review of the objections to the magistrate judge's order following the *in camera* inspection, the district judge characterized the *in camera* review determination as an inquiry regarding "whether the subject documents were in fact probative of

---

[10] *See In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998) (reviewing other circuits' attempts to define precisely what the *prima facie* standard requires but not endorsing any of them) (citations omitted).

[11] *AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2014 WL 2991130, at *8 (D. Kan. July 3, 2014) (order granting *in camera* inspection).

[12] *AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2014 WL 5321074, at *1 (D. Kan. Oct. 17, 2014), objections overruled, 2015 WL 64947 (D. Kan. Jan. 2, 2015) (order following *in camera* inspection).

[13] *Id*.

[14] *Id*. at *2 n.2.

the alleged fraud."[15]

## II. *In Camera* Review Standards Applied

In its July 31, 2025 Privilege M&O, the Court has already found Plaintiffs made a sufficient showing under the first step justifying an *in camera* review of the alleged partially privileged communications.[16] Neither side filed an objection to the July 31, 2025 Privilege M&O and the deadline for doing so has passed. The Court therefore turns to the second step, the *in camera* review.

In this second step, the Court carefully reviewed every redaction in each of the 46 documents at issue *in camera* to determine whether the redacted portions should be disclosed under the crime-fraud exception. As noted in the Privilege M&O, District Judge Crabtree has previously found that Plaintiffs have plausibly alleged "an affirmative act of concealment" by Defendants, noting the following specific allegations:

- Mylan and Pfizer's April 26, 2012 press release about the EpiPen settlement left out that the EpiPen settlement was part of a quid pro quo for Mylan's agreement to simultaneously enter into a settlement agreement resolving the Nuvigil patent litigation in Teva's favor.

---

[15] *AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR, 2015 WL 64947, at *3 (D. Kan. Jan. 2, 2015) ("The only inquiry that remained was whether the subject documents were in fact probative of the alleged fraud, a determination made after *in camera* review.").

[16] In its Privilege M&O, the Court specifically found:

> Plaintiffs have provided sufficient email evidence Defendants' attorneys were materially and significantly involved in the concealment and false or misleading representations. Specifically, Plaintiffs have provided 2012 emails showing that Teva's internal counsel were heavily involved in the discussions intended to conceal and make false or misleading representations about the Spring 2012 EpiPen and Nuvigil settlements, and the associated press releases, and statements to the Federal Trade Commission ("FTC"). The importance of the discovery being sought here also weighs in favor of granting an *in camera* review of these communications. Evidence of Defendants' alleged fraudulent concealment is critical to the Court's decision whether the statute of limitations will be tolled on Plaintiffs' claims in this case. ECF No. 226 at 22.

- Mylan's April 30, 2012, press release left out that Mylan entered the Nuvigil settlement in return for Teva's agreement to the EpiPen settlement.

- Defendants and their co-conspirators concealed their exchange of generic entry dates [and] on May 10, 2012, Mylan reported the two settlements to the Department of Justice as unrelated.

- [E]ven though the two settlements were negotiated in conjunction and signed the same day (April 26, 2012), the conspirators announced the two settlements separately over the course of multiple days to conceal the fact that each settlement was consideration for the other.

- The conspirators intentionally concealed the actual documents for the key settlement agreements and did everything possible to prevent crucial details of those documents from becoming public.

- The parties to the two settlements kept the actual settlement documents confidential, resisted their production in subsequent litigation over the EpiPen, and then marked them CONFIDENTIAL, preventing members of the public from seeing them.[17]

Armed with this guidance from J. Crabtree's M&O, the Court focused its *in camera* review on whether the redacted communications between Defendants and their attorneys are probative of these specific allegations of active and intentional fraudulent concealment by Defendants with the participation of their attorneys. The Court also reviewed the redactions to determine whether the communications were predominantly for business or non-legal purposes.[18]

### III.   *In Camera* Review Results

All of the documents Defendants produced for *in camera* inspection are email chains with partial redactions of individual emails or portions of those emails. For many of the emails

---

[17] Privilege M&O (ECF No. 226) at 19–20 (quoting March 26, 2024 Mem. & Order (ECF No. 74) at 22, 27–28)).

[18] *See* Privilege M&O (ECF No. 226) at 24 ("For the privilege to apply, a connection between the subject of the communication and the rendering of legal advice must exist and legal advice must form the *predominant* purpose of the communication.") (citing *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005)).

reviewed, the majority of the email text is unredacted and visible. After reviewing *in camera* the challenged redactions for each email chain, the Court finds some, but not all, of the redacted communications between Defendants and their attorneys to be probative of the specific allegations of active and intentional fraudulent concealment by Defendants with the participation of their attorneys. The Court also finds one redacted document is a communication predominantly for a business purpose.

Accordingly, Defendants shall produce documents disclosing the following identified redactions under the crime-fraud exception to the attorney-client privilege with one document disclosed because the communication was predominantly for a business purpose:

| Priv. Log IDs[19] | "TEVA_NUVI" Bates Nos. | Email Subject | Email Date(s) | Redactions (by email sent time) |
|---|---|---|---|---|
| **Disclose Redactions Under Crime-Fraud Exception** | | | | |
| 3567 | 12979 | Mylan | Feb. 16, **2012** | all |
| 412<br>413 | 13320–21<br>13318–19 | Re: Mylan | Feb. 23–24, 2012 | all |
| 3615 | 12981 | Re: Mylan | Feb. 24, 2012 | all |
| 362 | 13359 | FW: Epipen – Pursuant to FRE 408 | Apr. 10, 2012 | all |
| 3081 | 16674 | RE: Priv - Update | Apr. 12, 2012 | all |
| 77<br>78<br>561 | 13849<br>13847 | Re: Epipen | Apr. 24, 2012 | 11:48 AM<br>11:52 AM |
| 3561 | 13014 | Re: Kenyon: Proposal for 3PEP | Apr. 25, 2012 | 10:00 PM<br>10:03 PM<br>10:06 PM |

---

[19] This table groups email chains together if they contain at least one of the same individual redacted emails to be disclosed. For these email chains, each redaction ordered disclosed is identified by each email's sent time.

| Priv. Log IDs[19] | "TEVA_NUVI" Bates Nos. | Email Subject | Email Date(s) | Redactions (by email sent time) |
|---|---|---|---|---|
| 302<br>307<br>649<br>1413<br>1414<br>1122 | 13458–60<br>13454<br>16721–23<br>13640–42<br>13643–45<br>17051–53 | RE: Nuvigil | Apr. 26, 2012 | 2:58 PM<br>3:04 PM<br>3:35 PM<br>3:58 PM<br>4:07 PM<br>4:30 PM<br>4:39 PM |
| 1414 | 13643 | RE: Nuvigil | Apr. 27, 2012 | 7:47 AM<br>8:03 AM |
| 320<br>479<br>1432<br>2345<br>2354 | 17072<br>17350<br>16334<br>16337<br>16335 | Re: I need some Nuvigil | Apr. 26, 2012 | 9:43 AM |
| 2384 | 11934 | Re: Nuvigil Patent Litigation - - Favorable Court Decision | Apr. 2, **2013** | 5:34 AM<br>5:53 AM |
| 1707 | 14044 | Epipen update | Sept. 12, **2016** | 4:26 PM<br>9:31 PM |
| 1146<br>1147<br>1148<br>1149<br>1708 | 14046<br>18567–68<br>14050–51<br>14053–54<br>14048 | FTC notice letter | Sept. 14, 2016 | 11:16 AM<br>11:21 AM<br>12:26 PM<br>12:45 PM<br>6:43 PM |
| 1156<br>1710 | 18570<br>18572 | Re: Update on Epipen | Sept. 20, 2016 | all |
| **Disclose Redactions Because Predominantly Business Purpose** | | | | |
| 845 | 13279 | About NUVIGIL | Apr. 27, 2012 | all |

**IT IS THEREFORE ORDERED** that for each document identified in the table above, Defendants shall remove the redaction and disclose the text of the specific individual email under the crime-fraud exception to privilege with one document's redactions disclosed because the communication was predominantly for a business purpose.

**IT IS FURTHER ORDERED** that Defendants shall produce unredacted versions of these documents to Plaintiffs within **fourteen (14) days of the date of this Order**.

IT IS SO ORDERED.

Dated October 7, 2025, at Kansas City, Kansas.

                                                  /s/ Teresa J. James

                                                  Teresa J. James
                                                  U. S. Magistrate Judge