IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DENA BURGE, LEIGH HOCKETT, JORDAN FURLAN, ANNE ARUNDEL COUNTY, MARYLAND, CRISTINE RIDEY, and PATRICIA SAWCZUK, individually and on behalf of all others similarly situated,<br><br>                             **Plaintiffs,**<br><br>v.<br><br>TEVA PHARMACEUTICALS INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., TEVA PARENTERAL MEDICINES, INC., TEVA NEUROSCIENCE, INC., TEVA SALES & MARKETING, INC., CEPHALON, INC.,<br><br>                             **Defendants.** | Case No. 22-2501-DDC-TJJ |

**MEMORANDUM AND ORDER**

United States Magistrate Judge Teresa J. James conducted an in camera review of documents that, according to plaintiffs, defendants improperly withheld as privileged. Judge James concluded that some of those documents aren't privileged because the crime-fraud exception to attorney-client privilege applies. And so, she ordered defendants to produce the unredacted documents. Defendants have objected to Judge James's Order (Doc. 248). Doc. 255. The court, as explained below, overrules their objection.

    **I.**       **Background**

The court assumes the reader's familiarity with the underlying facts and procedural history of this litigation and thus recites only the immediately pertinent background.

Plaintiffs took issue with defendants' privilege log. Plaintiffs moved to compel production of some privilege-log entries under the crime-fraud exception to the attorney-client privilege. Doc. 177 at 7. Plaintiffs argued that defendants used attorneys "to facilitate statutory antitrust violations as well as to fraudulently conceal those violations, obscuring from the public and regulators that the two settlements were actually one settlement." *Id.* Plaintiffs thus asked Judge James to compel production or review the documents in camera. *Id.* at 10.

Defendants opposed the motion to compel, arguing that alleged violations of the antitrust statutes don't trigger the crime-fraud exception. Doc. 185 at 7. They also argued that plaintiffs had failed to allege all elements of fraudulent concealment, a failing fatal to their request for in camera review. *Id.* at 8.

Judge James bought into one of plaintiffs' theories, but not the other. She rejected plaintiffs' theory that antitrust violations qualify as a crime or fraud and thus trigger the crime-fraud exception. Doc. 226 at 15–17. But Judge James also concluded that plaintiffs properly could use defendants' alleged fraudulent concealment as a basis to apply the crime-fraud exception. *Id.* at 17–18. She concluded that "fraudulent concealment and deceitful conduct by Defendants preventing Plaintiffs from asserting their claims in a timely fashion could constitute an eligible 'fraud' to invoke the crime-fraud exception to attorney-client privilege." *Id.* at 18. Judge James also held that plaintiffs had shouldered their burden to demonstrate a prima facie case of fraudulent concealment. *Id.* at 21–22.

Judge James then reviewed the disputed privilege log entries and sorted them into three categories:

1. "Emails regarding negotiation of the EpiPen patent litigation settlement with Mylan and Pfizer and the Nuvigil patent settlement with Mylan;"

> 2. "Emails regarding public statements concerning the EpiPen and/or Nuvigil patent litigation settlements; and"
>
> 3. "Emails regarding communication with the FTC concerning the settlements."

*Id.* at 22. Judge James declined to review in camera the first category because those emails only addressed alleged antitrust violations, and Judge James had concluded that antitrust violations can't trigger the crime-fraud exception. *Id.* at 22–23. But she agreed to review the other two categories in camera.

Defendants haven't objected to Judge James's decision granting in camera review.

Plaintiffs, for their part, asked Judge James to reconsider whether to include the first category of documents in the in camera review. Doc. 234 at 5–8. Plaintiffs argued that, under this court's decision in *In re Urethane Antitrust Litigation*, the court needn't separate the conspiracy from the fraudulent concealment of that conspiracy. *Id.* at 6 (citing *In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1159 (D. Kan. 2012)). Put simply, "the Tenth Circuit has not required that the affirmative acts of concealment . . . be[] separate from the conspiracy." *In re Urethane*, 913 F. Supp. 2d at 1159. And so, plaintiffs asserted, they want to show that defendants fraudulently concealed their scheme with both (a) announcements that hid the related nature of the settlements and (b) "acts promoting secrecy in the negotiations." Doc. 234 at 7 (quotation cleaned up). So, plaintiffs asked Judge James to reconsider reviewing in camera, the emails about negotiation of the EpiPen patent litigation settlement and the Nuvigil patent litigation settlement.

Judge James granted plaintiffs' motion to reconsider, without ordering a response from defendants. Doc. 243. Judge James agreed that "emails regarding the negotiation of the alleged trade-for-delay scheme could be relevant to whether fraudulent concealment and deceitful conduct by Defendants prevented Plaintiffs from asserting their claims in a timely fashion so as

3

to trigger the crime-fraud exception to attorney-client privilege[.]" *Id.* at 5–6 (quotation cleaned up). Defendants didn't object to Judge James's decision granting the motion to reconsider which, in effect, expanded the scope of the in camera review.

Judges James then reviewed the documents in camera. She found "some but not all, of the redacted communications between Defendants and their attorneys to be probative of the specific allegations of active and intentional fraudulent concealment by Defendants with the participation of their attorneys." Doc. 248 at 7. And she thus ordered defendants to produce those communications, unredacted, to plaintiffs.

Defendants have objected to this Judge James Order—Doc. 248—and that Order alone. Doc. 255 ("Defendants' Objections to the Magistrate Judge's *In Camera* Review Order (Dkt. 248)"). The court begins its review of this Order with the legal standard governing the objection, next.

## II.     Legal Standard

When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "'clearly erroneous or contrary to law'" standard of review. *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988)); Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Under this clearly erroneous standard, a district judge does not review factual findings de novo; instead, it must affirm a magistrate judge's findings unless a review of the entire evidence leaves the district judge "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464 (quotation cleaned up). In contrast, "the contrary to law" standard permits a district judge to conduct an independent review of purely legal determinations made by the magistrate judge. *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007). A magistrate judge's order is

contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cnty. Comm'rs*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011).

With the table set, the court turns to the substantive analysis of defendants' objection.

**III.     Analysis**

Defendants organize their arguments under two objections.  *First*, they argue that Judge James acted contrary to law by compelling defendants to produce documents because she concluded the documents were "probative of the specific allegations of active and intentional fraudulent concealment by Defendants with the participation of their attorneys." Doc. 248 at 7. Defendants zero in on the word "probative," arguing that it reveals Judge James erroneously compelled production of documents based on the too-forgiving legal standard of "mere relevance" to plaintiffs' fraudulent concealment theory. Doc. 255 at 5. *Second*, they argue that Judge James erroneously ordered defendants to produce the Category 1 documents articulated below. The court considers each objection, in turn, below.

  **A.     The In Camera Review Standard**

When Judge James conducted her in camera review, she noted that the standard for determining whether the crime-fraud exception applies to the challenged documents isn't altogether clear. Doc. 248 at 3. She ultimately ordered defendants to produce the documents after finding some "redacted communications between Defendants and their attorneys to be probative of the specific allegations of active and intentional fraudulent concealment by Defendants with the participation of their attorneys." *Id.* at 7. Defendants argue that Judge James "acted contrary to law in determining that mere relevance to [the fraudulent concealment] tolling theory suffices to pierce [the] attorney-client privilege." Doc. 255 at 5. According to defendants, the crime-fraud exception "cannot be stretched to compel the production of

5

privileged communications anytime they are deemed 'probative of' fraudulent concealment allegations." *Id.* at 11.[1]

Let's start with the basics of the crime-fraud exception. "The importance and sanctity of the attorney-client privilege is well established." *In re Grand Jury Subpoenas*, 144 F.3d 653, 659 (10th Cir. 1998). But "the attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud." *Id.* at 660 (quotation cleaned up). Courts apply a two-step process to decide whether the crime-fraud exception to attorney-client privilege applies. At the first step, the party seeking to vitiate attorney-client privilege must show "a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the documents may reveal evidence to establish that the crime-fraud exception applies." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cit. 1995). If the party asserting the crime-fraud exception makes such a showing, the court may conduct an in camera review.

---

[1] Defendants' first objection tries to bootstrap an untimely objection about Judge James's earlier conclusions onto their timely objection. Recall that Judge James agreed with one of plaintiffs' crime-fraud-exception theories: that defendants fraudulently concealing their activities from plaintiffs, and thus preventing plaintiffs from bringing a timely suit, can qualify as an eligible fraud. Doc. 226 at 17–18. Defendants now assert that "it is doubtful whether alleged fraudulent concealment for purposes of tolling a limitations period is ever sufficient to invoke the extreme remedy of piercing attorney-client privilege." Doc. 255 at 11 (emphasis omitted). And they cite several cases to support this idea. *Id.* But, as plaintiffs correctly point out, Doc. 258 at 10, defendants never presented this argument nor cited these cases to Judge James, Doc. 185. Instead, to defeat plaintiffs' claim of fraudulent concealment, defendants argued only that plaintiffs hadn't alleged the required elements of fraudulent concealment. *Id.* at 8. Judge James disagreed. And, when agreeing to perform an in camera review, Judge James concluded that fraudulent concealment can trigger the crime-fraud exception. Doc. 226 at 17–18.

Defendants never objected to that decision. So, defendants' argument is more than a day late and thus is a dollar short. *See* Fed. R. Civ. P. 72(a) (requiring party seeking to object to magistrate judge's order to object within 14 days); *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). Given that defendants' current argument uses wishy washy language—*i.e.*, "it is doubtful[,]" Doc. 255 at 11—and they bootstrapped it to their timely objection, it appears defendants suspected that their untimely objection would receive this unwelcome reception. *See AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR, 2015 WL 64947, at *3 (D. Kan. Jan. 2, 2015) (refusing to allow party objecting only to in camera review order "to bootstrap onto its objection to the production of these documents its points of error with orders that were issued months before").

What legal standard to apply during the in camera review—the second step in the process—is less clear. The Supreme Court never has adopted a specific standard. Nor has the Tenth Circuit. Instead, the Supreme Court has held "that a lesser evidentiary showing is needed to trigger in camera review than is required ultimately to overcome the privilege." *United States v. Zolin*, 491 U.S. 554, 572 (1989). Defendants agree. They recognize that "the Tenth Circuit has not articulated the exact quantum or proof needed to establish that a crime or fraud has occurred[.]" Doc. 255 at 11 (quotation cleaned up). They nonetheless insist that this quantum of proof is "demanding"—*i.e.*, probable cause, reasonable cause, or evidence sufficient to support a finding of every element of the crime-fraud exception. But without any binding authority supporting this view, defendants face a steep hill.

The biggest problem defendants face is a simple one: Judge James's Order recites the law correctly. It acknowledged that the legal standard for "determining whether the crime-fraud exception applies" is "less clear" but noted that the Supreme Court has held that "the evidentiary standard is higher" for the second step than the first. Doc. 248 at 3. Judge James also cited the Supreme Court's directive that, to "'drive the [attorney-client] privilege away, there must be something to give colour to the charge; there must be prima facie evidence that it has some foundation in fact.'" *Id.* (citing *Clark v. United States*, 289 U.S. 1, 15 (1933)). And Judge James relied on a case decided by our court—*AKH Co. v. Universal Underwriters Insurance Co.*—where the court described the in-camera review standard this way: whether the documents "standing alone and unrebutted, . . . may create a prima facie case of fraud." *Id.* at 4 (quoting *AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2014 WL 5321074, at *2 n.2 (D. Kan. Oct. 17, 2014)). The inquiry is not whether the documents themselves establish fraud. *Id.* Instead, the court asks—and this is where that pesky word probative appears—

7

"whether the subject documents were in fact probative of the alleged fraud." *Id.* at 4–5 (quoting *AKH Co.*, 2015 WL 64947, at *3).

Judge James's legal standard matches the standard articulated by our Circuit. And she applied that standard properly. She carefully recited plaintiffs' specific allegations of defendants' alleged acts of fraudulent concealment: two April 2012 press releases about litigation settlements; a May 2012 report to the Department of Justice reporting the settlements as unrelated; and allegations of a plot to conceal the actual settlement documents by announcing the two settlements separately. Doc. 248 at 5–6. She then focused her "review on whether the redacted communications between Defendants and their attorneys are probative of these specific allegations of active and intentional fraudulent concealment by Defendants with the participation of their attorneys." *Id.* at 6. In other words, Judge James looked for "something to give colour to the charge" or "prima facie evidence that" plaintiffs' claims of fraudulent concealment have "some foundation in fact." *Clark*, 289 U.S. at 15 (quotation cleaned up). The court thus rejects defendants' claim that Judge James failed to apply or misapplied the governing law.

Anxious to avoid this outcome, defendants have cherry-picked the word "probative" out of Judge James's decision and built their complaint of legal error on it. But, by the time "probative" appears, Judge James already had narrowed her inquiry, laying out specific allegations of fraudulent concealment. Judge James also had recited correctly that a higher standard applies to the crime-fraud exception's second step—ordering production of the documents after an in camera review—than to its first step. What's more, Judge James plainly engaged in a careful review, ordering defendants to produce "some, but not all, of the redacted communications[.]" Doc. 248 at 7. In sum, it's evident that Judge James individually examined the documents to determine whether there was "'prima facie evidence that'" plaintiffs'

8

invocation of the crime-fraud exception had "'some foundation in fact.'" *Id.* at 3 (quoting *Clark*, 289 U.S. at 15). She did not act contrary to law.

Defendants criticize Judge James's approach and in doing so, they rely heavily on a Second Circuit case, *In re Richard Roe, Inc.* Doc. 255 at 12 (citing *In re Richard Roe, Inc.*, 68 F.3d 38, 40–41 (2d Cir. 1995)). *Richard Roe* held that the crime-fraud exception applies only when (1) "the court determines that the client communication . . . in question was itself in furtherance of the crime or fraud" and (2) "there is probable cause to believe that the particular communication with counsel . . . was intended in some way to facilitate or to conceal the criminal activity." 68 F.3d at 40 (emphasis omitted). Our Circuit is aware of *In re Richard Roe*. *See In re Grand Jury Subpoenas*, 144 F.3d at 660. And though the Circuit cited *Richard Roe*, it didn't endorse or adopt the Second Circuit's formulation. *Id.* To say the obvious, Judge James didn't act contrary to law by failing to apply an out-of-Circuit rule that our Circuit never has adopted.

And, contrary to defendants' position, Doc. 255 at 11–12, Judge James didn't apply a mere "relevant evidence test." Judge James concluded that the challenged documents supported plaintiffs' theory that defendants' counsel had acted in furtherance of defendants' scheme to fraudulently conceal their allegedly unlawful conduct. *See* Doc. 248 at 6–7.

The court thus overrules defendants' first objection.

### B.     Category One Documents

Defendants next object that Judge James acted contrary to law and clearly erred by ordering them to produce the so-called "Category 1" documents. Doc. 255 at 12–13. Defendants' argument on this point is somewhat disorganized, likely because they attempt—again—to transform an untimely objection into a timely one.

9

Recall that Judge James, when ordering an in camera review, sorted the relevant documents into three categories. Doc. 226 at 22. Category 1 included "Emails regarding negotiation of the EpiPen patent litigation settlement with Mylan and Pfizer and the Nuvigil patent settlement with Mylan[.]" *Id.* At first, Judge James declined to review these Category 1 documents in camera, concluding that these documents addressed alleged antitrust violations only—and antitrust violations can't trigger the crime-fraud exception. *Id.* at 22–23. Plaintiffs asked Judge James to reconsider, Doc. 234, and she did so, Doc. 243 at 5–6.

In reconsidering, Judge James relied on this court's decision in *In re Urethane Antitrust Litigation*. It held that plaintiffs seeking to show fraudulent concealment can show fraudulent means of concealment by alleging "that defendants affirmatively acted to conceal their antitrust violations[.]" 235 F.R.D. 507, 518 (D. Kan. 2006). Judge James thus concluded that emails about the negotiations of the settlements could show fraudulent concealment and deceitful conduct. Doc. 243 at 5. Judge James also noted that defendants never divided the privilege-log entries between antitrust violations (an invalid crime-fraud exception theory) and fraudulent concealment (a valid crime-fraud exception theory). *Id.* at 6.

Defendants never objected. That is, they never objected to Judge James's conclusion that emails about the EpiPen and Nuvigil settlements could show fraudulent concealment and thus could qualify as a basis for the crime-fraud exception.

Now, however, defendants object that the "Category 1 documents do not fall within the scope of the crime-fraud exception." Doc. 255 at 12. They quarrel with Judge James's interpretation of *In re Urethane. Id.* at 12–13. And they argue that the "Category 1 communications are far afield from any alleged fraudulent concealment[.]" *Id.* at 13. Defendants waived these arguments. They filed no objection to this ruling. *See* Fed. R. Civ. P.

10

72(a) (requiring party seeking to object to magistrate judge's order to object within 14 days); *Garfinkle*, 261 F.3d at 1031. If defendants had an issue with Judge James's conclusion that Category 1 documents can show fraudulent concealment, they should've raised that argument when Judge James reached that conclusion.[2] They didn't.

Searching for a way to package their argument as a timely objection, defendants argue that these documents—negotiating the relevant settlement agreements—demonstrate "why relevance is not the right test[.]" Doc. 255 at 12. This argument just repackages and repeats their first objection, and the court rejects it.

In a last-ditch play, defendants claim Judge James clearly erred by ordering defendants to disclose the Category I documents. *Id.* at 13. Defendants complain that nothing in the relevant documents has "anything to do with a crime or fraud." *Id.* They insist that the undersigned judge will reach the same conclusion when conducting its own in camera review. *Id.* Yet defendants never bothered to submit the documents to this judge for in camera review. Nor have defendants bothered to identify—by Bates number or otherwise—the specific documents that they object to producing as settlement-related. It isn't the court's job to dig through and guess which documents are the subject of defendants' complaint. *See Triplett v. U.S. Dep't of Def.*, No. 11-2105-SAC, 2011 WL 1113551, at *1 (D. Kan. Mar. 24, 2011) ("[N]either the court nor the adverse parties should be required to 'try to fish a gold coin from a bucket of mud.'" (quoting

---

[2] Defendants claim that they didn't waive this argument because they "argued at length that the Category I settlement communications are not discoverable as they were not directed to a crime or fraud[,]" citing their opposition to plaintiffs' motion to compel. Doc. 260 at 4 (citing Doc. 185 at 7–8, 8 n.7). First of all, defendants didn't make this argument; they argued only that plaintiffs hadn't alleged all the elements of fraudulent concealment. Doc. 185 at 8. And, most of all, defendants never objected to Judge James's Order granting the motion to compel. So, defendants waived all arguments made in their motion-to-compel opposition. *See AKH Co.*, 2015 WL 64947, at *3.

*United States v. Lockheed–Martin Corp.*, 328 F.3d 374, 376–78 (7th Cir. 2003))).  The court thus can't conclude that Judge James clearly erred because defendants haven't demonstrated she did.

The court overrules this second ground of defendants' Objection.

## IV.     Conclusion

The court overrules defendants' Objection (Doc. 255).  Perhaps anticipating this result, defendants' Objection asks the court to certify this decision for interlocutory appeal in the event of an overruling.  Doc. 255 at 14.  But their argument on this front is cursory—a single sentence tacked to the end of their motion, *id.*, and mentioned only in a brief footnote in their Reply, Doc. 260 at 3.  Given defendants' cursory argument, rampant waiver problems, and uneven approach to their Objection, the court declines to certify an interlocutory appeal.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Objection (Doc. 255) to Magistrate Judge James's Order (Doc. 248) is overruled.

**IT IS SO ORDERED.**

**Dated this 14th day of January, 2026, at Kansas City, Kansas.**

                                                  **s/ Daniel D. Crabtree**
                                                  **Daniel D. Crabtree**
                                                  **United States District Judge**