UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DENA BURGE, LEIGH HOCKETT, JORDAN FURLAN, CRISTINE RIDEY, PATRICIA SAWCZUK, and ANNE ARUNDEL COUNTY, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., TEVA PARENTERAL MEDICINES, INC., TEVA NEUROSCIENCE, INC., TEVA SALES & MARKETING, INC., and CEPHALON, INC.,<br><br>           Defendants. | Case No. 22-cv-2501-DDC-TJJ<br><br>(related to Case No. 26-mc-202-DDC-TJJ) |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiffs' Motion to Compel Regarding Goodwin Procter LLP's Objections and Responses to Plaintiffs' Subpoena to Produce Documents (ECF No. 229). Plaintiffs request an order, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), compelling Goodwin Procter LLP ("Goodwin"), a law firm representing Defendants in this action, to search for and produce documents responsive to subpoena document Requests 1 through 9 and to log documents withheld on the basis of privilege or other protection. As explained below, Plaintiffs' motion is granted in part and denied in part.

## I.      Nature of the Case and Discovery Dispute Background

Plaintiffs—representing a proposed class—allege Defendants and their co-conspirators entered an unlawful reverse payment settlement and conspired to safeguard their monopoly on

Nuvigil, a wakefulness drug with the generic name armodafinil. Plaintiffs allege Defendants agreed to stay out of the EpiPen market, allowing Mylan and Pfizer to maintain their EpiPen monopoly. In exchange, Plaintiffs contend, Mylan and Pfizer agreed to stay out of the Nuvigil market, allowing Defendants to maintain their Nuvigil monopoly. Plaintiffs refer to these agreements as the "trade-for-delay" agreement.

Since June 2024, this case has been bifurcated with Phase I discovery focused on the pivotal issues of the timeliness of Plaintiffs' claims under the applicable statutes of limitations and the related issues of tolling and fraudulent concealment.[1] The Court has previously ruled on a motion filed by Defendants to compel three law firms representing the named Plaintiffs to comply with Phase I subpoenas.[2]

Pertinent to the present dispute, Plaintiffs served a subpoena duces tecum upon Goodwin (the "Subpoena"), one of the law firms representing Defendants in this action, and which also represented Teva to some extent with regard to the EpiPen settlement and Nuvigil settlement. The Subpoena set an April 29, 2025 date for compliance. It set forth twelve document Requests, including the following nine that are challenged and at issue here (the "Challenged Subpoena Requests"):

1. All Communications between you and any employee, representative, lawyer, or law firm acting on behalf of Mylan, Pfizer, Meridian, or King concerning the EpiPen Settlement, including, but not limited to, all attachments to such communications.

2. All Communications between you and any employee, representative, lawyer, or law firm acting on behalf of Mylan, Matrix Laboratories Limited, or Matrix

---

[1] *See* June 14, 2024 Order Regarding Phase I Disc. (ECF No. 88) and July 15, 2024 Phase I Sched. Order (ECF No. 92) at 2.

[2] *See* May 27, 2025 Mem. & Order (ECF No. 202).

Laboratories, Inc. concerning the Nuvigil Settlement, including, but not limited to, all attachments to such communications.

3. All Documents and Communications concerning the Mylan Press Releases.

4. All Documents and Communications concerning the Teva Press Release.

5. All Communications and Documents concerning or discussing disclosure or potential disclosure of the terms of the EpiPen Settlement.

6. All Communications and Documents concerning or discussing disclosure or potential disclosure of the terms of the Nuvigil Settlement.

7. All Communications and Documents concerning or discussing any relationship between the EpiPen Settlement and Nuvigil Settlement.

8. All Communications and Documents relating to or concerning any filing pursuant to Section 1112(a) and (c)(2) of Title XI of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, arising from or pertaining to the EpiPen Settlement.

9. All Communications and Documents relating to or concerning any filing pursuant to Section 1112(a) and (c)(2) of Title XI of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, arising from or pertaining to the Nuvigil Settlement.[3]

The Subpoena provides that the applicable time period for the document requests is "April 30, 2012 through the present."[4] The Subpoena defines the "EpiPen Settlement" to mean the settlement of the litigation captioned *King Pharm., Inc., et al, v. Teva Parenteral Med., Inc., et al.*, No. 1:09-cv-00652 (D. Del. Aug. 8, 2009) and the "Nuvigil Settlement" as the settlement of the litigation captioned *Cephalon, Inc. v. Mylan Pharms., Inc.*, No. 1:09-cv-00954 (D. Del. Dec. 11, 2009). The Subpoena defines "EpiPen MDL" as referring to the multidistrict litigation heard in the District of Kansas, captioned *In re: EpiPen*, No. 17-md-2785, and all actions consolidated within it.[5]

---

[3] Subpoena (ECF No. 229-1) at 11–12. The communications and documents sought by Requests 8–9 are referred herein as "MMA" letters or filings.

[4] *Id*. at 11, ¶ 11.

[5] *Id.* at 7–8, ¶¶ 16–17, 19.

On May 30, 2025, Goodwin served its objections and responses to the Subpoena.[6] Goodwin objected to all the Requests but agreed to produce the transcript and exhibits from the deposition of Goodwin attorney Christopher Denn ("Denn"), taken in connection with the EpiPen MDL. Following two meet-and-confer conferences, Goodwin agreed to allow Plaintiffs access to the prior production of documents from the EpiPen MDL.[7] After a D. Kan. Rule 37.1(a) pre-motion discovery conference with the Court failed to resolve the dispute over the Subpoena, Plaintiffs timely filed their motion in this case on August 6, 2025, requesting an order compelling Goodwin to search for and produce documents and communications responsive to the Challenged Subpoena Requests 1 through 9.

Noting the Goodwin Subpoena required compliance in California, the Court entered a text order denying Plaintiffs' motion without prejudice to refiling in the district where the subpoena required compliance, citing Fed. R. Civ. P. 45(d)(2)(B)(i).[8] On November 21, 2025, Plaintiffs initiated a miscellaneous action in the Central District of California seeking enforcement of the Goodwin subpoena and filed a motion to transfer their motion to compel back to the District of Kansas. On January 15, 2026, the Central District of California approved the parties' Stipulation to Transfer Plaintiffs' Motion to Compel to the District of Kansas. Upon transfer to the District of Kansas, the case was assigned miscellaneous case number 26-mc-202-DDC-TJJ.

At the suggestion of the Court and consistent with the parties' Joint Stipulation Regarding

---

[6] Goodwin Objs. to Subpoena (ECF No. 229-2). Requests 10–12 are not at issue. Goodwin agreed to produce the Denn deposition transcript taken in the EpiPen MDL (responsive to Request 12) and re-produce documents Goodwin produced in response to a subpoena in the EpiPen MDL (responsive to Request 10). Plaintiffs state they are not moving to compel regarding Request 11 at this time. Pls.' Mot. (ECF No. 229) at 11 n.9.

[7] June 30, 2025 Email (ECF No. 229-3) at 5.

[8] *See* Nov. 7, 2025 text Order (ECF No. 261)

Procedure for Resolution of the Goodwin Subpoena Dispute,[9] the Court entered a text order (ECF No. 305) stating it would rule on the transferred Goodwin subpoena dispute based on the parties' briefing previously filed in this case.

## II.      Legal Standards

Federal Rule of Civil Procedure 45 governs subpoenas served upon non-parties. Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. "The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[10]  The court must determine "whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards as set forth in Rule 26(b) and as applied to Rule 34 requests for production."[11] Under Rule 26(b)(1), unless otherwise limited by court order, the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The court must also limit the extent of discovery otherwise allowed if it determines the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."[12]

The party issuing the subpoena must take "reasonable steps to avoid imposing undue

---

[9] Filed as ECF No. 51 in the transferred miscellaneous Case No. 26-mc-202-DDC-TJJ.

[10] *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)). *See also* Fed. R. Civ. P. 45 advisory committee note to the 1970 amendment (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules").

[11] *Stewart v. Mitchell Transp.*, No. 01-2546-JWL, 2002 WL 1558210, at *3 (D. Kan. July 11, 2002).

[12] Fed. R. Civ. P. 26(b)(2)(C)(i).

burden or expense" on the subpoenaed entity.[13] Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[14] Document subpoenas seeking discovery from current counsel representing the opposing party raise additional concerns. Counsel are not automatically exempt from being subjected to a subpoena to produce documents or to testify, however, courts generally disfavor subjecting opposing trial counsel to broad discovery and recognize its potential disruptive effect on the attorney-client relationship and the adversarial process.[15] Consistent with the Court's May 27, 2025 Memorandum and Order (ECF No. 202) ruling on the subpoenas Defendants served upon the law firms representing Plaintiffs in this case,[16] the Court will not apply the three *Shelton* criteria[17] to the document subpoena served upon the

---

[13] Fed. R. Civ. P. 45(d)(1).

[14] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.,* No. 17-MD-2785-DDC-TJJ, 2018 WL 4854027, at *2 (D. Kan. Oct. 5, 2018) (citations omitted).

[15] *See Monster Energy Co. v. Vital Pharm., Inc.*, No. 5:18-cv-01882-JGB, 2020 WL 2405295, at *9 (C.D. Cal. Mar. 10, 2020) (applying a heightened standard to document subpoenas served on former opposing counsel and law firm, noting "discovery sought from opposing counsel is universally disfavored"); *In re Allergan, Inc*, No. 14-cv-02004-DOC (KES), 2016 WL 5922717, at *4 (C.D. Cal. Sept. 23, 2016) (finding the fact that the defendant served the subpoena upon opposing trial counsel a factor to be considered in determining if the subpoena imposed an undue burden); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) ("Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery.").

[16] The subpoenas Defendants served upon Plaintiffs' counsel sought documents and communications the law firms disseminated to solicit potential plaintiffs for participation in the EpiPen MDL and this action and documents made publicly available via the law firms' websites and other platforms for various time periods. ECF No. 202 at 4.

[17] *Shelton v. Am Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986). Under *Shelton*, a party seeking to depose opposing counsel must show: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id*. The Tenth Circuit has adopted the *Shelton* criteria for requests to take the deposition of opposing counsel. *Boughton v. Cotter Corp.*, 65 F.3d 823, 829–30 (10th Cir. 1995). The Tenth Circuit has not applied the *Shelton* criteria to a document subpoena served upon opposing counsel.

Goodwin law firm, but proceeds with heightened caution relative to the challenged Subpoena Requests.

### III.    Goodwin's Objections to the Challenged Subpoena Requests

Goodwin asserted multiple objections to the nine Challenged Subpoena Requests 1–9. It objected the Requests are unreasonably cumulative and duplicative, not relevant, overly broad, unduly burdensome, disproportionate to the needs of the case, and seek documents not in its possession, custody, or control. It also objected to the Requests as seeking information that is protected by attorney-client privilege and the attorney work product doctrine. After objecting, Goodwin stated it "will not search for, log, or produce any documents or communications in response to these Requests."[18]

In its response to Plaintiffs' motion, Goodwin argues the broad discovery sought by these Requests is largely duplicative of discovery that has already been produced in the case, overly broad and irrelevant, and/or protected from disclosure as attorney work product. Goodwin also argues the Subpoena Requests are highly invasive and harassing as they would require production of its internal and privileged emails. Goodwin therefore contends it should not be required to produce or log any of the requested internal law firm communications.

### A.    Goodwin's Objections That the Requests are Duplicative and/or Cumulative

Goodwin argues the subpoenaed documents are largely duplicative of documents already produced or logged as privileged by Defendants in this case. To the extent Goodwin communicated with Defendants concerning the Teva Press Release, disclosure of the terms of the EpiPen or Nuvigil settlements, or MMA filings pertaining to those settlements, Goodwin argues those

---

[18] Goodwin Objs. to Subpoena Requests 3–6 and 8–9 (ECF No. 229-2) at 10–26.

documents and communications were captured by the collection and review already conducted by Defendants. Goodwin claims Defendants have already produced over 81,000 documents and logged thousands more on a privilege log. Because Defendants' production and privilege log contain all responsive communications with Goodwin, it argues the discovery Plaintiffs seek now is duplicative of Defendants' production and privilege log and it should not be compelled to search for and produce these same documents.

Plaintiffs argue the existence of duplication in documents requested from multiple parties is not enough for a party to quash a third-party subpoena and there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party that can be obtained from a party. They also argue Goodwin's duplication concerns are misplaced. Plaintiffs are skeptical of the completeness of Defendants' collection and production of documents in this case, stating their analysis of Defendants' production has revealed a number of important documents that appear to be missing. They cite, as an example, the incomplete production of Teva's regulatory notification MMA letters.

Under Fed. R. Civ. P. 26(b)(2)(C)(i), the court is required to limit the frequency or extent of discovery otherwise allowed if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." The court is also required to quash or modify a subpoena that subjects the recipient to undue burden.[19] "A subpoena that seeks irrelevant, overly broad, or

---

[19] Fed. R. Civ. P. 45(d)(3)(A)(iv).

duplicative discovery causes undue burden, and the trial court may quash it on those bases."[20] However, discovery is not unreasonably cumulative or duplicative simply because it can be or has been obtained from another source.[21]

At the outset, the Court recognizes Defendants have already produced or logged a significant number of documents in Phase I discovery, although it is not clear how many of them would be responsive to the Subpoena Requests challenged here by Goodwin. However, given the nature of Goodwin's attorney-client relationship with Defendants and the number of times Goodwin attorneys are listed on Defendants' privilege log,[22] the Court finds the Subpoena likely would require Goodwin to produce or log a significant number of duplicate documents already produced or logged by Defendants. Requiring Goodwin to produce or log duplicate documents makes little sense for any party here. It would be unduly burdensome, inefficient, and cause needless and additional delay and expense. But there may be responsive documents that were not produced or logged previously by Defendants. The Court therefore modifies and limits the Goodwin Subpoena Requests 1–9 to <u>exclude</u> responsive communications and documents that have already been produced by Defendants or logged on a privilege log in this case.

### B. Goodwin's Objections to Requests for Internal Law Firm Communications and Documents

Goodwin also objects to Requests 3–9 to the extent they require production of its internal

---

[20] *Raymond v. Spirit AeroSystems Holdings, Inc.*, No. 16-1282-JWB-GEB, 2021 WL 1238269, at *4 (D. Kan. Apr. 2, 2021); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164 MLBDWB, 2007 WL 2122437, at *5 (D. Kan. July 20, 2007).

[21] *See Pulsecard, Inc. v. Discover Card Servs., Inc.*, No. 94-2304-EEO, 1996 WL 397567, at *5 (D. Kan. July 11, 1996) ("The Federal Rules of Civil Procedure do not prohibit parties from obtaining similar discovery from multiple sources.").

[22] *See* Defs.' Priv. Log (ECF No. 177-2) (sealed). Goodwin email addresses are found 591 times on Defendants' 3/10/2025 privilege log and some emails have 2012 sent dates. ECF No. 177-2 at 6–7.

law firm communications and documents regarding legal work it was conducting for its client. It argues the discovery Plaintiffs seek is irrelevant because unless and until Goodwin's contemplated legal strategies or advice are conveyed to its client those documents are not relevant to the claims and defenses in this case. It also argues requiring it to produce its internal documents and communications is a violation of the work product doctrine and, from a policy perspective, would have a chilling effect on a law firm's ability to adequately represent its clients.

Plaintiffs argue Goodwin's internal communications and documents that are responsive to the Subpoena Requests should be produced or, if withheld, logged on a privilege log. They argue the unique circumstances present here, where Goodwin was involved in Defendants' actions, including its alleged fraudulent concealment of the trade-for-delay agreement, distinguishes this case. Plaintiffs stress that Goodwin's involvement in both this case and the EpiPen MDL—where Goodwin attorneys allegedly negotiated and drafted the settlements and were involved in decisions about the disclosure (or non-disclosure) of the settlements to regulators and the public—warrants discovery of Goodwin's internal communications and documents.

The Court finds Plaintiffs have shown that Goodwin likely has documents responsive to the Subpoena Requests based upon its attorneys' involvement with public statements and MMA filings related to the EpiPen or Nuvigil settlements and their role in "papering" pre-negotiated settlement terms into binding term sheets. Those documents would be relevant to the Phase I issues of Defendants' alleged fraudulent concealment or non-disclosure of the trade-for-delay agreement, but only if they reveal the actions or inactions of Defendants and what they knew and learned. The Court therefore questions the relevance of Goodwin's wholly *internal* law firm documents and communications, if as Goodwin states, they were never shared with their client. Even if Goodwin's attorneys were significantly involved with the Mylan and Teva 2012 press releases, the disclosure

10

of the terms of the EpiPen and Nuvigil settlements, and MMA filings related to those settlements, Goodwin's wholly internal communications and documents would not be relevant unless conveyed to its client, because the actions or inactions of Defendants, not Goodwin, are at issue. The Court therefore sustains Goodwin's relevance objection to the production of its wholly internal law firm communications and documents. Under Fed. R. Civ. P. 45(d)(3)(A)(iii), the Court modifies the Goodwin Subpoena Requests 3–9 to <u>exclude</u> internal law firm communications and documents.[23]

Because the Court here sustains Goodwin's relevance objection to producing its internal law firm communications and documents, it need not address whether the documents are also protected from disclosure as attorney work product or whether Goodwin should be required to log them on a privilege log. However, the Court pauses here to stress its very significant concerns with any subpoena served on a law firm while it is actively representing an opposing party that seeks the *internal* communications of that law firm. These concerns include the potential for use of such a subpoena to harass, unduly burden, increase the litigation costs, or promote other improper purposes, especially given the likelihood that *internal* law firm communications would be protected from disclosure as attorney work product.

Additionally, if Goodwin withholds documents responsive to the Subpoena, as now modified, other than wholly internal law firm communications and documents (i.e., such communications or documents that are sent to others who are not clients), it must comply with Fed. R. Civ. P. 45(e)(2)(A). Specifically, that subsection requires "[a] person withholding subpoenaed information under a claim it is privileged or subject to protection as trial-preparation

---

[23] There is no need to modify Requests 1–2 to exclude internal law firm communications. Goodwin does not object to producing internal law firm communications and documents for Requests 1–2, and they do not seek Goodwin's internal communications, only those with third parties concerning the EpiPen settlement and Nuvigil settlement.

material" to "(i) expressly make the claim and (ii) describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  If Goodwin withholds documents, other than wholly internal ones, responsive to the now-modified Subpoena Requests on the basis of any privilege or work product, it must provide a privilege log describing the withheld documents.

**C.      Goodwin's Objections to the "April 30, 2012 through Present" Time Period**

Goodwin objects to the "April 30, 2012 through the present" time frame set out in the Subpoena as irrelevant, overly broad and unduly burdensome, and disproportionate to the needs of this case.  It argues the sweeping 13-year time frame is not tied to the January through April 2012 relevant time period of the negotiations and the April 26 and 30, 2012 press releases, and would require Goodwin to search for and produce years of irrelevant, post-settlement communications between Goodwin and its client. Plaintiffs argue this objection could and should have been resolved through the meet-and-confer process.

For Requests 1–2, Goodwin continues to object but states it would be willing as a good-faith compromise to search for and produce non-privileged and non-duplicative responsive documents and communications if limited to the time period "April 30, 2012 through December 31, 2012," and limited to communications "in which no Teva personnel is included on the communication."[24] For Requests 5–6, Goodwin indicates it is willing to search for and produce non-privileged, non-duplicative "communications between Goodwin and the FTC or DOJ from April 30, 2012 through December 31, 2012 concerning the EpiPen settlement or Nuvigil settlement

---

[24] Goodwin Resp. (ECF No. 238) at 11.

in which no Teva personnel is included on the communication."[25] For Requests 8–9, Goodwin states it is willing to search for and produce non-privileged and non-duplicative MMA filings arising from or pertaining to the EpiPen Settlement or Nuvigil Settlement, but does not indicate a limiting end date.[26]

Plaintiffs argue Goodwin's late offer to search for and produce limited documents responsive to some of the Challenged Subpoena Requests is insufficient. They argue Goodwin's proposed December 31, 2012 end date for Requests 1–2 and 5–6 is arbitrary in that Defendants' privilege log indicates Goodwin's involvement in relevant matters into November 2016. They also argue Goodwin does not explicitly state that responsive materials do not exist for the longer time frame, nor could it, because materials post-dating April 30, 2012 confirm the existence of responsive documents. Plaintiffs also argue that an appropriate start date for Requests 1–6 is January 2012 because Goodwin admits that the EpiPen and Nuvigil Settlements were negotiated over the four-month period between January and April 2012.

The Court finds the time frame "April 30, 2012 through the present" applicable to all the Challenged Subpoena Requests would require Goodwin to search for and produce (or log) thirteen years' of documents and communications concerning the EpiPen settlement and the Nuvigil settlement, press releases, disclosure of the terms of the EpiPen or Nuvigil settlements, and MMA filings pertaining to those settlements. As the settlements at issue were finalized and press releases issued in 2012, the lack of any end date for the Subpoena document requests, with no explanation for such a lengthy thirteen-year period, makes it overly broad on its face and would subject

---

[25] *Id.*

[26] *Id.*

Goodwin to an undue burden in responding to the Subpoena. Goodwin's offered December 31, 2012 end date is reasonable for Requests 1–2 seeking Goodwin's communications with third parties concerning the EpiPen settlement and Nuvigil settlement, which occurred in 2012. The December 31, 2012 end date is also reasonable for Requests 3–6 seeking documents and communications concerning the 2012 press releases and concerning disclosure of the 2012 settlements. It is also reasonable for Request 7 seeking documents and communications "concerning or discussing any relationship between the EpiPen settlement and Nuvigil settlement." Plaintiffs offer no reasonable alternative end date for Requests 1–7.

The Court is significantly reducing the thirteen-year time period of the Goodwin Subpoena to a much shorter time period, but the Court also modifies the Subpoena start date for Requests 1–7 to the earlier start date of January 1, 2012. This is based upon Goodwin's acknowledgement in its response that "[i]t has long been established that the two settlements were independently negotiated between the business leaders and in-house attorneys at Mylan, Pfizer, and Teva, over a four month period between January and April 2012, with binding term sheets that were drafted by respective in-house and outside counsel signed on April 26, 2012."[27] The Court therefore finds January 1, 2012 to be a more relevant start date and modifies the Goodwin Subpoena to limit Requests 1–7 to the one-year time period "January 1, 2012 through December 31, 2012."

For Requests 8–9, the Court finds a longer December 31, 2016 end date reasonable for the requested MMA filings based upon Plaintiffs' showing that Goodwin attorneys were involved in drafting MMA-related filings throughout 2016.[28] The Court therefore modifies the Goodwin

---

[27] *Id.* at 9.

[28] *See* MMA letters (ECF Nos. 229-8 to 229-11) (sealed).

Subpoena to limit Requests 8–9 to the time period "April 30, 2012 through December 31, 2016."

Under Rule 45(d)(3)(A)(iv), the Court is required to quash or modify a subpoena that subjects the subpoenaed entity to an "undue burden." Here, the Court finds Goodwin would be subjected to an undue burden if required to search for and produce documents responsive to the Subpoena's broad thirteen-year time frame. Therefore, under Fed. R. Civ. P. 45(d)(3)(A)(iv), the Court modifies the Goodwin Subpoena to limit Requests 1–7 to the one-year time period "January 1, 2012 through December 31, **2012**" and limit Requests 8–9 to the longer time period "April 30, 2012 through December 31, **2016**."

### D.    Goodwin's Proposed Exclusion of Documents in Which Teva Personnel are Included on the Communication

Goodwin's proposal to limit the search for and produce non-privileged, non-duplicative communications responsive to Requests 1–2 and 5–6 also proposes limiting it to those "in which no Teva personnel is included on the communication." Plaintiffs take issue with Goodwin's proposed restriction that would exclude production of both drafts and documents where Teva personnel are copied. They argue this means Goodwin would not produce a document if a Teva employee was copied, even if that document was never produced by Defendants. They contend this restriction is too narrow and therefore inappropriate.

The Court agrees with Plaintiffs that Goodwin's proposal to exclude responsive documents on which Teva personnel are copied from any of the Challenged Subpoena Requests is too narrow and should be rejected. As discussed above, the Court is modifying the Challenged Subpoena Requests to exclude Goodwin's wholly internal law firm communications and exclude responsive documents already produced or logged by Defendants. These modifications should address Goodwin's concerns by limiting the number of responsive documents to be produced or logged. Goodwin must still produce communications and documents responsive to the Challenged

Subpoena Requests, as modified herein, even if Teva personnel are included on the communication.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Regarding Goodwin Procter LLP's Objections and Responses to Plaintiffs' Subpoena to Produce Documents (ECF No. 229) is **granted in part and denied in part as set forth herein**. Subpoena Requests 1–9 are hereby modified to <u>exclude</u> all communications and documents that have already been produced by Defendants or logged on a privilege log in this case and <u>exclude</u> Goodwin's wholly internal law firm communications and documents. Requests 1–7 are limited to the one-year time period "January 1, 2012 through December 31, **2012**" and Requests 8–9 are limited to the longer time period "April 30, 2012 through December 31, **2016**."

**IT IS FURTHER ORDERED** that Goodwin shall produce documents responsive to the Subpoena, as modified herein, **within fourteen (14) days of the date of this Order**.

**IT IS FURTHER ORDERED** that if Goodwin withholds documents responsive to Subpoena Requests 1–9, as modified above, on the basis of any privilege or work product, it must provide a privilege log describing the withheld documents **within thirty (30) days after the production ordered herein**.

IT IS SO ORDERED.

Dated March 13, 2026, at Kansas City, Kansas.

_____

Teresa J. James
U. S. Magistrate Judge