# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DENA BURGE, LEIGH HOCKETT, JORDAN FURLAN, CRISTINE RIDEY, PATRICIA SAWCZUK, and ANNE ARUNDEL COUNTY, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TEVA PHARMACEUTICAL INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., TEVA PARENTERAL MEDICINES, INC., TEVA NEUROSCIENCE, INC., TEVA SALES & MARKETING, INC., and CEPHALON, INC., <br><br> Defendants. | Case No. 2:22-CV-02501-DDC-TJJ |

**GOODWIN PROCTER LLP'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL REGARDING GOODWIN PROCTER LLP'S PRODUCTION AND LOG**

**INTRODUCTION**

Plaintiffs' second motion to compel against non-party Goodwin Procter LLP ("Goodwin") is a transparent attempt to relitigate the scope of a subpoena the Court has already curtailed and to use the results of Goodwin's good-faith collection, review, and production as a pretext for an improper and harassing fishing expedition into a law firm's files. The Court should reject this tactic. The small number of responsive documents Goodwin produced does not reflect any deficiencies in its review or collection—rather, it confirms *exactly* what Goodwin has said from the outset and what the record independently establishes: Goodwin had minimal involvement in the patent litigation settlements that underlie this dispute.[1] Plaintiffs cannot now convert that reality into a basis for further intrusion, particularly where the Court has already admonished against overbroad discovery targeting a non-party law firm.

Plaintiffs' belated attack on Goodwin's search terms fares no better. Goodwin's terms mirrored those used by Teva and were disclosed months ago, yet Plaintiffs raised no objection until shortly before filing this motion—well after the Court's deadline for challenging the search parameters. Having sat on their hands, Plaintiffs cannot now manufacture a dispute to justify another round of intrusive, burdensome discovery into a non-party.

The facts underscore the point. From the outset, Goodwin has been clear that its role in the patent litigation settlements at issue was limited, which recent deposition testimony from Teva witnesses confirmed. Nonetheless, in responding to the Subpoena, Goodwin undertook a robust collection effort, applying search terms aligned with Teva's and collecting over 4,500 documents for review. Upon review, however, virtually all the documents were non-responsive, not because of any flaw in the process, but because of: (i) Goodwin's limited involvement; (ii) the terms and scope of Plaintiffs' own subpoena; and, (iii) this Court's prior Order on Plaintiffs' first motion to compel to Goodwin (the "Order"), which substantially narrowed the scope of responsive

---

[1] As a non-party, Goodwin does not address Plaintiffs' characterization of the underlying facts and what discovery showed, which is irrelevant in any event to this discovery dispute. To be clear, this does not mean that *Teva* accepts Plaintiffs' characterizations.

documents. ECF No. 312. The Order expressly: (i) excluded any documents produced or logged by Teva (*id*. at 9, 16) and wholly internal law firm communications (*id*. at 11, 16); and (ii) narrowed the timeframe of the subpoena to January 1, 2012 through December 31, 2012 for Requests 1-7 and January 1, 2012 through December 31, 2016 for Requests 8-9. *Id*. at 14-16. Plaintiffs' subpoena likewise did not request any communications exclusively between Teva and Goodwin regarding the underlying patent litigation settlements, instead targeting communications between Goodwin and opposing counsel in the underlying patent litigations. *See* ECF No. 351, Requests 1-2. Once those categories of non-responsive documents were removed, what remained is what Goodwin produced: 10 responsive documents, two of which were partially privileged and logged.

None of this is a surprise, and none of it is evidence of a deficiency. Instead, the outcome is the natural and predictable consequence of the limited role Goodwin's attorneys played in the underlying patent litigations, the limitations imposed by the Order, and the limitations in the requests themselves. Indeed, this is what Goodwin has said all along: given the thoroughness of Teva's production, there is no reason to think that Goodwin would have additional material information.

Further, Plaintiffs' suggestion that Goodwin has been obstructionist during the discovery process is absurd. The record shows the opposite: Plaintiffs served Goodwin with a subpoena in April 2025 (the "Subpoena"). ECF No. 351. Goodwin served objections and responses in May 2025 and, following multiple meet and confers and a pre-motion conference with the Court, Plaintiffs filed a motion to compel in August 2025. ECF No. 229. That dispute was prolonged not by Goodwin, but by Plaintiffs' own error in filing in the *wrong jurisdiction*. ECF No. 261. Following further briefing in the proper jurisdiction, transfer of the dispute back to the District of Kansas, and issuance of the Court's order, Goodwin promptly complied with the Order. Goodwin collected and reviewed more than 4,500 documents and produced documents within 28 days of the Court's Order and served its privilege log 14 days later. At no point during this process did Plaintiffs timely challenge Goodwin's disclosed search terms. Instead, Plaintiffs waited until after Goodwin had completed its collection, review, and production to raise objections—well beyond

the time permitted under the Court's rules. That belated tactic does not reflect obstruction by Goodwin; it is a transparent attempt by Plaintiffs to create a dispute where none exists.

Putting aside Plaintiffs' baseless aspersions and mischaracterizations of the record, Plaintiffs have no credible response to these common-sense facts. As such, Plaintiffs' motion to compel should be denied.

**ARGUMENT**

### I.     Plaintiffs' Challenge to Goodwin's Search Terms is Untimely

The District of Kansas Local Rules are clear: any "discovery-related motion must be filed within 30 days of the . . . disclosure that is the subject of the motion." D. Kan. L. R. 37.1(c). "The rationale of D. Kan. Rule [37.1(c)] is to ensure the court can address discovery disputes while they are still fresh, and in turn expedite litigation." *Cont'l Cas. Co. v. Multiservice Corp.*, 2008 U.S. Dist. LEXIS 1364, at *11 (D. Kan. Jan. 7, 2008). To do so, courts in this District

> consistently—and correctly—have construed and applied the 30-day time period under D. Kan. Rule [37.1(c)] *as beginning when specific information first leading to a dispute is discovered*. Any other construction of the rule would allow a virtually indefinite extension of the deadline so long as counsel purported to continue engaging in an effort to secure the information informally from the opposing party.

*Id.* (emphasis supplied). Failure to file a timely motion to compel means the objection is waived. D. Kan. R. 37.1(c); *see also Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 637-38 (2004).

When determining timeliness, the court applies "a two-pronged inquiry: (1) whether the discovery motion was filed within the 30-day period, and (2) whether the moving party exercised diligence in attempting to resolve the discovery dispute to warrant an extension of that period." *KPH Healthcare Servs. v. Mylan N.S.*, 2024 U.S. Dist. LEXIS 148652, at *7 (D. Kan. Aug. 20, 2024) (James, J.). Plaintiffs fail both prongs of the inquiry. First, it is undisputed that Goodwin provided Plaintiffs with its custodians and search terms on March 25. ECF No. 351-1 at 8-9. It is also undisputed that Plaintiffs first challenged Goodwin's search terms on May 5 via letter, requested a pre-motion conference on May 12, and filed their motion to compel on May 22. Plaintiffs missed the 30-day deadline by *weeks*. Plaintiffs argue that a new "triggering event" can

3

serve to reset the running of the 30-day deadline and did so here when Goodwin made its production and served its privilege log. Mtn. at 6. Not so. In support of their contention, Plaintiffs cite *U.S. Equal Emp. Opportunity Comm'n v. Chipotle Servs., LLC*, 2024 U.S. Dist. LEXIS 136330, at *13 (D. Kan. Aug. 1, 2024), which is inapplicable to the facts here. In *Chipotle*, the moving party learned of the existence of a previously unknown tranche of documents during a deposition five months after document production was completed and moved to compel production. *Id.* at *6-*7. In determining the timeliness of the moving party's motion to compel, the court found that the deposition testimony disclosing the existence of the previously unknown documents served as a new "triggering event" akin to a supplemental production to restart the 30-day deadline to file a motion to compel. *Id.* at *15. In contrast, here, Plaintiffs' sole challenge to Goodwin's search terms is the purported adequacy of certain terms as written. Any information necessary to challenge the purported adequacy of Goodwin's search terms was entirely knowable at the time the search terms were disclosed on March 25. Goodwin's production and privilege log are superfluous to a challenge to the search terms as written and cannot serve as a "triggering event" necessary to reset the 30-day deadline. This is especially so where Plaintiffs' challenge to the search terms rests on an allegation of omission such that receipt or review of the production or privilege log was unnecessary to challenge Goodwin's search terms.

Second, Plaintiffs failed to exercise *any* diligence in attempting to resolve the discovery dispute, thus no extension of the 30-day deadline is warranted. Plaintiffs received Goodwin's search terms on March 25, its production on April 10, and its privilege log on April 24. Goodwin also disclosed at a hearing on April 21 that its privilege log would have no more than a handful of entries. Plaintiffs never responded to Goodwin's March 25 email disclosing the search terms, sat silently through Goodwin's review and production process, and then waited an additional *25 days* after Goodwin produced documents before first raising a challenge to the adequacy of Goodwin's search terms. Yet, Plaintiffs had all of the information it needed to challenge Goodwin's search terms on March 25. Plaintiffs' argument that Goodwin's assertion in its March 25 email that it had no obligation to provide the search terms and was providing them for informational purposes only

somehow circumvents the District of Kansas's rules regarding discovery disputes holds no water. Mtn. at 5. Plaintiffs' reliance on the doctrine of judicial estoppel is misplaced because Plaintiffs both misunderstand and misapply the doctrine. "In deciding whether to find judicial estoppel, the court can consider [1] whether a party is now asserting a position that is 'clearly inconsistent' with its prior position, [2] *whether the party successfully convinced a court to accept the earlier position*, and [3] whether it would be unfair to allow that party to change its position." *Stender v. Archstone-Smith Operating Tr.*, 910 F.3d 1107, 1115 (10th Cir. 2018) (emphasis supplied). First, Goodwin is not asserting clearly inconsistent positions. The fact that Goodwin, as a non-party, has no obligation to share or negotiate custodians or search terms with Plaintiffs is both factually accurate and has *no bearing* on Plaintiffs' ability to challenge those search terms through discovery motion practice under D. Kan. R. 37.1(c). Upon receipt of Goodwin's search terms, Plaintiffs could have and should have raised its challenge pursuant to D. Kan. R. 37.1(c). Second, judicial estoppel applies only when the party against whom the estoppel is urged has previously convinced *the court* to adopt its position. Goodwin has not done so here—there was no prior court decision about its search terms—thus judicial estoppel does not apply. Finally, because Goodwin did not change its position, there is no need to assess fairness.

Allowing Plaintiffs to challenge Goodwin's search terms at this juncture runs afoul of the language of and purpose behind Rule 37.1(c) because it would set the precedent that any party could wait until the very end of the document production process to challenge any stage of the collection, processing, review, and production process even if the information that was the subject of the motion was disclosed months or even years prior to completing document production. Accordingly, Plaintiffs' challenge to Goodwin's search terms is waived and should be denied.

## II.     Goodwin's Search Terms are Adequate

Even if Plaintiffs' challenge to Goodwin's search terms was timely (and it is not), it is still meritless. Goodwin's six search terms are comprehensive and comply fully with the Court's Order. Simply because Goodwin's files contained only a limited number of responsive, non-duplicative documents does not mean that Goodwin's search terms were inadequate. Rather, it is a reflection

of Plaintiffs' inaccurate and exaggerated characterization of Goodwin's role during the settlement of the EpiPen and Nuvigil patent litigations. Even now, Plaintiffs emphasize that "critical meetings" regarding the underlying patent litigation settlements occurred in Goodwin's office incorrectly implying that Goodwin had a substantial role in those settlements. Mtn. at 7. The facts demonstrate otherwise. ECF No. 349-1, at 76:25-79:18; ECF No. 349-5, at 71:24-72:20 (W. Marth and S. Julie testifying that no Goodwin attorneys were in attendance at the settlement meetings). Goodwin's professional courtesy in providing conference space for a long-standing client in no way shows that Goodwin attorneys were involved in the negotiations.

Moreover, as discussed above, the Subpoena requests regarding the underlying patent settlements were limited to communications between Goodwin and "any employee, representative, lawyer, law firm acting on behalf of" the parties to the EpiPen Settlement and Nuvigil Settlement. ECF No. 351 at 11. Thus, any documents or communications concerning the underlying patent settlements that only included Goodwin and Teva are non-responsive. Similarly, the Subpoena was further limited by the Court's Order, which (i) excluded any documents produced or logged by Teva (ECF No. 312, at 9, 16); (ii) excluded any wholly internal law firm communications (*id*. at 11, 16); and (iii) narrowed the timeframe of the subpoena to January 1, 2012 through December 31, 2012 for Requests 1-7 and January 1, 2012 through December 31, 2016 for Requests 8-9 (*id*. at 14-16). Nonetheless, Goodwin crafted comprehensive search terms that captured more than 4,500 documents for review and produced the limited number of responsive documents.

Second, Plaintiffs' proposed revisions to Goodwin's search terms improperly seek to impose a collection and review standard on non-party Goodwin more burdensome than what was imposed on Teva (a party) through the application of overbroad connectors. For example, Plaintiffs challenge Goodwin's search term "(Pfizer OR Mylan) w/25 (Nuvi* OR Armodaf* OR Epi*)" alleging that the "w/25" proximity connector is too narrow and it should be substituted with the most inclusive possible proximity connector "AND." Mtn. at 8. However, the "w/25" connector is the same as or more inclusive than many of the search terms Teva utilized for the same categories of requests, which the parties negotiated and agreed to over the course of months. Teva's search

terms included, among others: (i) "Armodaf* **w/20** (Epi OR EpiPen);" (ii) "Nuvigil **w/20** (Epi OR EpiPen);" (iii) "(Mylan OR Pfizer) **w/25** (Settl* OR Venture* OR Alliance* OR Agree* OR Waiv*);" (iv) "((Settl* OR Venture* OR Alliance* OR Agree*) **w/25** (Nuvi* OR Nuvigil* OR Armodaf*));" and (v) "((Settl* OR Venture* OR Alliance*) **w/25** (Epi* OR EpiPen* OR "Epi-Pen*" OR "Epi pen*" OR epinephrine))." As the Court stated in its Order, "the court is required to quash or modify a subpoena that subjects the subpoenaed entity to an 'undue burden.'" ECF No. 312, at 15; *see also* Fed. R. Civ. P. 45(d)(3)(A)(iv). Requiring non-party Goodwin to modify its search terms to be more inclusive than the search terms Plaintiffs negotiated and agreed to with Teva would impose a higher, and therefore undue, burden on Goodwin and should be denied.

Finally, Plaintiffs' contentions that Goodwin's other search terms are inadequate also fails because Plaintiffs' proposed revisions are unnecessarily duplicative or improperly seek to capture documents that are not responsive to any request in the subpoena. First, the search terms regarding Goodwin's communications with other law firms are sufficiently inclusive to encompass any communications between Goodwin and other law firms involved in the settlement of the underlying patent litigations. Goodwin's search terms include two different iterations of each law firm's name, which is more than sufficient to capture any communications with those firms. Adding two more iterations of each of those firm names is unnecessarily overinclusive, disproportionate, and would impose an undue burden on non-party Goodwin. Second, Plaintiffs' assertion that Goodwin's search term related to Requests 8-9, which concern MMA filings for the EpiPen and Nuvigil patent litigation settlements, is insufficient because it omits terms like "senat*" or "committee" is unfounded. The Subpoena does not contain any requests related to the 2016 Congressional Investigation into EpiPen pricing. Rather, Requests 8-9 concern "filings pursuant to Section 1112(a) and (c)(2) of Title XI of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003" arising from the Nuvigil or EpiPen patent litigation settlements. ECF No. 351 at 12. While Teva's EpiPen MMA filing from 2012 was provided to Congress in 2016 at the outset of the Congressional Investigation (and all documents related to that were produced), anything else related exclusively to the Congressional Investigation is non-responsive to the

7

Subpoena and Goodwin need not craft a search term to encompass such non-responsive documents. Moreover, there is nothing in the documents Teva produced to indicate that Goodwin was aware of or involved in the EpiPen hearing or Congressional Investigation beyond the initial release of Teva's 2012 EpiPen MMA filing to Congress by the FTC.

Plaintiffs' untimely challenges to Goodwin's search terms also fail because the proposed changes would impose an undue burden on non-party Goodwin and should be denied.

### III.    Goodwin Properly Utilized Non-responsive Redactions

Plaintiffs' challenge to Goodwin's non-responsiveness redactions directly contravenes the Court's existing orders. At the outset of discovery, this Court entered an Order Governing the Production of Electronically Stored Information and Documents ("ESI Protocol") that outlined the parameters for producing documents in this case. ECF No. 100. As written, the ESI Protocol clearly does not limit the specifications governing document production just to the parties in the case. Rather, it "sets forth the specifications that govern document production during discovery in the above-captioned matter." *Id.* at 1-2. Among other things, the ESI Protocol states: a "Producing Party may redact the non-responsive portion(s) of the document provided that the redactions do not obscure the meaning of the responsive portions of the document." *Id.* at 18.[2] The ESI Protocol further requires that "all such redactions shall be clearly marked on the face of the documents and shall bear a designation indicating that non-responsive Information has been redacted." *Id.* at 18-19. Goodwin appropriately applied non-responsive redactions in accordance with the ESI Protocol, and Plaintiffs' arguments to the contrary fail.

First, as noted in the ESI Protocol itself, the provisions of Rule 34 of the Federal Rules of Civil Procedure permits "parties to specify the form or forms in which documents are to be produced." ECF No. 100, at 1. The parties did so here in negotiating the ESI Protocol, thus the general rule against unilateral non-responsive redactions does not apply. Plaintiffs have already

---

[2] While "party" is a defined term in the ESI Protocol to just the parties to the action, "producing party" is not defined. Read in conjunction with the Court's instruction that the ESI Protocol govern all documents productions made in this action, ECF No. 100, at 1-2, producing party should be read to encompass any entity—party or non-party—making a production in this action, including non-party Goodwin. Plaintiffs' law firms also argued that the ESI Protocol applied to non-parties. *See*, ECF No. 166, at 2, 5-6, 9.

conceded Goodwin is entitled to proceed as the ESI protocol allows: their own instructions in their subpoena to Goodwin instructed Goodwin that: "All Documents and Communications produced by You *shall be produced in compliance with the requirements and specifications detailed in the [ESI Protocol]*." ECF No. 351, at 9 (emphasis supplied). Plaintiffs cannot complain that Goodwin produced documents in accordance with the ESI Protocol that allows for non-responsive redactions or that that provision of the protocol does not apply to Goodwin (as a producing party) when Plaintiffs themselves told Goodwin that it did.

The sole case Plaintiffs cite in support of their argument that the redactions are "inappropriate," *McNabb v. City of Overland Park*, is distinguishable because *McNabb*, and all cases it cites, are premised on the fact that the non-responsive redactions were "unilateral" nor was there a production protocol allowing for such redactions, which is not the case here. *See* 2014 U.S. Dist. LEXIS 37312, at *6 (D. Kan. Mar. 21, 2014); *see also* Mtn. at 9. In those cases, the court found the non-responsive redactions "inappropriate" because the redacting party applied the redactions without seeking agreement from the opposing party and did not provide a redaction log. *McNabb*, U.S. Dist. LEXIS 37312, at *12-*13. Here, Goodwin did not unilaterally undertake redactions. Rather, it did so in accordance with Plaintiffs' own instructions that Goodwin's production adhere to the ESI Protocol, which allows for non-responsive redactions. Plaintiffs cannot now backtrack from their own instructions that Goodwin produce documents in accordance with the ESI Protocol—which allows for such non-responsive redactions—by calling Goodwin's clearly marked non-responsive redactions "improper" and "unilateral." Mtn. at 9-10. Further, the ESI Protocol explicitly does not require the party applying non-responsive redactions to log those redactions. *See* ECF No. 100 at 17. ("Documents redacted or withheld from a production *pursuant to an attorney-client, work product, or other applicable privilege or immunity*, shall be identified on a privilege log…") (emphasis supplied).

Second, Goodwin's adherence to the ESI Protocol in the manner in which it redacted and produced documents is fully consistent with its position that it had no obligation to negotiate custodians or search terms. The relevant provision of the ESI Protocol requiring "cooperation in

good faith regarding the identification, disclosure and formulation of appropriate search terms, Custodians . . ." expressly applies to *parties*. ECF No. 100 at 11. Goodwin is not a party to that agreement and therefore had no obligation to participate in negotiations with Plaintiffs involving search terms or custodians. As discussed above, by Plaintiffs' own instructions, Goodwin was required by the subpoena to *produce* documents in accordance with the ESI Protocol and it did so, including in applying the allowable non-responsive redactions. ECF No. 351, at 9. Goodwin's compliance with the Protocol's production requirements does not transform it into a party to the Protocol or impose obligations the Protocol reserves for actual parties to the case. Having received the benefit of Goodwin's good-faith disclosure of its search terms and custodians, Plaintiffs cannot now use that transparency as a sword—particularly where they chose not to raise any timely objections.

Finally, Goodwin's redactions are entirely appropriate. Goodwin applied four total non-responsive redactions on two documents. The first two redactions are on the top two emails in the chain. ECF No. 349-9. Neither email is necessary to understand the remainder of the email chain because they are the last in time emails. Moreover, the top two emails are clearly non-responsive because, as discussed above, the Subpoena does not request any communications exclusively between Teva and Goodwin regarding the underlying patent litigation settlements. Thus, any such communications are non-responsive and Goodwin appropriately redacted those communications as non-responsive. The second two redactions similarly are appropriately applied and do not obscure the meaning of the email. ECF No. 349-10. The responsive portions of the thread concern whether Teva filed the EpiPen settlement with the FTC. *Id.* The basis for asking the question and the answer to the question are all clear from the unredacted portions of the email. Thus, the redactions do not obscure the meaning of the email and Plaintiffs' challenge to the non-responsive redactions should be denied.

## CONCLUSION

For the foregoing reasons, Goodwin respectfully requests that Plaintiffs' motion to compel be denied.

10

Date: June 5, 2026

Respectfully Submitted,

/s/ *Brent N. Coverdale*
Brent N. Coverdale  KS Bar #18798
Scharnhorst Ast Kennard Griffin PC
1100 Walnut St., Suite 1950
Kansas City, MO 64106
Telephone: (816) 268-9419
Email: bcoverdale@sakg.com

/s/ *Alexandra I. Russell*
Brian T. Burgess
Alexandra I. Russell
GOODWIN PROCTER LLP
1900 N St. N.W.
Washington, DC 20036-1612
Telephone: (202) 346-4000
Email: bburgess@goodwinlaw.com
arussell@goodwinlaw.com

Christopher T. Holding
William E. Evans
Louis L. Lobel
Katharine K. Foote
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Email: cholding@goodwinlaw.com
wevans@goodwinlaw.com
llobel@goodwinlaw.com
kfoote@goodwinlaw.com

**Attorneys for Goodwin Procter LLP**

11

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 5th day of June, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Brent N. Coverdale*

12