UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DENA BURGE, LEIGH HOCKETT,
JORDAN FURLAN, CRISTINE RIDEY,
PATRICIA SAWCZUK, and ANNE ARUNDEL
COUNTY, individually and on
behalf of all others similarly situated,

       Case No. 22-CV-2501-DDC-TJJ

       Plaintiffs,

v.

TEVA PHARMACEUTICALS
INDUSTRIES, LTD.,
TEVA PHARMACEUTICALS USA, INC.,
TEVA PARENTERAL MEDICINES, INC.,
TEVA NEUROSCIENCE, INC.,
TEVA SALES & MARKETING, INC., and
CEPHALON, INC.,

       Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to De-Designate Crime-Fraud Documents (ECF No. 306) ("Motion to De-Designate") and Defendants' Motion to Seal Exhibits to Plaintiffs' Reply (ECF No. 315) ("Motion to Seal"). Plaintiffs request an order requiring Defendants to de-designate 31 documents they marked or designated as Highly Confidential under the parties' stipulated protective order ("Challenged Documents"). Plaintiffs argue these documents should be de-designated because the Court previously found them discoverable under the crime-fraud exception to attorney-client privilege and ordered them produced unredacted in part or full. Defendants filed a corresponding Motion to Seal requesting an order permanently sealing the provisionally-sealed Challenged Documents that Plaintiffs filed as exhibits to their

Reply (ECF No. 310). As explained below, Plaintiffs' Motion to De-Designate is denied and Defendants' Motion to Seal is granted in part.

## I.    Brief Background of the Phase I Discovery Dispute[1]

During Phase I discovery, Defendants reproduced redacted emails they originally produced in the EpiPen MDL and also produced new documents responsive to discovery requests by Plaintiffs in this case. These redacted emails were designated by Defendants as Highly Confidential under the provisions of the parties' Stipulated Protective Order (ECF No. 99) entered in this case and included on Defendants' privilege log. Defendants asserted the information redacted from the emails was protected from discovery under the attorney-client privilege.

Following substantial completion of Phase I document production and service of Defendants' privilege log, Plaintiffs moved to compel production of documents Defendants withheld on privilege grounds, arguing that the crime-fraud exception nullified any privilege claim. The Court granted Plaintiffs' motion to compel in part, finding that the crime-fraud exception applied to documents related to Teva's alleged fraudulent concealment of its scheme, and ordered an *in camera* review of the documents.[2]

After the *in camera* review, the Court found "some, but not all, of the redacted communications between Defendants and their attorneys to be probative of the specific allegations of active and intentional fraudulent concealment by Defendants with the participation of their attorneys."[3] It ordered Defendants to produce 31 emails either fully unredacted or with specific

---

[1] The background of this case is set forth in more detail in the Court's other Phase I discovery rulings (ECF Nos. 152, 153, 181, 202, 226).

[2] *See* July 31, 2025 Mem. & Order (ECF No. 226) and Sept. 8, 2025 Mem. & Order (ECF No. 243).

[3] *In Camera* Review Order (ECF No. 248) at 7.

redactions removed.[4] District Judge Crabtree denied Defendants' subsequent objections to the *In Camera* Review Order[5] and Defendants produced the unredacted crime-fraud emails to Plaintiffs on January 21, 2026. Defendants maintained the designations of these documents as Highly Confidential under the Protective Order.

Separate from this case, Plaintiffs' counsel filed two new actions asserting essentially identical claims for other plaintiffs against the same defendants named in this case, in the Eastern District of New York ("*Pierre*") and the Central District of California ("*Pennington*"). The cases were subsequently transferred to the District of Kansas and consolidated with *Pennington* (Case 25-2737) as the lead case. Counsel for the parties in *Pennington* (who are the same counsel as in this case) agreed to defer scheduling until after the Court decides the motion to dismiss filed by Defendants in that case. Discovery has therefore not commenced in *Pennington*. Plaintiffs' counsel raised the issue of using the materials and Challenged Documents from this case in the *Pennington* case. Counsel for Defendants refused to consent to allowing access to the materials and Challenged Documents produced in this case for use in the *Pennington* case unless and until after the *Pennington* matter enters the discovery stage.[6] Plaintiffs' Motion to De-Designate followed.

## II.      Plaintiffs' Motion to De-Designate the Challenged Documents

Plaintiffs argue Defendants cannot meet their burden to justify designation of the Challenged Documents as Highly Confidential. They argue the public interest favors disclosure of the Challenged Documents, and evidence of Defendants' own fraud and fraudulent concealment is not a legitimate trade secret or confidential business information entitled to protection. They

---

[4] *Id*. at 7–8.

[5] *See* Jan. 14, 2026 Mem. & Order (ECF No. 296).

[6] Resp. (ECF No. 309) at 5.

also argue the Court's ruling finding the crime-fraud exception applied to the Challenged Documents vitiates any confidentiality of those documents. Finally, Plaintiffs argue most of the Challenged Documents are over a decade old with stale information having no current commercial sensitivity and the generic competitors long ago launched.

Defendants oppose de-designation of the Challenged Documents, arguing that their Highly Confidential designation of these documents is proper under the parties' Stipulated Protective Order. The documents contain highly sensitive and confidential information and removing the protections afforded them at this time would cause Defendants irreparable harm. Defendants also assert the argument that confidentiality and privilege are distinct designations so that the removal of one does not automatically justify the removal of the other. They also assert that Plaintiffs' motion to de-designate the Challenged Documents so they can be used in another case is itself an inherent violation of the Protective Order.

### A.    Applicable Legal Standard

Rule 26(c) allows courts to, "for good cause," control the public dissemination of information produced in discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[7] The burden to prove whether a confidentiality designation is proper lies with the designating party.[8] Even where, as here, a protective order governs the designation of documents, the designating party cannot rest on the protective order itself in the face of a challenge; it must come forward with evidence and prove the designation is necessary:

---

[7] Fed. R. Civ. P. 26(c)(1).

[8] *No Spill, LLC v. Scepter Canada, Inc.*, No. 2:18-CV-2681-HLT-KGG, 2022 WL 16948592, at *2 (D. Kan. Nov. 15, 2022). S*ee also* Stip. Protective Order (ECF No. 99) at ¶ 7 ("the Designating Party has the burden of establishing that the designation is proper").

When a party files a motion challenging a confidentiality designation, the designating party still has the burden to prove the necessity of the designation . . . . This is in line with the moving party's burden to show good cause on a motion for a protective order.[9]

"The starting point for interpretation of a protective order lies in its plain language."[10] The high standards for sealing documents from public view do not apply to disputes involving the propriety of the confidentiality designations under the terms of the protective order.[11]

### B.    Applicable Provisions of the Parties' Stipulated Protective Order

The parties' Stipulated Protective Order (ECF No. 99) contains the following provision permitting a party to designate certain information as Highly Confidential:

A Designating Party may designate as "Highly Confidential" any Confidential Information that it reasonably and in good faith believes is of such a sensitive nature that disclosure to persons other than those listed in paragraph 4.2 could reasonably be expected to result in injury, including, but not limited to, (a) information related to pricing (including but not limited to credits, discounts, returns, allowances, rebates and chargebacks), projected future sales, volumes, profits, revenue, costs, (b) claims and reimbursement data, (c) agreements with third parties, (d) transactional data, (e) information protected by foreign, federal, or state privacy laws, (f) other materials that contain particularly sensitive trade secrets, or (g) information related to settlement of patent litigation or negotiations thereof.[12]

Information designated Highly Confidential can only be disclosed to a limited group of individuals, including outside counsel of record, designated in-house counsel, the Court, and limited others provided they execute a certification.[13] The Protective Order also limits use of "[a]ny

---

[9] *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 5057482, at *9 (D. Kan. Sept. 2, 2020).

[10] *Equal Emp. Opportunity Comm'n v. Genesh, Inc.*, No. 24-2445-DDC-ADM, 2025 WL 2719787, at *1 (D. Kan. Sept. 24, 2025) (quoting *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010)).

[11] *Id.*

[12] Stip. Protective Order (ECF No. 99) at ¶ 2.2.

[13] *Id.* at ¶¶ 4.2 and 5.

Confidential Information . . . solely for the purpose of conducting this Proceeding."[14]

The Protective Order also allows a party, at any time, to make a good faith challenge to the propriety of a Highly Confidential designation and, after conferring, apply to the Court for a ruling that the material shall not be so designated.[15] If a motion is made, the Designating Party has the burden of establishing that the designation is proper.[16]

**C.      Whether Defendants Met Their Burden to Show their Highly Confidential Designations for the Challenged Documents are Proper**

As the designating party, Defendants have the burden of establishing that their Highly Confidential designation is proper for each of the Challenged Documents. This requires a showing they "reasonably and in good faith believe[d]" the information "is of such a sensitive nature that disclosure to persons other than those listed . . . could reasonably be expected to result in injury." Of the seven categories of information a party can designate as Highly Confidential under the Protective Order, the only ones Defendants can reasonably argue are applicable to the Challenged Documents are "other materials that contain particularly sensitive trade secrets" or "information related to settlement of patent litigation or negotiations thereof."[17]

Defendants group the Challenged Documents into the following three categories they claim justify the continued protection afforded by the Highly Confidential designation:

---

[14] *Id.* at ¶ 3.

[15] *Id.* at ¶ 7.

[16] *Id.*

[17] Stip. Protective Order (ECF No. 99) at ¶ 2.2. The other five categories that can be designated as Highly Confidential are: "(a) information related to pricing (including but not limited to credits, discounts, returns, allowances, rebates and chargebacks), projected future sales, volumes, profits, revenue, costs, (b) claims and reimbursement data, (c) agreements with third parties, (d) transactional data, (e) information protected by foreign, federal, or state privacy laws." *Id.*

(i)   Teva's business consideration and strategy when drafting press releases regarding litigation settlements, which includes in-house counsel discussion of legal considerations for press releases;

(ii)  Teva's internal considerations and business strategies when interacting with the government and government regulators, including discussions with outside counsel regarding legal advice and internal business strategies; and,

(iii) documents concerning Teva and non-parties' settlement negotiations of the two underlying patent litigations underpinning this action, which evidence Teva's internal business and legal strategies and considerations.[18]

The remaining documents concern "internal discussions of litigation strategy and internal analysis of the patent settlements."[19]

The Court finds Defendants have established that the Challenged Documents, as described above, are "related to settlement of patent litigation or negotiations thereof," and thus fall within the protections of the Protective Order for Highly Confidential information. Although Defendants' category (ii) above does not expressly mention settlement of patent litigation or negotiations, a review of those documents reveals they are emails regarding Teva's communications with the government and government regulators prompted by and about the patent litigation settlements.[20] As such, they also fall within the protections of the Protective Order for Highly Confidential information.

The Court also finds Defendants have met their burden to show they had a reasonable and good faith belief the information on the Challenged Documents "is of such a sensitive nature that disclosure to persons other than those listed . . . could reasonably be expected to result in injury."

---

[18] Resp. (ECF No. 309) at 11–12.

[19] *Id.* at 12.

[20] *See, e.g.*, TEVA_NUVI-00014044–54 (ECF Nos. 310-16 to 310-20) (sealed).

These documents concern internal discussions of litigation strategy and internal analysis of the patent settlements and negotiations, information which, if disclosed, could reasonably be expected to result in competitive business injury to Defendants, and thus warranting their Highly Confidential designation under the terms of the parties' Protective Order.

Defendants also dispute Plaintiffs' assertion that the information is stale and has no current commercial sensitivity, arguing it rests on the false premise that the entry of generic competitors somehow eliminated the need for confidentiality over the documents at issue. Defendants explain:

> These documents provide detailed insights into Teva's discussions and strategies in litigation and settlement negotiations, business and legal advice given in the process of settlement negotiations and details of those settlement agreements, as well as details of Teva's discussions regarding interactions with federal regulators and the government. This is precisely the type of proprietary information that is never made public because disclosure would inflict significant competitive harm on the company. Teva remains actively engaged in litigation across multiple products, and the pharmaceutical industry is intensely competitive. Revealing Teva's internal assessments, negotiation positions, settlement rationales, and regulatory interaction strategies would give actual and potential competitors a window into Teva's decision-making. That information could be exploited by competitors and directly undermine Teva's ability to compete. Far from being "stale," these strategic considerations remain highly relevant to Teva's ongoing business operations and its negotiations with competitors and regulators. Public disclosure would thus seriously damage Teva's competitive position in the marketplace.[21]

Defendants also argue that Plaintiffs' reliance on the Court's decision in the EpiPen MDL to unseal certain documents as part of the summary judgment decision in that case is misplaced and the Court's reasons for unsealing those documents are not present here. The Court agrees. The Challenged Documents at issue were not filed as a material part of a summary judgment motion or any other motion used to determine the litigants' substantive legal rights, nor do Plaintiffs seek to do so here. Rather, Plaintiffs only seek to unseal the documents so that their counsel can use

---

[21] Resp. (ECF No. 309) at 12–13.

them in a different case. Additionally, the factual information contained in the documents is not already publicly available through other sources.

Defendants have sufficiently shown (1) the Challenged Documents are related to settlement of patent litigation or negotiations, and (2) they have a reasonable and good faith belief the information in the Challenged Documents "is of such a sensitive nature that disclosure to persons other than those listed . . . could reasonably be expected to result in injury." They have therefore shown the Highly Confidential designations for the Challenged Documents are proper under the provisions of the Protective Order.[22]

### D.    Whether Privilege Ruling on Challenged Documents Vitiates Confidentiality Protections

Defendants argue that privilege and confidentiality are distinct concepts that serve different purposes, apply to different categories of information, and are governed by different standards. Thus, the removal of one (privilege) does not automatically justify the removal of the other (confidentiality). The negotiated Protective Order provisions sweep far more broadly than attorney-client privilege and often cover entirely non-overlapping subject matter. Thus, the fact that the Court required Defendants to remove certain documents from its privilege log and produce them, in full or in part, pursuant to the crime-fraud exception does not eliminate their confidential status under the Protective Order or diminish the protections afforded to commercially sensitive business information under Rule 26(c).

Plaintiffs argue the Court's crime-fraud exception ruling vitiates any claim of confidentiality for the Challenged Documents. The public interest favors disclosure of the

---

[22] Given the Court's finding Defendants' Highly Confidential designations for the Challenged Documents are proper, the Court need not address Defendants' argument that removal of the confidentiality protections would cause irreparable harm.

Challenged Documents, and evidence of fraud and fraudulent concealment is not a legitimate trade secret or confidential business information entitled to protection.

Here, the Challenged Documents are emails that Defendants marked as Highly Confidential and originally produced with redactions based upon attorney-client privilege. The Court found the crime-fraud exception to privilege applied to some of the redactions, and ordered their disclosure after its *in camera* review. The Highly Confidential designations on those documents were not challenged and the Court's order therefore did not address those designations. The Court finds Plaintiffs' argument here conflates privilege and confidentiality and misunderstands the Court's prior order, which addressed privilege but not confidentiality. As Defendants point out, privilege and confidentiality are separate and distinct protections. If a document is found to be privileged, it is not discoverable and the party withholding the document does not have to disclose it to the opposing party at all. However, if a document is designated as confidential or highly confidential under the provisions of the parties' agreed protective order, the designating party still produces the document to the opposing party but the receiving party is subject to certain limitation on the disclosure and use of the document, such as a prohibition on the disclosure to nonparties or use of the document outside the litigation. If the document is designated as Highly Confidential, then the disclosure is further restricted to who can view it. The Court therefore rejects Plaintiffs' argument that the loss of attorney-client privilege vitiated the confidentiality protections for the Challenged Documents.

E.  **Whether Plaintiffs' Motion to De-Designate is a "Use" Violation of the Protective Order**

Defendants argue that Plaintiffs' motion to de-designate the Challenged Documents so they can be "used" in another related case on behalf of different plaintiffs is an inherent violation of the Protective Order. Plaintiffs dispute their motion "uses" the information included in the Challenged

10

Documents, contending it instead asks for the Court's permission for that information to be used in the *Pennington* matter. They point out the Protective Order allows a party to challenge the propriety of a confidential designation "at any time" and move for de-designation.

The Court agrees with Plaintiffs that their Motion to De-Designate—which challenges Defendants' Highly Confidential designation for the Challenged Documents—is permitted by the provisions of the Protective Order. The filing of such motion is not itself a violation of the Protective Order even if Plaintiffs filed the Challenged Documents as provisionally sealed exhibits and even if Plaintiffs' underlying purpose in filing their motion is to obtain permission to use information from the de-designated documents in other litigation.

The parties made crystal clear, with highlighted language in the Protective Order section titled "Use of Confidential Information," their agreement that even the use of "Confidential Information" (not just "Highly Confidential" information) is limited to "this Proceeding" and any appeals therefrom. The Protective Order further reinforces this by stating: "In no event shall such [Confidential] information be used for any business, competitive, personal, private, public purpose, or for any purpose or proceeding other than as stated in this Paragraph."[23]

**III.        Defendants' Motion to Seal Exhibits Disclosing Challenged Documents (ECF No. 315)**

Defendants filed a motion requesting the Court permanently seal the provisionally-sealed Challenged Documents that Plaintiffs filed as 31 exhibits to their Reply (ECF Nos. 310-1 to 310-31) in support of their Motion to De-Designate.[24] Defendants argue the Highly Confidential documents and references to the contents of such documents in Plaintiffs' Reply should be

---

[23] Stip. Protective Order (ECF No. 99) at ¶ 3.

[24] The emails filed as Exhibits reveal the information Defendants previously redacted as attorney-client privileged before the Court's ruling the crime-fraud exception applied and ordered the disclosure.

permanently sealed. They assert these exhibits contain Highly Confidential information reflecting Teva's non-public, commercially sensitive (1) settlement and negotiation materials from the underlying Nuvigil and EpiPen patent litigations; (2) internal analyses and strategies for interacting with federal regulators; and (3) internal strategic assessments and draft language for litigation-related press releases.

The Supreme Court recognizes a "general right to inspect and copy public records and documents, including judicial records and documents."[25] This right is based on "the citizen's desire to keep a watchful eye on the workings of public agencies,"[26] and it helps "preserv[e] the integrity of the law enforcement and judicial processes."[27] As a result, there is a "strong presumption in favor of public access."[28] That strong presumption is heightened when the information subject to a seal or redaction request (1) provides the basis for a court's adjudication of the merits of the litigation; or (2) is disclosed in another form or during a public proceeding.[29]

The right of public access to judicial records, however, is "not absolute" as "[e]very court has supervisory power over its own records and files," which gives the court the authority to seal documents.[30] The party seeking to overcome the presumption of public access bears the burden of

---

[25] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (citations omitted).

[26] *Id.* at 598.

[27] *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985).

[28] *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007)).

[29] *Pickard*, 733 F.3d at 1302, 1305.

[30] *United States v. Walker*, 761 F. App'x 822, 835 (10th Cir. 2019) (quoting *Nixon*, 435 U.S. at 598).

showing some "significant interest that outweighs the presumption."[31] Denial of public access to the record must be narrowly tailored to serve the interest being protected by sealing or restricting access to the records.[32]

District of Kansas Local Rule 5.4.2(c) sets forth the procedure and requirements applicable to sealed and redacted filings in civil cases. A proponent that seeks to maintain any portion of the document under seal, or to allow the document to be filed in the public record with redactions, must file a motion to seal or redact in the public record. The motion must include: (1) "a description of the specific portions of the document[s]" that the proponent wants to seal or redact, which must be "narrowly tailored to the asserted confidentiality interest"; (2) the asserted confidentiality interest and why it outweighs the right of public access; (3) "a clearly defined and serious injury that would result in the absence of restricting public access"; and (4) "why no lesser alternative is practicable or why restricting public access will adequately protect the confidentiality interest in question."[33]

After reviewing the briefing and the Johnson Declaration (ECF No. 316), the Court finds Defendants have asserted a confidentiality interest in the Challenged Documents that outweighs the public's right of access to the documents. Defendants have established that a clearly defined and serious injury would result to them in the absence of restricting access to the Highly Confidential information contained in these documents, as required by D. Kan. Rule 5.4.2(c)(3). The Court therefore grants Defendants' motion to permanently seal Exhibits 1–31 to Plaintiffs'

---

[31] *Mann*, 477 F.3d at 1149 (citations omitted).

[32] *See Snyder v. Acord Corp.*, 811 F. App'x 447, 469 (10th Cir. 2020) (finding the magistrate judge properly recognized "a denial of public access to the record must be narrowly tailored to serve the interest being protected by sealing or restricting access to the records").

[33] D. Kan. Rule 5.4.2(c)(1)–(4).

Reply. Defendants may file another motion requesting redaction of Plaintiffs' Reply (ECF No. 310), the Johnson Declaration (ECF No. 316), and/or Plaintiffs' Response in Opposition to Teva's Motion to Seal (ECF No. 321), in accordance with D. Kan. Rule 5.4.2(c), proposing specific redactions of the descriptions of the Challenged Documents.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to De-Designate Crime-Fraud Documents (ECF No. 306) is **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal Exhibits to Plaintiffs' Reply (ECF No. 315) is **granted in part**. Plaintiffs' provisionally sealed Exhibits 1 to 31 to Plaintiffs' Reply, identified on the docket as ECF Nos. 310-1 to 310-31, shall remain permanently under seal. The Clerk is directed to remove the provisional designation from these entries.

**IT IS FURTHER ORDERED** that Defendants may file another motion requesting specific redactions of the descriptions of the Challenged Documents, in accordance with D. Kan. Rule 5.4.2(c), for the following provisionally-sealed Court filings: Plaintiffs' Reply to their Motion to De-Designate (ECF No. 310), the Johnson Declaration (ECF No. 316), and/or Plaintiffs' Response in Opposition to Teva's Motion to Seal (ECF No. 321). Any such motion(s) shall be filed by **June 23, 2026**.

IT IS SO ORDERED.

Dated June 9, 2026, at Kansas City, Kansas.

_____

Teresa J. James
U. S. Magistrate Judge